IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND,<br><br>                    Plaintiff,<br><br>    - against -<br><br>ANGELO R. MOZILO, HENRY G. CISNEROS, ROBERT L. DONATO, HARLEY W. SNYDER, JEFFREY M. CUNNINGHAM, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL, MICHAEL E. DOUGHERTY, and COUNTRYWIDE FINANCIAL CORPORATION,<br><br>                  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CA No. 07-<br><br>**Jury Trial Demanded** |

## <u>VERIFIED COMPLAINT</u>

Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation

made by and through his attorneys and experts, except as to those allegations that pertain to

the plaintiff himself which are alleged upon knowledge, as follows:

1.      The jurisdiction of this Court is founded upon 15 U.S.C. §78aa, 28 U.S.C.

§1332, and 28 U.S.C. §1367. The plaintiff is a citizen of the Commonwealth of

Pennsylvania. The defendants are all citizens of states other than Pennsylvania. The matter

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

1

2.    The claims herein arise under §14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78n(a), Securities and Exchange Commission (SEC) Rule 14a-9, 17 C.F.R. §240.14a-9, Schedule 14A, 17 C.F.R. §240.14a-101 (Nov. 7, 2006), and Item 402 of Reg. S-K, 17 C.F.R. §229.402 (Dec. 29, 2006), and under the laws of the several states including, particularly, the State of Delaware.

3.    Plaintiff brings this derivative action in the right of and for the benefit of Countrywide Financial Corporation (the "Company" or "Countrywide").

4.    This action is not a collusive one to confer jurisdiction on this court that it would not otherwise have. This action does not allege securities fraud or any other fraud. It does not seek to recover damages, but rather specific, equitable relief. This is an action based on the false or misleading proxy statement dated April 27, 2007 and distributed for the 2007 annual meeting of the Company's stockholders (the "2007 Proxy Statement"), the false of misleading proxy statement dated April 28, 2006, and distributed for the 2006 annual meeting of the Company's stockholders (the "2006 Proxy Statement"), breach of contract, and breach of fiduciary duty.

5.    Plaintiff is a stockholder of the Company and was a stockholder at the time of the wrongs alleged herein, and has been such continuously since then.

6.    The Company is incorporated in the State of Delaware. The Company's stock is listed on the New York Stock Exchange. Its last fiscal year ended on December 31, 2006. As of April 16, 2007, Countrywide had 591,948,871 shares of common stock issued and outstanding. As of June 8, 2007, the last reported sales price by the close of market of the

common stock was $38.31 per share.  Through its subsidiaries Countrywide is engaged in mortgage lending and other real estate finance related businesses, including mortgage banking, banking and mortgage warehouse lending, dealing in securities, and insurance underwriting.

7.     Defendants Angelo R. Mozilo, Henry G. Cisneros, Robert L. Donato, Harley W. Snyder, Jeffrey M. Cunningham, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell,  and Michael E. Dougherty are all the members of the Company's board of directors.

8.     Defendant Angelo R. Mozilo is now, and has been for many years, the chairman of the board of directors and the Company's chief executive officer.

9.     During the Company's fiscal year ended December 31, 2006, and in earlier years, defendants Harley W. Snyder, Michael E. Dougherty, Robert J. Donato, Jeffrey W. Cunningham, and Oscar P. Robertson were the members of the compensation committee of the board of directors.

10.     In earlier years, defendants Robert T. Parry and Keith P. Russell were also members of the compensation committee of the board of directors.

11.     Plaintiff has not made any demand on the Company's board of directors to institute this action against the individual defendants.  To the extent that the demand requirement is governed by Delaware law, if a demand is made and rejected, the stockholder's challenge must be not to the underlying transaction, but to the board's decision not to bring the lawsuit.  Delaware law thus substantially alters the nature of a derivative

plaintiff's claim where demand has been made and conversely gives shareholders considering litigation good reason not to make demand.

