IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND,<br><br>Plaintiff,<br><br>v.<br><br>ANGELO R. MOZILO, HENRY G. CISNEROS, ROBERT L. DONATO, HARLEY W. SNYDER, JEFFREY M. CUNNINGHAM, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL, MICHAEL E. DOUGHERTY, and COUNTRYWIDE FINANCIAL CORPORATION,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 07-372-*** |
| ADAM BLUMBERG,<br><br>Plaintiff,<br><br>v.<br><br>ANGELO R. MOZILO, HENRY G. CISNEROS, ROBERT L. DONATO, HARLEY W. SNYDER, JEFFREY M. CUNNINGHAM, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL, MICHAEL E. DOUGHERTY, DAVID SAMBOL, KATHLEEN BROWN and COUNTRYWIDE FINANCIAL CORPORATION,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 07-717-*** |

**DEFENDANTS' EMERGENCY MOTION FOR STAY OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

RLF1-3245297-1

Defendants Countrywide Financial Corporation ("Countrywide"), Angelo R. Mozilo, Henry G. Cisneros, Robert L. Donato, Harley W. Snyder, Jeffrey M. Cunningham, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell and David Sambol (together with Countrywide, "Defendants") respectfully move this Court for an order staying any proceedings in respect of plaintiffs' motion for partial summary judgment (filed January 15, 2008) until after the Court resolves the pending motion to consolidate the above-captioned actions, the filing of a consolidated amended complaint, and Defendants' motion to dismiss such consolidated amended complaint for failure to make demand on Countrywide's board of directors before filing suit (as required by Delaware law). The grounds for this motion are set forth below in lieu of an opening brief:

**Background**

1. This is a shareholder derivative lawsuit ostensibly filed on behalf of Countrywide Financial Corporation by plaintiffs, who claim to be Countrywide shareholders. Countrywide is a Delaware-chartered corporation with its principal place of business in Calabasas, California. Plaintiffs' motion for partial summary judgment (C.A. No. 07-372, D.I. 18; C.A. No. 07-717, D.I. 12) is (a) inconsistent with the schedule that the parties previously agreed to and this Court ordered and is (b) premature in that it entirely ignores the need for this Court to resolve the threshold legal issue of whether plaintiffs inappropriately filed these cases without first making demand on the Countrywide board of directors asking it to consider whether prosecution of this lawsuit on Countrywide's behalf would be in the Company's and shareholders' best interests. Unless plaintiffs can meet the difficult burden of demonstrating, through particularized factual allegations, that presuit demand on the Company's board of directors before commencing this lawsuit should be excused, plaintiffs have no standing to prosecute these cases and no legal right

to move for summary judgment or any other relief of any sort. Rather, plaintiffs would be required to make demand on the Board.

2. Plaintiffs' rush to file this motion, before the cases have even been consolidated and a consolidated amended complaint filed, likely resulted from the recent announcement by Bank of America Corporation, on January 11, 2008, that it had entered into a definitive merger agreement to acquire all of the outstanding shares of Countrywide stock and that it expects this deal to close in the third quarter of this year. *See* Exhibit A hereto (press release dated January 11, 2008). Under controlling precedent from the Delaware Supreme Court, upon the consummation of the transaction plaintiffs will lose any right to sue derivatively for relief on behalf of Countrywide because any such claims will pass to Bank of America. *See Lewis v. Ward*, 852 A.2d 896 (Del. 2004).

3. Plaintiffs' rush also likely resulted from Defendants notifying the Court and the plaintiffs that it intends to move to transfer these cases to the United States District Court for the Central District of California.[1] Two other shareholder derivative actions filed ostensibly on behalf of Countrywide currently are pending in the United States District Court for the Central District of California (in Los Angeles) and assert the same legal claims against virtually identical parties as in the *IBEW* and *Blumberg* cases.[2] Defendants intend to move to transfer the *IBEW* and *Blumberg* cases to the Central District of California, where Countrywide has its principal place of business, where all material events at issue in these cases took place, where virtually all likely witnesses reside or travel to for Countrywide business, and where all relevant documents

---

[1] *See, e.g.*, C.A. No. 07-372, D.I. 15.

[2] *See Arkansas Teacher Retirement System, et al. v. Mozilo, et al.*, C.A. No. CV 07-06923-MRP (MANx), and *Public Employees' Retirement System v. Mozilo, et al.*, C.A. No. CV 07-07058-MRP (MANx).

