IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| ANGELO R. MOZILO, HENRY G. CISNEROS, ROBERT L. DONATO, HARLEY W. SNYDER, JEFFREY M. CUNNINGHAM, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL, MICHAEL E. DOUGHERTY, and COUNTRYWIDE FINANCIAL CORPORATION | ) ) ) ) ) ) ) ) ) ) | CA No. 07 – 00372 *** (MPT)<br><br>**Jury Trial Demanded** |
| Defendants. | ) ) | |
| ADAM BLUMBERG, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANGELO R. MOZILO, HENRY G. CISNEROS, ROBERT L. DONATO, HARLEY W. SNYDER, JEFFREY M. CUNNINGHAM, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL, MICHAEL E. DOUGHERTY, DAVID SAMBOL, KATHLEEN BROWN and COUNTRYWIDE FINANCIAL CORPORATION | ) ) ) ) ) ) ) ) ) ) ) ) | CA No. 07 – 00717 *** (MPT)<br><br>**Jury Trial Demanded** |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
EMERGENCY MOTION FOR A STAY**

January 22, 2008

BIGGS and BATTAGLIA
Robert D. Goldberg (I.D. No. 631)
921 North Orange Street
Wilmington DE 19899
Tel: 302.655.9677
Fax: 302.655.7924
goldsberg@batlaw.com
Attorneys for Plaintiff

*Of Counsel:*

Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
212.688.0782

Barrack, Rodos & Bacine
Daniel Bacine
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, Pennsylvania 19103
215.963.0600

Plaintiffs respectfully request this court to deny defendants' emergency motion to stay proceedings on the pending motion for partial summary judgment. Plaintiffs' motion was made in strict conformity with the rules governing summary judgment, and it is not inconsistent with any agreement or schedule of the parties or any order of this court. The resolution of demand issues, contrary to defendants' assertion, need not be decided before summary judgment, for it is not an issue of plaintiffs' standing to litigate this stockholders derivative action. Moreover, summary judgment is not premature, for it need not await a separate (and as yet unmade) motion concerning demand under Fed.R.Civ.P. 23.1 or transfer under 28 U.S.C. §1404.

**FACTS:**

1. On January 14 and 15, 2008, plaintiffs made a motion for partial summary judgment on the claim that the individual defendants, as officers and directors of Countrywide Financial Corporation, a Delaware corporation, ("Countrywide") breached their fiduciary duty of loyalty to Countrywide. The facts supporting this claim are that the directors were in possession of facts that there had been a downturn in the housing market and that this downturn meant that mortgage delinquencies would rise. Countrywide is a mortgage lender, and a rise in delinquencies would materially damage Countrywide's business and assets. Nevertheless, the directors caused Countrywide to repurchase nearly 10 percent of its stock for more than $2 billion. At the same time, the directors sold their own stock into the market realizing proceeds of more than $300 million. The documentary support for this motion comes from Countrywide's website, and it is attached to plaintiffs' moving papers.

**The Motion for Summary Judgment is Timely**

2.   Rule 56(a)(1) of the Federal Rules of Civil Procedure provides that a party claiming relief may move for summary judgment after 20 days have passed from commencement of the action. That there may be a rule of procedure, or an order, or a stipulation among parties that controls the time to answer a complaint does not require "a longer time before a motion can be made" for summary judgment under Rule 56. *Holtzman v. Richardson*, 361 F.Supp. 544, 547-48 (E.D.N.Y.) *reversed on other grounds*, 484 F.2d 1307 (2d Cir. 1973). Defendants argue that they have not yet had a chance to make a motion to dismiss the complaint and that they were not even required to make that motion yet. But a motion to dismiss the complaint is directed only at the pleadings. As the Third Circuit has held, "Summary judgment is designed to go beyond the pleadings in order to assess whether a genuine issue of material fact exists and whether a trial is necessary." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

3.   The *IBEW* complaint was filed June 12, 2007 and amended September 14, 2007. The *Blumberg* complaint was filed November 6, 2007. The motion for partial summary judgment was filed January 14, 2008. On July 13, 2007, Arnold Gershon, of counsel to plaintiff, wrote to Brian Pastuszenski, of counsel to defendants, to reiterate an oral request for a conference on discovery and other matters pursuant to F.R.Civ.P. 26(f). Copy attached as Exhibit 1. On July 30, 2007, Brian Pastuszenski wrote to Arnold Gershon to decline the request. Copy attached as Exhibit 2. Under such circumstances, as the court held in *Coregis Insurance Co. v. McCollum*, 961 F.Supp. 1572, 1576-77 (M.D. Fla. 1997), the motion for summary judgment is timely, and the defendants have had ample time to conduct discovery. Moreover, as the *Coregis* court also held, although

2

defendants assert that the timing of the summary judgment motion is inconsistent with the scheduling order, "[d]efendants failed to describe in what aspects the motion is inconsistent with this order." *Coregis,* 961 F.Supp. at 1577.