12.    A majority of the board is either interested in the transactions and events alleged herein, or they otherwise lack independence. Of the 10 members of the board, Angelo R. Mozilo is interested in the materially false or misleading statements and omissions concerning his compensation because it creates the illusion that he is compliant with his statutory and fiduciary duties of disclosure and his fiduciary duties not to accept excessive compensation. At the same time, he is financially interested in receiving more compensation.

13.    Of the nine other members of the Company's board of directors, six of them were members of the board's compensation committee during the years when the compensation committee paid CEO Mozilo amounts greater than what was due him, for which they are liable, and they lack independence. They are defendants Snyder, Cunningham, Donato, Dougherty, Robertson, and Parry.

14.    Even in the absence of a traditionally interested (or non-independent) board, demand is excused under the facts at bar.

15.    The demand requirement and its exceptions are to encourage intra-corporate resolution of disputes and to obtain the business judgment of the board on whether the litigation is in the best interest of the corporation and its shareholders.  However, where a stockholder sues the board of directors over an act that is not a decision concerning the management of the business and affairs of the corporation, the business judgment rule does not apply.  Delaware law excuses demand whenever the challenged act of the board is not the

4

product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent. The board's conduct concerning the misrepresentations and omissions, and in violating the express terms and provisions of the program for compensating the CEO, are not matters of business judgment, and they are not protected by the business judgment rule for the following reasons:

(a)    When, for the stockholders' annual meeting, a corporate board solicits stockholders' votes for directors, the board owes the stockholders a statutory and fiduciary duty of full and fair disclosure, meaning that all material facts must be disclosed and no material facts may be omitted. This duty of disclosure is a thing apart from the duty and authority to deal with the business and property of the corporation. Courts give deference to a corporate board of directors as to questions of management of the corporation's business, but not as to questions of the board's performance of its disclosure duties, and for three reasons. First, a board's decision, even in good faith, to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the subject. Second, although courts may not be well suited to making business decisions, courts are well suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures. Third, allegations that a proxy statement has materially false or misleading representations and omissions could raise issues as to the honesty and good faith of the directors.

5

(b)     As with Delaware law, under federal policy, there is no need for prior demand on the board of directors with respect to the claim of misrepresentations and omissions in the 2007 Proxy Statement and the 2006 Proxy Statement.

(c)     At bar, the 2007 Proxy Statement and the 2006 Proxy Statement contain materially false or misleading statements and omissions concerning the dollar value of options granted to executive officers that vested in 2006, and the methods and procedures for determining the CEO's pay, under federal law and under Delaware law.  It also materially understates the total compensation of the CEO.

(d)     The entire board is neither disinterested nor independent since every member of the board is liable for the material misstatements and omissions in the Proxy Statement.

(e)     The individual defendants have sought to entrench themselves as members of the Company's board of directors by soliciting proxies for their own re-election.

(f)     The board of directors has committed waste in the matter of executive pay. Waste is egregious misconduct that is not protected by the business judgment rule, and it provides an excuse for not making demand. The past and present members of the compensation committee, who are a  majority of the full board of directors, granted stock options with unauthorized vesting schedules and stock options that were unauthorized under the CEO's employment agreement. Also, the compensation committee selected a group of comparable companies by which to assess the reasonableness of the total executive compensation, but they paid out materially, indeed shockingly, greater amounts than what the comparable companies paid.  CEO Mozilo was interested in these payments.

6

16.    The individual defendants authorized the distribution of the 2007 Proxy Statement to solicit the proxies of Countrywide's stockholders for, *inter alia*, the re-election to the board of defendants Henry G. Cisneros, Robert J. Donato, and Harley W. Snyder for a term expiring in 2010. Countrywide's directors have given themselves, and caused to persist, a staggered board of directors at Countrywide, whereby approximately one-third of the board stands for election each year for a three-year term. A staggered board assists the defendants in entrenching themselves as directors.

17.    The individual defendants permitted the use of their names in the 2007 Proxy Statement and in the 2006 Proxy Statement to solicit proxies.