3

are located. Upon transfer, Defendants intend to move to consolidate the current cases into the California federal derivative cases.

**Plaintiffs' Motion for Partial Summary Judgment Ignores The Court-Ordered Schedule.**

4. On June 12, 2007, plaintiff filed *International Brotherhood of Electrical Works Local 98 Pension Fund v. Mozilo, et al.*, C.A. No. 07-372 asserting derivative claims ostensibly on behalf of Countrywide against certain current and former members of Countrywide's board of directors. By agreement of the parties and order of the Court, Defendants' motion to dismiss the *IBEW* complaint was to be due on August 23, 2007. *See* C.A. No. 07-372, D.I. 5 (so ordered July 9, 2007). On August 17, 2007, as Defendants were finalizing their motion to dismiss, which included the threshold and dispositive legal argument that plaintiff failed to make presuit demand on the Company's board of directors and that such failure was not excused, plaintiff's counsel advised counsel for the Defendants that plaintiff intended to amend the complaint. As a result, the parties stipulated and the Court ordered that it would be a waste of party and judicial resources for Defendants to respond to a complaint that was about to be superseded. *See* C.A. No. 07-372, D.I. 7 (so ordered Aug. 21, 2007). On September 14, 2007, plaintiff filed its amended complaint, which contained many of the same allegations (i.e., insider trading) that are present in the shareholder derivative cases currently pending in state and federal courts in California. The parties stipulated (and the Court then ordered) that Defendants' motion to dismiss would be due on November 13, 2007. *See id.* On November 6, 2007, again as Defendants were finalizing their motion to dismiss, plaintiff's counsel commenced a copycat lawsuit in this Court, *Adam Blumberg v. Angelo R. Mozilo, et al.*, C.A. No. 07-717, and notified counsel for Defendants that it intended to seek to consolidate the two cases and file a consolidated amended complaint. In light of this development, the parties stipulated (and the

Court then ordered) that it would be a waste of party and judicial resources for Defendants to file the motion to dismiss. *See* C.A. No. 07-372, D.I. 9 (so ordered Nov. 13, 2007).

     5.     Specifically, the parties stipulated and the Court ordered that:

> [I]n the interest of efficiency, the parties have agreed that Defendants need not respond to the Verified Amended Complaint in the present action and shall have sixty (60) days after service of any consolidated amended complaint to move, answer or otherwise respond to such consolidated amended complaint. In the event that the present case and the *Blumberg* case are not consolidated, the parties shall meet and confer on a reasonable schedule for Defendants to respond to the Verified Amended Complaint.
>
> *Id.* at 2.

     6.     Accordingly, the parties contemplated, and the Court ordered, that Defendants need not respond to the present complaint, that if the cases were consolidated plaintiffs would file a consolidated complaint and Defendants would have 60 days thereafter to move to dismiss. Indeed, Defendants have twice now been on the verge of filing motions to dismiss plaintiff's complaint for failure to make demand on the board of directors (among other things), and one week before Defendants were to file the motion, plaintiff decided to amend the complaint or filed a substantially similar action that it sought to have consolidated.

     7.     On December 20, 2007, plaintiffs moved to consolidate the above-captioned actions. *See, e.g.*, C.A. No. 07-372, D.I. 10. Defendants did not oppose the motion. That motion is pending, and no consolidated complaint has yet been filed.

     8.     At no point did plaintiffs indicate in any way that they intended to file a motion for partial summary judgment before the cases were consolidated, before they filed a consolidated amended complaint, or before the Court had an opportunity to resolve the threshold issue of corporate governance in all derivative cases – whether plaintiffs have pleaded particularized facts demonstrating that presuit demand on the company's board of directors is excused. *Aronson v. Lewis*, 473 A.2d 805, 808 (Del. 1984).

**Plaintiffs' Motion for Partial Summary Judgment is Premature Because the Threshold Issue of Whether Plaintiffs Can Bring This Lawsuit on Behalf of Countrywide First Must Be Decided.**

9. Countrywide is incorporated under Delaware law. Under controlling Delaware law, before filing a shareholder derivative lawsuit like the present one that seeks relief in the name of and for the ostensible benefit of a corporation, a shareholder of the corporation must first demand that the corporation's board of directors consider whether it should bring such litigation directly and whether doing so would be in the corporation's and shareholders' best interests. Delaware law presumes that a board consisting of a majority of directors who can make an objective, disinterested decision regarding any demand is in the best position to decide whether litigation should be prosecuted on behalf of the company. *Aronson*, 473 A.2d at 812-13. As the Delaware Supreme Court held in *Levine v. Smith*, "[t]he directors of a corporation and not its shareholders manage the business and affairs of the corporation, and accordingly, the directors are responsible for deciding whether to engage in derivative litigation." 591 A.2d 194, 200 (Del. 1991). The requirement of making demand on the board before filing an ostensible derivative lawsuit is not a technical pleading rule. Rather, it is "a rule of substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise." *Aronson*, 473 A.2d at 809.