**<u>Demand Is Not a Matter of Standing</u>**

4. The defendants argue that disposition of a motion for summary judgment must await the resolution of a motion to dismiss under F.R.Civ.P. Rule 23.1, on the grounds that, until a plaintiff in stockholder's derivative action satisfies the demand requirements, it has no standing. But the demand requirement does not go to standing. As the court held in *LeBoyer v. Greenspan,* 2006 WL 2987705 at *2-*3 (C.D.Ca. Oct. 16, 2006) and reiterated at 2007 WL 4287646 at *2-*3 (C.D.Ca. June 12, 2007) standing ordinarily refers to whether a plaintiff has a redressable injury, but the demand rule, by contrast, is a substantive issue that concerns the allocation of corporate control and exhaustion of intracorporate remedies.

5. It is not unheard of for a court to consider cross motions for summary judgment by a plaintiff and to dismiss on demand grounds by defendants. *Seinfeld v. Barrett,* 2006 WL 890909 (D.Del. March 31, 2006). Indeed, at bar, the plaintiffs, mindful of the substantive demand requirement of Delaware law, have included in their brief a point entitled "Pre-suit Demand Is Excused." Defendants are thereby invited to refute that point, if they can.

**<u>Defendants Can Also Cross Move to Transfer</u>**

6. Defendants have twice asserted their intention to make a motion to transfer these cases to the U.S. District Court for the Central District of California. Such

3

motions should be made early, but the defendants have been dilatory. If they ever do make that motion, plaintiffs will suggest three reasons why the court should deny it.

7. First, defendants assert that two cases in California contain the same repurchase of stock claims that plaintiff now press in their motion for summary judgment. Yet, curiously, they have not attached copies of the complaints in those cases. Those complaints are not available on PACER, but plaintiffs have obtained one of them from the website of one of the law firms there. Attached as Exhibit 3 are the sum and substance of the repurchase allegations, taking less than two pages in a 125 page complaint. Notably, it lacks the specificity in the complaints at bar, and it omits reference to the most important fact, that the decline in the price of homes meant the increase in mortgage delinquencies.

8. Second, if the stock-for-stock acquisition of Countrywide by Bank of America occurs, defendants argue that plaintiffs will lose standing to prosecute stockholders' derivative actions, citing *Lewis v. Ward*, 852 A.2d 896 (Del.Supr. 2004). But they overlook the controlling contrary Third Circuit authority of *Blasband v. Rales*, 971 F.2d 1034, 1040-46 (3d Cir. 1992). There is no such controlling authority in the Ninth Circuit or the Central District of California, and there is no assurance that those courts will follow the Third Circuit. In *Prince v, Palmer*, 148 Fed.Appx. 249 (6th Cir. 2005) a sister court declined to do so. *Blasband v. Rales* is a good reason not to transfer this case. It would open the door to the loss of good claim on strictly procedural grounds that have received criticism of the Chancellor of Delaware. *Ash v. McCall*, 2000 WL 1370341 at *13 n.47 (Del.Ch. Sept. 15, 2000) (current rule in state court is inconsistent with basic economic principles as well as fundamental principles of equity and fairness).

9. Third, transfer for the convenience of parties and witnesses, pursuant to 28 U.S.C. §1404, is unnecessary where the case is ripe for summary judgment.

## CONCLUSION

10. The defendants are trying to extend the time indefinitely. Plaintiffs at bar have advanced unquestionable grounds for relief now. No other plaintiff in any other case has moved so far. If defendants have motions to make, they should do it here. Now.