18.    With respect to the solicitation of proxies for the annual meeting of stockholders on June 13, 2007, the 2007 Proxy Statement contains materially false or misleading statements and omits material facts concerning the compensation of the Company's CEO, defendant Angelo R. Mozilo. The purpose of a proxy statement is to inform the stockholders, not to challenge their critical wits. As a result, the 2007 Proxy Statement renders the stockholders unwitting agents of self-inflicted damage.

19.    The 2007 Proxy Statement violates Schedule 14A and Regulation S-K. Item 8 of Schedule 14A, 17 C.F.R. §240.14a-101, pertains to Compensation of Directors and Executive Officers. It expressly requires that a proxy statement must furnish the information required by Item 402 of Reg. S-K when the stockholders' proxies are solicited for the election of directors.

7

20.     Reg. S-K (Item 402(c)) requires that the proxy statement report the compensation of Named Executive Officers, as defined in 17 C.F.R. §229.402(a)(3), in a Summary Compensation Table broken into categories of compensation, e.g., salary, bonus, etc. 17 C.F.R. §229.402(c)(2)(vi) expressly requires the proxy statement to state the dollar amount recognized for financial statement reporting purposes in accordance with FAS 123R for stock option grants to the Named Executive Officers in the last fiscal year. FAS 123R is a Statement of Financial Accounting Standards issued in December 2004 by the Financial Accounting Standards Board of the Financial Accounting Foundation. FAS 123R establishes standards for the accounting for transactions in which an entity exchanges its equity instruments for goods or services. FAS 123R focuses primarily on accounting for transactions in which an entity obtains employee services in share-based payment transactions.

21.     For stock options, FAS 123R requires the use of a reliable, sound valuation technique, but it does not require a particular technique or model. It does, however, refer to the Black-Scholes-Merton option pricing model, lattice or binominal models, and the Monte Carlo simulation technique. Instruction 1 to 17 C.F.R. §229.402(c)(2)(vi) states, as to the dollar amounts of stock options:

> [I]nclude a footnote disclosing all assumptions made in the valuation by reference to a discussion of those assumptions in the registrant's financial statements, or discussion in the Management's Discussion and Analysis. The sections so referenced are deemed part of the disclosure provided pursuant to this Item.

8

22.    The SEC stated in Release 33-8765, 34-55009, 2006 WL 3782720, at *4 (December 22, 2006):

> Under FAS 123R, while the compensation cost is initially measured based on the grant date fair value of an award, it is generally recognized for financial reporting purposes over the period in which the employee is required to provide service in exchange for the award (generally the vesting period). ...
>
> [W]e have concluded that a combination of disclosure of the compensation cost associated with equity awards as that cost is recognized in the financial statements in the Summary Compensation Table, combined with disclosure of the grant date fair value of those awards on an [sic] grant-by-grant basis in the Grants of Plan-Based Awards Table, would prove a fuller and more useful picture of executive compensation than our recently adopted rules.

23.    The Summary Compensation Table in the 2007 Proxy Statement represents that the dollar value of the Option Awards to CEO Mozilo was $23,047,104. This representation is materially false or misleading, for the correct dollar value is $33,287,436.

24.    Footnote 2 to the Summary Compensation Table in the 2007 Proxy Statement represents:

> The amounts reported reflect the dollar amount recognized for financial statement reporting purposes for Fiscal 2006 in accordance with FAS 123(R) and may include amounts from awards granted prior to and during fiscal 2006. Assumptions used in the calculation of these amounts are included in note 2, summary of significant accounting policies, to our audited financial statements for Fiscal 2004, 2005 and 2006, which are included in our Annual Reports on Form 10-K for Fiscal 2004, 2005 and 2006.