10. In order to avoid making demand, a shareholder must plead in his complaint particularized facts calling into question the ability of a majority of directors objectively to consider a demand were one made and demonstrating that making such pre-suit demand would have been futile. *Levine*, 591 A.2d at 197. This is a heavy burden. *See, e.g., Allison v. General Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del. 1985) ("[T]he shareholder must either make a demand or plead with particularity the exceptional circumstances that demonstrate why a

6

demand would be futile"); *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (plaintiff must satisfy the "stringent requirement[] of factual particularity" as to why and on what grounds demand is excused and may not rely on "conclusory statements or mere notice pleading").

11.  Here, plaintiffs did not make demand and have not adequately alleged that demand would have been futile. Defendants believe that plaintiffs have not come close to pleading particularized facts demonstrating that demand would have been futile. For that reason, Defendants intend to move to dismiss these cases once plaintiffs file a consolidated amended complaint as the parties agreement and the Court's order contemplates. If the Court finds that the plaintiffs, as required by Delaware substantive law, should have made demand before filing this suit, the case must be dismissed and plaintiffs would have no right to seek any relief whatsoever, whether by motion for summary judgment or otherwise. In short, by moving prematurely for partial summary judgment before this substantive question of Delaware corporate governance can first be decided by the Court, plaintiffs have put the cart very much before the horse. More important, plaintiffs have asked this Court as well as Defendants to expend time, energy and resources on what Defendants believe would be entirely unnecessary work in the event the Court finds that pre-suit demand should have been made on the Countrywide Board in accordance with Delaware law.

**Plaintiffs Will Lose Standing to Maintain These Lawsuits Upon Consummation of the Merger between Bank of America and Countrywide.**

12.  Recent events appear to be driving plaintiffs' recent actions in this litigation. On January 11, 2008, Bank of America announced a definitive agreement to purchase all of the outstanding shares of Countrywide stock. *See* Ex. A. Upon consummation of this transaction, plaintiffs will no longer be shareholders of Countrywide and therefore will lose standing to pursue all of the derivative claims alleged herein. *See Lewis v. Ward*, 852 A.2d 896, 900-01

(Del. 2004). As the Delaware Supreme Court unambiguously held in *Lewis*, "[u]nder Delaware law, it is well established that a merger which eliminates a derivative Plaintiffs' ownership of shares of the corporation for whose benefit she has sued terminates her standing to pursue those derivative claims." *Id.*

**Defendants Intend to Move to Transfer Venue to the Central District of California.**

13. Plaintiffs' motion for partial summary judgment also is premature in light of Defendants' intention to file a motion under 28 U.S.C. § 1404 to transfer the above-captioned cases to the United States District Court for the Central District of California. In response to plaintiffs' motion to consolidate the two cases, Defendants last week alerted the Court and plaintiffs of their intention to move to transfer venue to the United States District Court for the Central District of California. *See, e.g.*, C.A. No. 07-372, D.I. 15.

14. Transferring the cases to where Countrywide has its principal place of business, where all material events at issue in these cases took place, where virtually all likely witnesses reside or travel to for Countrywide business, and where all relevant documents are located makes sense. In a shareholder derivative case like this, which is ostensibly brought on behalf of a corporation in which the plaintiff claims to own shares, the place of residence of the corporation (and the witnesses) is of paramount concern, and the plaintiffs' choice of forum is entitled to little, if any, weight.

15. Moreover, two other shareholder derivative actions filed ostensibly on behalf of Countrywide currently are pending in the United States District Court for the Central District of California (in Los Angeles) and assert the same claims against virtually identical parties as in the *IBEW* and *Blumberg* cases. *See supra* at n. 2. The transfer of these cases to the Central District of California therefore would be most efficient and convenient for the parties, the witnesses and

8

the Court, would avoid a duplication of labor and risk of conflicting results and would plainly serve the interests of justice. Upon transfer, Defendants will move to consolidate the actions into the California federal derivative cases.