11. Plaintiffs respectfully request the court to deny defendants' emergency motion for a stay.

                                                BIGGS and BATTAGLIA

January 22, 2008                   /s/ Robert D. Goldberg
                                        Robert D. Goldberg (I.D. No. 631)
                                        921 North Orange Street
                                        Wilmington DE 19899
                                        Tel: 302.655.9677
                                        Fax: 302.655.7924
                                        goldberg@batlaw.com
                                        Attorneys for Plaintiff

*Of Counsel:*

Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
212.688.0782

Barrack, Rodos & Bacine
Daniel Bacine
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, Pennsylvania 19103
215.963.0600

5

# EXHIBIT 1



**Barrack, Rodos & Bacine**
A Professional Corporation
Attorneys At Law
www.barrack.com

*Leonard Barrack*
*Gerald J. Rodos*
*Daniel E. Bacine*
*William J. Ban†*
*Jeffrey A. Barrack*
*Stephen R. Basser\**
*Regina M. Calcaterra†*
*Chad A. Carder\*\**
*A. Arnold Gershon††*
*Jeffrey B. Gittleman\*\**
*Jeffrey W. Golan*
*John L. Haeussler\**
*Robert A. Hoffman\*\**
*M. Richard Komins*
*Gloria Kui†††*
*Lisa M. Lamb*
*Leslie Bornstein Molder*
*Mark R. Rosen\*\*\**
*Beth R. Targan\*\**
*Samuel M. Ward\**

Of Counsel:
*Frances Vilella-Vélez††††*

Admitted in PA, except:
\*   Admitted in CA
\*\*  Also admitted in NJ
\*\*\* Also admitted in CA & NJ
†    Also admitted in NY
††   Admitted in NY
†††  Admitted in NY & NJ
†††† Also admitted in Puerto Rico

Main Office
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax

California Office
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax

New Jersey Office
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax

New York Office
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

July 13, 2007

**Via UPS**

Brian E. Pastuszenski, Esq.
Goodwin Procter LLP
53 State Street
Boston MA 02109

Re:   **IBEW v. Countrywide**

Dear Brian:

We reiterate our request, first raised in our conference call on July 3, 2007, that you confer with us pursuant to F.R.Civ.P. 26(f). Such a conference is required, we submit, even though you plan to make a motion to dismiss under F.R.Civ.P. 12(b)(6), to be based primarily on the grounds that demand is not excused. We call your attention to the Advisory Committee Notes to the 1993 amendments. In relevant part it states, "The obligation to participate in the planning process is imposed on all parties that have appeared in the case, including defendants who, because of a pending Rule 12 motion, may not have yet filed an answer in the case."

We also understand that it is your position that discovery is unavailable on demand issues when there is pending a Rule 12 motion based on demand. Such rule is one of Delaware law that is procedural in nature and that is inapplicable in the federal courts. *Fagin v. Gilmartin*, 432 F.3d 276, 285 n.2 (3d Cir. 2005). But even if it were applicable, it would have no effect on discovery directed to issues other than demand.

Finally, the constraints on discovery arising from §21D(b)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(b)(3)(B), are inapplicable to the extent that the complaint alleges state law claims and jurisdiction based on 28 U.S.C. §1332. *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F.Supp.2d 162 (S.D.N.Y 2001).

:eb

Yours sincerely,

Alexander Arnold Gershon
agershon@barrack.com

# EXHIBIT 2

GOODWIN | PROCTER

Brian E. Pastuszenski
617.570.1094
bpastuszenski@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

1235
CFC

July 30, 2007

**VIA FACSIMILE AND U.S. MAIL**

Alexander Arnold Gershon, Esq.
Barrack, Rodos & Bacine
1350 Broadway
Suite 1001
New York, NY 10018

Re:  *International Brotherhood of Electrical Workers Local 98 Pension Fund v. Angelo R. Mozilo, et al*, **United States District Court for the District of Delaware, C.A. No. 07-372**

Dear Mr. Gershon:

I have received your letter dated July 13, 2007 regarding the above-captioned case that your law firm has filed against my clients. Contrary to the arguments in your letter, discovery would not be appropriate at this time, and a discovery conference would be both unnecessary and needlessly wasteful. In fact, discovery has been stayed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") pending filing and resolution of my clients' motion to dismiss.