In 2003, the Company granted to CEO Mozilo options on 2,000,002 shares. These options vested at the rate of 1/3 in each of the years 2004, 2005, and 2006. Based on the Black-Scholes value of the options of $4.47 per share, the valuation method the Company used as reported in Note 2 to the financial statements in the Company's Form 10-K for 2004 and 2005, the grant had a value of $8,940,009, one-third of which is $2,980,003. In 2004, the Company granted to CEO Mozilo options on 1,400,000 shares, which vested at the rate of 1/3 in each of 2005, 2006, and 2007. Based on the Black-Scholes value of the options of $11.09 per share, as reported in Note 2 to the financial statements the Company's Form 10-K for 2005 and 2006, the grant had a value of $15,526,000, one-third of which is $5,175,333. Because these dollar amounts of stock options vested in 2006, these amounts should have been included in the amount shown as the dollar value of the Option Awards in the Summary Compensation Table of the 2007 Proxy Statement. A reasonable stockholder, however, cannot determine whether they were.

25.    Footnote 4 to the Summary Compensation Table in the 2007 Proxy Statement represents that, since CEO Mozilo was eligible for retirement in 2006, the stock option that the Company granted to him in 2006 would have vested had he retired in 2006. Accordingly Footnote 4 represents that the full grant date fair value of the 2006 stock option is reportable in the Option Awards column. Again, a reasonable stockholder cannot determine whether it was reported.

26.    The Grants of Plan-Based Awards Table in the 2007 Proxy Statement reports that the value of CEO Mozilo's 2006 stock option on 1,400,000 shares is $19,012,000.

Adding that amount to the dollar value of the 2003 and 2004 stock option grants that vested in 2006 equals $27,167,336.

27.     Using the assumptions for expected life, volatility, interest, and dividend yield in Note 2 to the financial statements in the Company's 2006 Form 10-K, as directed by Footnote 2 to the Summary Compensation Table in the 2007 Proxy Statement, Countrywide applied a lattice model instead of Black-Scholes to value the stock options that it granted CEO Mozilo on April 3, 2006. The 2007 Proxy Statement, even with its reference to the 2006 financial statement, omits facts necessary to determine how it calculated the dollar value of Option Awards to CEO Mozilo as represented in the Summary Compensation Table.

28.     The Company's 2006 Proxy Statement reports that on April 1, 2005 the Company granted stock options on 1,400,000 shares to CEO Mozilo and that those options had a grant date present value of $18,360,300.

29.     The 2006 Proxy Statement also represents that the stock options that the Company granted to CEO Mozilo and, indeed, to all persons eligible, "were immediately exercisable in anticipation of new accounting rules that apply to stock options under Financial Accounting Standards 123(R)." These statements were in the Compensation Committee Report on Executive Compensation that was specifically incorporated by reference into the 2005 Form 10-K. The representation that the stock options granted to CEO Mozilo "were immediately exercisable" omits to disclose that the employment agreement between the Company and CEO Mozilo dated March 1, 2001 required that any stock options granted to CEO Mozilo could not be immediately exercisable but instead "shall vest as to

11

one-third of their respective underlying shares on each anniversary date of grant." Moreover, vesting was conditioned upon CEO Mozilo, as of the vesting date, being an employee of the Company or a consultant to the Company.

30.     The omission in the 2006 Proxy Statement of the facts concerning the immediate exercisability of CEO Mozilo's stock option was material, for the directors had solicted the votes of the stockholders for the re-election to the board, for a three-year term, of defendants Cunningham, Melone, and Parry, and of Kathleen Brown, who resigned from the Company's board on March 27, 2007, citing both personal and business reasons. Defendant Cunningham was then a member of the Company's board's compensation committee. Disclosures concerning the compensation of the CEO are required when directors are elected and are, therefore, material.

31.     Neither the compensation committee nor the full board had the authority to grant stock options in contravention of the requirements of the employment agreement dated March 1, 2001, just as they would have no authority to backdate stock options. Accordingly, the 2007 Proxy Statement's Summary Compensation Table wrongfully omitted to include one-third of the dollar value of CEO Mozilo's 2006 stock option in its statement of Option Awards. That amount is $6,120,100.