16. The interests of judicial economy and efficiency and conserving Court and party resources will best be served if the transfer motion is decided before Defendants respond to plaintiffs' motion for partial summary judgment, or move to dismiss any consolidated amended complaint that may be filed.

**Conclusion**

17. For the reasons set forth above, Defendants submit that plaintiffs' motion for partial summary judgment: (i) is premature because it ignores the schedule agreed to by the parties and ordered by the Court; (ii) ignores that the Court must address the threshold legal issue of whether plaintiffs even have standing to assert these derivative claims; (iii) would result in the expenditure of needless resources by the Court and the parties until after a consolidated complaint is filed and the Court rules on Defendants' motion to dismiss for failure to make demand.

WHEREFORE, Defendants respectfully request that this Court enter an order staying plaintiffs' motion for partial summary judgment until after the Court resolves the pending motion to consolidate the above-captioned actions, the filing of a consolidated amended complaint, and Defendants' motion to dismiss.

/s/ [signature]
Thomas A. Beck (#2086)
beck@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19801
(302) 651-7700

Attorneys for Angelo R. Mozilo, Henry G.
Cisneros, Robert L. Donato, Harley W.
Snyder, Jeffrey M. Cunningham, Martin R.
Melone, Robert T. Parry, Oscar P. Robertson,
Keith P. Russell, David Sambol and
Countrywide Financial Corporation

OF COUNSEL:

Brian E. Pastuszenski
Stuart M. Glass
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
617.570.1000

Dated:   January 18, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to, and also hand delivered same to:

Robert D. Goldberg, Esquire
Biggs & Battaglia
921 North Orange Street
P.O. Box 1489
Wilmington, DE 19899

Edward P. Welch, Esquire
Edward B. Micheletti, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square, P.O. Box 636
Wilmington, DE 19899-0636

Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger
One Rodney Square
PO Box 551
Wilmington, DE 19899

RLF1-3177065-1

# EXHIBIT A

Print Page | Close Window

## Bank of America Agrees to Purchase Countrywide Financial Corp.

Creates Largest U.S. Mortgage Lender and Servicer

CHARLOTTE, N.C., Jan. 11 /PRNewswire/ -- Bank of America Corporation today announced a definitive agreement to purchase Countrywide Financial Corp. in an all-stock transaction worth approximately $4 billion.

The purchase will make Bank of America the nation's largest mortgage lender and loan servicer. This is an important advancement in the company's desire to help customers and clients meet all of their financial needs. A mortgage is one of the key foundations of many customer relationships.

Countrywide will benefit from the stability of being part of the largest and one of the most financially strong financial institutions in the United States.

Bank of America will benefit from Countrywide's broader mortgage capabilities, including its extensive retail, wholesale and correspondent distribution networks. The Calabasas, California-based company operates more than 1,000 field offices and has a sales force of nearly 15,000. Countrywide also has a leading mortgage technology platform, a well known brand in home lending and management expertise in a number of key areas.

Bank of America would gain greater scale in originating and servicing mortgages in the U.S. Countrywide had $408 billion in mortgage originations in 2007 and has a servicing portfolio of about $1.5 trillion with 9 million loans. The purchase also includes Countrywide's Lender Placed Insurance and other businesses.

"Countrywide presents a rare opportunity for Bank of America to add what we believe is the best domestic mortgage platform at an attractive price and to affirm our position as the nation's premier lender to consumers," Bank of America Chairman and Chief Executive Officer Kenneth D. Lewis said. "Countrywide customers will gain access to a broad set of consumer products including credit cards and deposit services. Home ownership is a fundamental pillar of the U.S. economy and over time it will be a key area of growth for Bank of America."

"We are aware of the issues within the housing and mortgage industries," Lewis continued. "The transaction reflects those challenges. Mortgages will continue to be an important relationship product, and we now will have an opportunity to better serve our customers and to enhance future profitability."

Countrywide's deep retail distribution will enhance Bank of America's network of more than 6,100 banking centers throughout the U.S. After closing, Bank of America plans to operate Countrywide separately under the Countrywide brand with integration occurring no sooner than 2009.