As I mentioned when we spoke on July 3, 2007 and as reflected in the stipulation and order entered by the Court on July 10, 2007, defendants will be filing a motion to dismiss the complaint in its entirety. Because the complaint alleges violations of the federal securities laws, the PSLRA automatically stays all discovery in this case pending resolution of the motion to dismiss. As a result, a Rule 26(f) conference would be premature at this time. See 15 U.S.C. § 78u-4(b)(3)(B); Pedroli v. Bartek, 2007 WL 1480967, at *1-2 (E.D. Tex., May 18, 2007) (deferring Rule 26 conference pending resolution of motion to dismiss in light of PSLRA discovery stay). Contrary to your letter, the presence in your complaint of both state law and federal law claims does not affect the applicability of the PSLRA stay. See SG Cowen Securities Corp. v. United States Dist. Ct., 189 F.3d 909, 913 n. 1 (9th Cir. 1999); Benbow v. Aspen Tech., Inc., 2003 WL 1873910, at * 3 (E.D. La. April 11, 2003); Angell Investments, L.L.C. v. Purizer Corp., 2001 WL 1345996, at *2 (N.D. Ill. Oct. 31, 2001) (to allow discovery on related state law claim would "be an improper end run around the PSLRA"); In re Trump Hotel

LIBA/1810437.4

# GOODWIN PROCTER

Alexander Arnold Gershon, Esq.
July 30, 2007
Page 2

Shareholder Derivative Litig., 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997). Indeed, the discovery stay "would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal claims." SG Cowen, 189 F.3d at 913 n. 1.

In addition, separate and independent of the PSLRA discovery stay, plaintiffs are not entitled to discovery where, as here, a defendant moves to dismiss a shareholder derivative complaint for failure to make demand under Delaware law on the company's board of directors before filing the complaint. See, e.g., In re Merck & Co., Inc. Sec. Litig., ___ F.3d ___, 2007 WL 2049017, at *5 (3d Cir. 2007). Cramer v. General Tel. & Elecs. Corp., 582 F.2d 259, 277 (3d Cir. 1978); Waldman v. Carey, 82 F.R.D. 469, 471-72 (E.D. Pa. 1979).[1] Courts also routinely stay discovery where a defendant's motion to dismiss, if granted, would dispose of the entire case in its entirety and render any discovery taken in advance of the motion's determination unnecessary and wasteful. See, e.g., Weschler v. Quad-C, Inc., 2000 WL 33173170 (Del. Ch. Sept. 12, 2000); Greenspan v. Hinrichs, 1998 WL 83047 (Del. Ch. Feb. 10, 1998); Sprague v. Brook, 149 F.R.D. 575, 578 (N.D. Ill. 1993). If granted, my clients' motion to dismiss would dispose of this case in its entirety.

In sum, the Rule 26(f) discovery conference that you proposed in your letter would be premature and unnecessarily wasteful. Please contact me if you would like to discuss.

Sincerely,

Brian E. Pastuszenski

cc:   Thomas A. Beck, Esq. (Richards Layton)

---

[1] The citation in your letter to Fagin v. Gilmartin, 432 F.3d 276, 285 n.2 (3d Cir. 2005), is inapposite. Fagin involved a New Jersey corporation governed by New Jersey law, not a Delaware corporation like Countrywide governed by Delaware law. Regardless of whether plaintiff here would characterize discovery as "procedural in nature" or otherwise, federal courts will not allow discovery where, as here, it "would frustrate the purposes behind Delaware's substantive law regarding demand-refusal, and its recognition that the determination of whether or not to pursue litigation is a business decision entitled to deference under the business judgment rule." In re Boston Scientific Corp. Shareholders Litig., 2007 WL 1696995, at *5 (S.D.N.Y. June 13, 2007).

# EXHIBIT 3

145. At the time of the stock sales set forth above, the Individual Defendants possessed knowledge of the Company's irresponsible lending practices, including the need to increase loan loss reserves and the impairment of retained interests in loan securitizations during the Relevant Period. Despite knowledge of this adverse material non-public information, the Individual Defendants sold Countrywide common stock on the basis of such information during the Relevant Period.

B. **Countrywide's Share Repurchase Program**

146. In October 2006, Countrywide's Board of Directors authorized a share repurchase program of up to $2.5 billion, signaling to the market that the Board believed Countrywide's shares to be underpriced. The market reaction to this announcement was swift. From November 2006 to February 2007, Countrywide's share price rose over $6.50 per share to arrive at an all-time high of $45.03 per share on February 2, 2007. While publicly proclaiming Countrywide shares a bargain, however, senior officers and directors were aggressively liquidating their stock holdings.