32.     The total of amounts that should have been reported for CEO Mozilo's stock options that vested in 2006 are as follows:

|      |       |              |
|------|-------|--------------|
| 2006 |       | $19,012,000  |
| 2005 |       | 6,120,100    |
| 2004 |       | 5,175,333    |
| 2003 |       | 2,980,003    |
|      | Total | $33,287,436  |

The amount actually reported was $23,047,104 for a difference of $10,240,332. This is a material difference, for the actual amount is 44 percent greater than disclosed.

33.    One of the most important improvements in the SEC's new method of disclosing corporate executive compensation is the inclusion of a final tally in the Summary Compensation Table. For each Named Executive Officer the Table provides a total dollar amount of each of the categories of compensation. In the 2007 Proxy Statement the Total Compensation for CEO Mozilo for the fiscal year ended December 31, 2006 is represented to be $48,133,155. This is materially false, for it is understated by the amount omitted from the dollar value of the Option Awards, or $10,240,332. The true total is $58,373,487, and it is 21 percent greater than the reported Total.

34.    The representation in the 2006 Proxy Statement that the 2005 stock options were immediately exercisable "in anticipation of new accounting rules that apply to stock options under Financial Accounting Standards 123(R)" omits to disclose that those "new accounting rules," which had been issued in December 2004, were to require the Company to treat those stock options as an expense and were to give the stockholders a better understanding of the Company's cost of compensating its officers and employees. That omission led the Company's stockholders into a false sense of security to understand that the

13

compensation committee was acting in the best interests of the Company and its stockholders when the opposite was true. That omission in the context of an election of directors was material, because the actual effect in making the 2005 stock options immediately exercisable was to under-report executive compensation in 2006, 2007, and 2008.

35.    The 2007 Proxy Statement represents that CEO Mozilo's stock options on 1,400,000 shares in fiscal year ended December 31, 2006 "were granted in accordance with the provisions of his employment agreement." This statement is materially false. The grants to CEO Mozilo of options on 1,400,000 shares had been required under the employment agreement dated March 1, 2001, but only "during the term" of that agreement, which expired on February 28, 2006. The Company granted those stock options on April 3, 2006, after the March 1, 2001 agreement had expired. Mozilo's employment agreement dated September 2, 2004, which was in effect when the Company granted the options on 1,400,000 shares, had no provision requiring the grant of those options. CEO Mozilo's 2006 stock options on 1,400,000 therefore should be cancelled.

36.    The members of the Company's board of directors have statutory and fiduciary duties of disclosure to correctly report how executive pay is determined and to disclose all the material facts concerning the differences in the CEO's pay and the CEO's executive pay at the comparable, peer group companies. It is not the burden of the Company's stockholders to research these facts, but rather the duty of the board to disclose these differences and the reasons for them.

14

37.    Under Delaware law, directors and officers have a fiduciary duty to disclose all material facts when they seek stockholder action or communicate with stockholders. The fiduciary duty to disclose often overlaps and exceeds the affirmative duties to disclose under the federal securities laws. Where the federal laws mandate disclosure, Delaware law requires that any disclosure made be full and fair. There need not be an affirmative disclosure requirement under federal law, however, for a fiduciary duty to disclose to arise under Delaware law. Moreover, under Delaware law, stockholders are entitled to rely on the truthfulness of communications to them even if they are unrelated to requests for stockholder action. To the extent that plaintiff has a claim under federal law, he has an even greater claim under Delaware law.

38.    Unless the court enters an injunction requiring corrected disclosures in this and future proxy statements, the directors will be elected based on materially false or misleading proxy statements.

39.    These misrepresentations and omissions are presumptively material for they refer to statements expressly and affirmatively required by SEC regulations.

40.    All the individual defendants were negligent in that they knew or should have known that the aforesaid representations and omissions in the 2007 Proxy Statement and the 2006 Proxy Statement were materially false or misleading. To the extent that this complaint prays for injunctive relief to correct materially false or misleading representations, such remedies are available even if they were not negligent.