"We believe this is the right decision for our shareholders, customers and employees," said Countrywide Chairman and Chief Executive Officer Angelo R. Mozilo. "Bank of America is one of the largest financial institutions in the U.S. and internationally, and we are confident that the combination of Countrywide and Bank of America will create one of the most powerful mortgage franchises in the world. We have had a long and positive relationship with Bank of America and our servicing and origination businesses, as well as other aspects of our operations, will be substantially enhanced as a result of this transaction."

Financial Terms

Under the terms of the agreement, shareholders of Countrywide would receive .1822 of a share of Bank of America stock in exchange for each share of Countrywide.

The purchase is expected to close in the third quarter and to be neutral to Bank of America earnings per share in 2008 and accretive in 2009, excluding merger and restructuring costs.

Bank of America expects $670 million in after-tax cost savings in the transaction, or 11 percent of

the expense base of the two companies' mortgage operations. About one third of those savings would come in 2009, two thirds would be realized in 2010 and savings would be fully realized in 2011.

The agreement has been approved by Bank of America's board of directors and Countrywide's board of directors and is subject to approval by Countrywide's shareholders and customary regulatory approvals.

Subprime Initiatives

Origination of subprime loans is not planned for the combined company. Both companies share the goal of keeping distressed mortgage borrowers in their homes when possible. Both Bank of America and Countrywide continue to work with public officials and community groups to explore new initiatives to help homebuyers and communities affected by the subprime issue.

- Bank of America and Countrywide both support efforts to fight predatory lending practices.
- Bank of America and Countrywide are active participants in the Hope Now Alliance, which has launched a letter campaign to delinquent borrowers, created a counseling hotline and facilitates the sharing of best servicing practices. Bank of America also will continue Countrywide's commitment to participate in the American Securitization Forum's December 2007 reset freeze framework for 2/28 and 3/27 adjustable rate mortgages (ARMs).
- Bank of America will continue Countrywide's commitment to participate in California Governor Arnold Schwarzenegger's November 2007 subprime ARM program.

Bank of America plans to expand the capacity and marketing of credit counseling programs and internal capacity and flexibility for loan modifications for loan workout teams following the purchase of Countrywide.

Countrywide also has a number of programs in place designed to minimize foreclosures where feasible.

- On October 23, 2007, Countrywide announced a major expansion of its foreclosure prevention efforts by starting a $16 billion home preservation program to assist as many as 82,000 subprime hybrid ARM customers facing ARM resets through the end of 2008.
- On October 24, 2007, Countrywide entered into a groundbreaking partnership with the Neighborhood Assistance Corporation of America (NACA) to leverage Countrywide's market leading home retention programs and NACA's unique model for counseling borrowers.
- On December 21, 2007, Countrywide announced work on an agreement with the Association of Community Organizations for Reform Now (ACORN) to serve as a blueprint for home retention and foreclosure prevention initiatives in the mortgage industry, with a particular focus on subprime borrowers.

Bank of America was advised by Banc of America Securities and the law firms of Cleary, Gottlieb, Steen & Hamilton LLP and K&L Gates in the transaction. Countrywide was advised by Sandler O'Neill & Partners LP and Goldman Sachs Group Inc. and the law firm of Wachtell Lipton Rosen & Katz. Countrywide's Board of Directors was advised by Sandler O'Neill & Partners LP. Both Goldman Sachs and Sandler O'Neill delivered fairness opinions to the Countrywide Board.

Note: Bank of America management will present transaction details in an 8:30 a.m. webcast today. The presentation and supporting materials can be accessed on the Bank of America Investor Relations Web site at http://investor.bankofamerica.com. For a listen-only connection to the conference call, dial 800.895.1241 and the conference ID: 79795.

Bank of America

Bank of America is one of the world's largest financial institutions, serving individual consumers, small and middle market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk-management products and services. The company provides unmatched convenience in the United States, serving more than 57 million consumer and small business relationships with more than 6,100 retail banking offices, more than 17,000 ATMs and award-winning online banking with more than 23 million active users. Bank of America is the

No. 1 overall Small Business Administration (SBA) lender in the United States and the No. 1 SBA lender to minority-owned small businesses. The company serves clients in 175 countries and has relationships with 99 percent of the U.S. Fortune 500 companies and 80 percent of the Fortune Global 500. Bank of America Corporation stock (NYSE: BAC) is listed on the New York Stock Exchange.

http://www.bankofamerica.com

Countrywide Financial

Founded in 1969, Countrywide Financial Corporation (NYSE: CFC) is a diversified financial services provider and a member of the S&P 500, Forbes 2000 and Fortune 500. Through its family of companies, Countrywide originates, purchases, securitizes, sells, and services residential and commercial loans; provides loan closing services such as credit reports, appraisals and flood determinations; offers banking services which include depository and home loan products; conducts fixed income securities underwriting and trading activities; provides property, life and casualty insurance; and manages a captive mortgage reinsurance company. For more information about the Company, visit Countrywide's website at http://www.countrywide.com.