147. In the fourth quarter of 2006 alone, the Company spent $1.5 billion repurchasing 38,639,876 shares with an average price of $38.83 per share. At the same time, Company executives and directors sold over 1.2 million shares of Countrywide stock, to correspond with the repurchase program and increased share price, for profits of approximately $50 million, as detailed in the chart below.

| Defendant | Date Of Sales | Shares Sold | Proceeds |
|---|---|---|---|
| Mozilo | 11/1/06 -12/18/06 | 891,999 | $35,600,295 |
| Sambol | 11/3/06 -12/28/06 | 126,000 | $5,089,024 |
| Garcia | 11/8/06 -12/28/06 | 70,000 | $2,850,595 |
| Robertson | 11/20/06 | 60,000 | $2,388,000 |
| Dougherty | 11/29/06-12/15/06 | 68,372 | $2,795,438 |

| Defendant | Date Of Sales | Shares Sold | Proceeds |
|---|---|---|---|
| Snyder | 12/19/06 | 20,000 | $818,040 |
| Donato | 12/15/06 | 20,000 | $835,546 |
| Cunningham | 11/1/06 – 12/1/06 | 10,000 | $389,800 |
| TOTALS | | 1,266,371 | $50,766,738 |

148. Then, in the second quarter of 2007, the Company spent an additional $900 million to repurchase 21,503,512 shares at an average price of $40.37 per share. At the same time, Company executives and directors sold approximately 2.5 million shares of Countrywide stock for profits of approximately $95 million while the Company repurchased shares, as detailed in the chart below.

| Defendant | Date Of Sales | Shares Sold | Proceeds |
|---|---|---|---|
| Mozilo | 3/1/07 – 6/19/07 | 2,320,000 | $86,816,612 |
| Sambol | 3/7/07 – 6/19/07 | 61,125 | $2,253,827 |
| Dougherty | 3/16/07 - 6/15/07 | 99,161 | $3,542,552 |
| Garcia | 4/26/07 – 6/21/07 | 52,500 | $2,090,438 |
| Cisneros | 5/30/07 | 5,075 | $200,463 |
| Sieracki | 5/31/07 | 2,902 | $113,004 |
| TOTALS | | 2,540,763 | $95,016,896 |

149. In effect, the Company was supporting the stock price while allowing insiders to sell at inflated prices. Ultimately, in connection with the share repurchase program, the Company repurchased 60,143,388 shares of its common stock for $2.4 billion funded by issuing debt securities.

### C. Defendant Mozilo Frequently Amended His Automatic Stock Sale Plan To Sell Additional Shares During The Repurchase Program Period

150. While the Company repurchased $2.4 billion worth of stock between November 2006 and June 2007, Defendant Mozilo frequently revised his supposedly "passive" Rule 10b5-1 stock sale plan to sell additional shares each month during the buyback periods, as detailed in the above charts.

151. Rule 10b5-1 stock sale plans were created to allow corporate insiders to sell stock based on predetermined triggers, like specified dates or prices, without any direct involvement. Recent academic studies have argued that executives are manipulating such plans, which have been described as "Mozilo plans" due to the extensive use of them. A Senior compensation analyst for the Corporate Library has told the *Los Angeles Business Journal*, "[t]his Mozilo clause is clearly a loophole in the entire trading system… it's obviously a way for executives like him to enrich themselves, and it's highly convenient that most of his transactions tend to coincide with a negative earnings release.

152. Starting in September 2004, Mozilo had a Rule 10b5-1 trading plan that lasted through May 2006. During this time period, Mozilo would sell 52,500 shares once a week. The timing and increments were consistent throughout the life of the plan. This amounted to sales of about 200,000 to 250,000 shares per month.

153. On October 27, 2006, just as the Board was approving the massive share repurchase described above, Defendant Mozilo amended his automatic stock sale plan to allow him to sell 350,000 shares per month which had previously expired in May 2006.

154. Six weeks later, on December 12, 2006, Defendant Mozilo initiated a second automatic stock sale plan to allow him to sell an additional 115,000 shares per month. One month later, on January 12, 2007, Countrywide reported that foreclosures from the previous month soared 48% over that of 2005.