41.    The misrepresentations and omissions have caused injury to the Company. Good disclosure is valuable because it lowers the Company's cost of capital, and bad disclosure injures the Company because it does the opposite. The SEC, in Executive Compensation Disclosure, 2006 WL 3782720 at *15 (Dec. 22, 2006) (concerning improved disclosure of stock options values in proxy statements) said:

> Although [the value of disclosure is] difficult to quantify, disclosure under the amendments will benefit investors in terms of the transparency, completeness and accessibility of executive compensation disclosure.

It is difficult, but not impossible. If the directors do not correct these disclosures, they should account to the Company for the injury that it sustains.

42.    In granting stock options in 2006 to CEO Mozilo, the compensation committee failed to follow his employment agreement.

43.    The members of the compensation committee have fiduciary duties of loyalty to the Company to follow contractual limits for granting stock options. Failure to perform those duties constitutes waste for which they must account to the Company.

44.    CEO Mozilo as an officer and director of the Company also has fiduciary duties of loyalty to the Company. Accepting stock options that were not authorized in his employment agreement is a breach of those duties for which he must account to the Company.

45.    The payments made for fiscal year ended 2006 to CEO Mozilo are grossly excessive, even as materially understated in the 2007 Proxy Statement. In addition, the

payments made to CEO Mozilo for fiscal years ended 2004 and 2005 are grossly excessive, even as sanitized by the peer group references in the 2007 Proxy Statement.

46.    The 2007 Proxy Statement represented that the compensation to CEO Mozilo was $48,133,155 in fiscal year ended 2006.

47.    For the fiscal years 2004 and 2005, the compensation to CEO Mozilo, as calculated under 17 C.F.R. §229.402(c), effective December 29, 2006, and if his 2005 stock options were accounted for correctly, were, respectively, approximately $33 million and $32 million.

48.    The 2007 Proxy Statement represents:

> In order to review specific pay levels at our peer companies, we gather information about executive compensation and practices using publicly available information as well as published compensation surveys. We gather information for all elements of direct compensation, including base salary, annual incentive bonuses and long-term incentives. Not every peer company reports information for executive positions that are similar to ours. Therefore, we also review pay levels and practices among a broader group of similarly sized financial services organizations using published compensation surveys. For this review, depending on availability of data, we generally consider organizations with assets of $50 to $100 billion. Asset size tends to be the financial metric most closely correlated to pay practices among diversified financial companies, and it is the primary financial scope measure provided in financial services industry compensation surveys.

This representation is materially false or misleading for, while asset size may tend to be the financial metric most closely correlated to pay practices among diversified financial companies, the CEO pay at Countrywide correlates to much larger companies.

17

49.    The 2007 Proxy Statement represents that the compensation committee has compared the compensation of CEO Mozilo to the compensation at a peer group of companies and that the committee has historically targeted his compensation at or above the 90th percentile for his peer group.  These representations are materially false or misleading because the 2007 Proxy Statement omits to disclose how much higher the pay was to the Company's CEO than to the CEOs at the peer group firms. The differences are so great as to shock the conscience. Omission of these facts renders the 2007 Proxy Statement materially false or misleading, because it represents that the Company's CEOs' pay is within the range of the CEOs' pay at the peer group companies.

50.    Countrywide's total assets at year-end 2005 and 2006 were, respectively, approximately $175 Billion and $200 Billion. In its peer group were the following:

------------------In Billions---------------------

| Year-end 2006 | Assets | Stockholders' Equity | Net Income |
|---|---|---|---|
| Bank of America Corp | $1,488 | $130 | $21 |
| Citigroup, Inc. | 1,884 | 119 | 22 |
| J.P. Morgan Chase | 1,351 | 116 | 20 |
| Merrill Lynch & Co. Inc. | 841 | 39 | 7 |
| Countrywide | 200 | 14 | 3 |

The reported 2006 compensation of the CEO at each of the foregoing firms was, approximately, as follows:

| | |
|---|---|
| Bank of America Corp | $28 million |
| Citigroup, Inc. | $26 million |
| J.P. Morgan Chase | $39 million |
| Merrill Lynch & Co. Inc. | $48 million |
| Countrywide | $48 million |

As the 2007 Proxy Statement omits to disclose, CEO Mozilo heads a company that has materially smaller financial metrics than the high paying companies in its peer group, but Countrywide pays him more than the large peer group companies pay their CEOs.