Forward-Looking Statements

This press release contains forward-looking statements, including statements about the financial conditions, results of operations and earnings outlook of Bank of America Corporation. The forward-looking statements involve certain risks and uncertainties. Factors that may cause actual results or earnings to differ materially from such forward-looking statements include, among others, the following: 1) projected business increases following process changes and other investments are lower than expected; 2) competitive pressure among financial services companies increases significantly; 3) general economic conditions are less favorable than expected; 4) political conditions including the threat of future terrorist activity and related actions by the United States abroad may adversely affect the company's businesses and economic conditions as a whole; 5) changes in the interest rate environment and market liquidity reduce interest margins, impact funding sources and effect the ability to originate and distribute financial products in the primary and secondary markets; 6) changes in foreign exchange rates increases exposure; 7) changes in market rates and prices may adversely impact the value of financial products; 8) legislation or regulatory environments, requirements or changes adversely affect the businesses in which the company is engaged; 9) changes in accounting standards, rules or interpretations, 10) litigation liabilities, including costs, expenses, settlements and judgments, may adversely affect the company or its businesses; 11) mergers and acquisitions and their integration into the company; and 12) decisions to downsize, sell or close units or otherwise change the business mix of any of the company. Accordingly, readers are cautioned not to place undue reliance on forward-looking statements, which speak only as of the date on which they are made. Bank of America does not undertake to update forward-looking statements to reflect the impact of circumstances or events that arise after the date the forward-looking statements are made. For further information regarding Bank of America Corporation, please read the Bank of America reports filed with the SEC and available at www.sec.gov.

Additional Information About this Transaction

In connection with the proposed merger, Bank of America will file with the SEC a Registration Statement on Form S-4 that will include a proxy statement of Countrywide that also constitutes a prospectus of Bank of America. Countrywide will mail the proxy statement/prospectus to its stockholders. Bank of America and Countrywide urge investors and security holders to read the proxy statement/prospectus regarding the proposed merger when it becomes available because it will contain important information. You may obtain copies of all documents filed with the SEC regarding this transaction, free of charge, at the SEC's website (www.sec.gov). You may also obtain these documents, free of charge, from Bank of America's website (www.bankofamerica.com) under the tab "About Bank of America" and then under the heading "Investor Relations" and then under the item "SEC Filings". You may also obtain these documents, free of charge, from Countrywide's website (www.countrywide.com) under the tab "Investor relations" and then under the heading "SEC & other filings."

Proxy Solicitation

Bank of America, Countrywide and their respective directors, executive officers and certain other members of management and employees may be soliciting proxies from Countrywide stockholders in favor of the merger. Information regarding the persons who may, under the rules of the SEC, be considered participants in the solicitation of the Countrywide stockholders in connection with the proposed merger will be set forth in the proxy statement/prospectus when it is filed with the SEC. You can find information about Bank of America's executive officers and directors in its definitive proxy statement filed with the SEC on March 19, 2007. You can find information about Countrywide's executive officers and directors in definitive proxy statement filed with the SEC on April 27, 2007. You can obtain free copies of these documents from Bank of America and Countrywide using the contact information above.

SOURCE Bank of America

CONTACT: Investors, Kevin Stitt, +1-704-386-5667, Lee McEntire, +1-704-388-6780, or Leyla Pakzad, +1-704-386-2024, all of Bank of America; or David Bigelow, +1-818-225-3121, or Lisa Riordan, +1-818-225-3959, both of Countrywide; or Media, Scott Silvestri, Bank of America, +1-980-388-9921, scott.silvestri@bankofamerica.com; or Countrywide Media Hotline, +1-800-796-8448

# CERTIFICATION PURSUANT TO
# DISTRICT OF DELAWARE LOCAL RULE 7.1.1

Counsel for Defendants has consulted with counsel for Plaintiffs pursuant to District of Delaware Local Rule 7.1.1 and has determined that Plaintiffs will not consent to the relief sought in the attached motion.

_____
Steven J. Fineman (#4025)