51.    Also in Countrywide's peer group were the following companies with financial metrics far more comparable than those in ¶50:

| Year-end 2006 | ---------------------In Billions--------------------- | | |
|---|---|---|---|
| | Assets | Stockholders' Equity | Net Income |
| Washington Mutual, Inc. | $346 | $27 | $14 |
| Sun Trust Banks, Inc. | 182 | 18 | 2 |
| National City Corporation | 139 | 13 | 2 |
| Countrywide | 200 | 14 | 3 |

The reported 2006 Compensation of the CEO at each of the foregoing firms was, approximately, as follows:

| | |
|---|---|
| Washington Mutual, Inc. | $14 million |
| Sun Trust Banks, Inc. | 8 million |
| National City Corporation | 9 million |
| Countrywide | 48 million |

As the 2007 Proxy Statement omits to disclose, the peer group members that have financial metrics that are similar to those of Countrywide pay their CEOs materially less than what Countrywide pays CEO Mozilo.

52.     The members of the compensation committee of the Company's board of directors owe the Company fiduciary duties of loyalty, including the duty to pay only reasonable compensation to executives.

53.     CEO Mozilo has the fiduciary duty to accept only reasonable amounts of pay. His acceptance and retention of more than reasonable amounts of pay constitutes a breach of that duty and unjust enrichment.

54.     The aforesaid breach of duties of disclosure and loyalty have injured the Company.

WHEREFORE, plaintiff prays for the following relief:

A.     An injunction against the 2007 annual meeting of stockholders;

B.     Voiding the elections of directors for 2006 and also for 2007 if no injunction is entered before the meeting;

C.     Equitable relief against defendants from hereafter engaging in the practices as particularized above;

D.     An equitable accounting against all the individual defendants in favor of the Company for the injuries that it has sustained and will sustain by virtue of the conduct alleged herein;

E.     Awarding plaintiff the costs and disbursements of this action, including reasonable accountants', experts' and attorneys' fees; and

F.    Granting such other, further relief, whether similar or different, as by this

Court may be deemed just and proper.

Dated:  June 12, 2007

BIGGS and BATTAGLIA

By:_____

Robert D. Goldberg (I.D. No. 631)
921 North Orange Street
PO Box 1489
Wilmington, DE  19899-1489
Tel: (302) 655-9677
Fax: (302) 655-7924
goldberg@batlaw.com
Attorneys for Plaintiff

*Of Counsel*
Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600

21

## VERIFICATION

I, Harry Foy, hereby verify that I am President of International Brotherhood of Electrical Workers Local 98 Pension Fund ("the Fund") and am authorized to make this verification on its behalf; I have reviewed the Complaint and authorize its filing on behalf of the Fund; and that the facts set forth in the Complaint are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

DATE: June/2, 2007

_____
Harry Foy

JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

International Brotherhood of Electrical
Workers Local 98 Pension Fund

(b) County of Residence of First Listed Plaintiff  __Philadelphia__
(EXCEPT IN U.S. PLAINTIFF CASES)

(c)  Attorney's (Firm Name, Address, and Telephone Number)
Robert D. Goldberg Biggs and Battaglia (302)6559677
PO Box 1489, Wilm., DE 19899

## DEFENDANTS

Angelo R. Mozilo, et. al.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 78 n(a)

Brief description of cause:
Derivative Action Claiming Waste and Breach of Fiduciary Duties

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  6/12/07

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ **0 7 - 3 7 2**

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

### *NOTICE OF AVAILABILITY OF A*
### *UNITED STATES MAGISTRATE JUDGE*
### *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___11___ COPIES OF AO FORM 85.

_6/12/07_
(Date forms issued)

_Larrief Dean_
(Signature of Party or their Representative)

_Karrief Dean_
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action