**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION DERIVATIVE LITIGATION | ) ) ) ) ) ) ) ) | Master Docket No. 1:07-cv-00372(SLR) (Consolidated Action) Judge Sue L. Robinson |

## MICHAEL E. DOUGHERTY'S AND KATHLEEN BROWN'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Tel.: (302) 651-3000
Fax:  (302) 651-3001
*Attorneys for Defendants*
*Michael E. Dougherty and Kathleen Brown*

DATED:  February 27, 2008

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES.................................................................................i

NATURE AND STAGE OF THE PROCEEDINGS .........................................................1

SUMMARY OF ARGUMENT..............................................................................................3

STATEMENT OF FACTS.....................................................................................................6

    A.    The Parties. ...................................................................................................... 6

    B.    Countrywide's Stock Repurchase Program. ...............................................7

    C.    The Former Directors' Stock Sales ..............................................................7

    D.    Plaintiffs' Deficient Amended Complaint. .................................................8

ARGUMENT...........................................................................................................................9

I.     THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE
      PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD THAT THEY
      HAVE STANDING TO PURSUE THEIR CLAIMS AGAINST THE FORMER
      DIRECTORS. ..........................................................................................................9

II.    PLAINTIFFS' FAILURE TO MAKE A PRE-SUIT DEMAND ON THE
       COUNTRYWIDE BOARD WARRANTS DISMISSAL................................. 10

    A.    Plaintiffs Have Failed To Allege Particularize Facts That Raise A
        Reasonable Doubt That A Majority Of The Countrywide Board Was
        Disinterested Or Independent. ...................................................................12

    B.    Plaintiffs Have Failed To Allege That The Repurchase Was Not The
        Product Of The Board's Business Judgment. .........................................17

III.   TO THE EXTENT THAT THE COURT REACHES THE MERITS OF THIS
      DISPUTE, THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM.......................................................................18

    A.    Plaintiffs Fail To State A Duty of Loyalty Claim. .................................19

    B.    Plaintiffs' Duty Of Care Claims Are Barred Under Countrywide's
        Certificate Of Incorporation And Lack Merit Under Delaware Law. ...................23

C.     Plaintiffs Are Not Entitled To Their Requested Relief. ..........................................25

CONCLUSION ...............................................................................................................................26

## TABLE OF CASES AND AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*In re 3COM Corp. S'holders Litig.,*
    C.A. No. 16721, 1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999) ................................ 23

*Allison v. General Motors Corp.,*
    604 F. Supp. 1106 (D. Del.), *aff'd mem.*, 782 F.2d 1026 (3d Cir. 1985) ............................ 13

*Amalgamated Bank v. Yost,*
    No. 04-0972, 2005 WL 226117 (E.D. Pa. Jan. 31, 2005) ..................................................... 15

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984), *overruled on other grounds sub nom.*
    *Brehm v. Eisner,* 746 A.2d 244 (Del. 2000) ..................................................... passim

*Ash v. McCall,*
    C.A. No. 17132, 2000 Del. Ch. LEXIS 144 (Del. Ch. Sept. 15, 2000) ............................... 18

*In re Astea Int'l. Inc. Sec. Litig.,*
    C.A. No. 06-1467, 2007 WL 2306586 (E.D. Pa., Aug. 9, 2007) ......................................... 6

*In re Baxter Int'l, Inc. S'holders Litig.,*
    654 A.2d 1268 (Del. Ch. 1995) ................................................................................. 6, 11, 24

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,*
    833 A.2d 961 (Del. Ch. 2003), *aff'd,* 845 A.2d 1040 (Del. 2004) ..................................... 21

*Beam v. Stewart,*
    845 A.2d 1040 (Del. 2004) ............................................................................................. 12, 18

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ................................................................................................... 18, 19

*Blackmore Partners, L.P. v. Link Energy LLC,*
    C.A. No. 454-N, 2005 WL 2709639 (Del. Ch. Oct. 14, 2005) ......................................... 20

*Brehm v. Eisner,*
    746 A.2d 244 (Del. 2000) ............................................................................................... 10, 11

*In re Citigroup, Inc. S'holders Litig.,*
    C.A. No. 19827, 2003 Del. Ch. LEXIS 61 (Del. Ch. June 5, 2003) ................................... 16

*City of Pittsburgh v. West Penn Power Co.,*
    147 F.3d 256 (3d Cir. 1998) .............................................................................................. 8, 19

*In re CompuCom Sys. Stockholders Litig.,*
  C.A. No. 499-N, 2005 Del. Ch. LEXIS 145 (Del. Ch. Sept. 29, 2005)...............................19

*Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb,*
  385 F. Supp. 2d 449 (D. Del. 2004) ..............................................................................14, 23

*In re Delmarva Sec. Litig.,*
  794 F. Supp. 1293 (D. Del 1992) .........................................................................................6

*Desimone v. Barrows,*
  924 A.2d 908 (Del. Ch. 2007) ..............................................................................................9

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) .............................................................................................................4

*Fishbaum v. Liz Claiborne, Inc.,*
  No. 98-9396, 1999 U.S. App. LEXIS 18155 (2d Cir. July 27, 1999) ..................................22

*Fleer Corp. v. Topps Chewing Gum,*
  539 A.2d 1060 (Del. 1988)..................................................................................................25

*In re GM Class H S'holders Litig.,*
  734 A.2d 611 (Del. Ch. 1999) ............................................................................................20

*Gagliardi v. TriFoods Int'l, Inc.,*
  683 A.2d 1049 (Del. Ch. 1996) ......................................................................................5, 25

*Globis Partners., L.P. v. Plumtree Software, Inc.,*
  C.A. 1577-VCP, 2007 Del. Ch. LEXIS 169 (Del. Ch. Nov. 30, 2007)...............................20

*Grimes v. Donald,*
  673 A.2d 1207 (Del. 1996), *overruled on other grounds sub nom.*
  *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .......................................................................10

*Grobow v. Perot,*
  539 A.2d 180 (Del. 1988), *overruled on other grounds sub nom.*
  *Brehm v. Eisner*, 746 A.2d 244, (Del. 2000) ......................................................................21

*Guttman v. Huang,*
  823 A.2d 492 (Del. Ch. 2003) ....................................................................................... passim

*Harris v. Carter,*
  582 A.2d 222 (Del. Ch. 1990) ............................................................................................10

*Highland Legacy Ltd. v. Singer,*
  C.A. No. 1566-N, 2006 WL 741939 (Del. Ch. Mar. 17, 2006)...........................................18

ii

*In re IAC/InterActiveCorp Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007) ......................................................................5, 15, 22, 23

*Kahn v. Roberts*,
   679 A.2d 460 (Del. 1996)..............................................................................................6, 21

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) .............................................................................................................10

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) .................................................................................................9

*Leung v. Schuler*,
   C.A. No. 17089, 2000 Del. Ch. LEXIS 134 (Del. Ch. Sept. 29, 2000),
   *aff'd*, 783 A.2d 124 (Del. 2001)..............................................................................23

*Lewis v. Anderson*,
   477 A.2d 1040 (Del. 1984)...............................................................................................9, 10

*Lewis v. Daum*,
   C.A. No. 6733, 1984 Del. Ch. LEXIS 602 (Del. Ch. May 24, 1984)..............................17, 21

*McDermott, Inc. v. Lewis*,
   531 A.2d 206 (Del. 1987)..................................................................................................4

*In re Merck & Co. Sec., Derivative & ERISA Litig.*,
   493 F.3d 393 (3d Cir. 2007) ........................................................................................11, 18

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ................................................................................................6

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ..............................................................................................6

*Oatway v. Am. Int'l Group, Inc.*,
   325 F.3d 184 (3d Cir. 2003) ..............................................................................................18

*Official Comm. Of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
   2004 WL 1949290 (Del. Ch. Aug. 24, 2004).....................................................................

*In re Oracle Corp. Derivative Litig.*,
   867 A.2d 904 (Del. Ch. 2004), *aff'd mem.*,
   C.A. No. 561, 2004, 2005 Del. LEXIS 150  (Del. Apr. 14, 2005) ..................12, 13, 14, 16

*Polk v. Good*,
   507 A.2d 531 (Del. 1986)..................................................................................................20

*Rales v. Blasband*,
 634 A.2d 927 (Del. 1993) .................................................................................12

*Rattner v. Bidzos*,
 C.A. No. 19700, 2003 Del. Ch. LEXIS 103 (Del. Ch. Sept. 30, 2003)........... 13, 14, 16, 22

*Seminaris v. Landa*,
 662 A.2d 1350 (Del. Ch. 1995) ......................................................................12

*In re Silicon Graphics Inc. Sec. Litig.*,
 183 F.3d 970 (9th Cir. 1999) ................................................................4, 15, 21

*Solomon v. Armstrong*,
 747 A.2d 1098 (Del. Ch. 1999), *aff'd mem.*, 746 A.2d 277 (Del. 2000) ..................... 12, 15

*Spiegel v. Buntrock*,
 571 A.2d 767 (Del. 1990) ...............................................................................10

*Steelman v. Prudential Ins. Co.*,
 No. CIV. S-06-2746 LKK/GGh, 2007 WL 2009805 (E.D. Ca. July 6, 2007) ...................

*Stone v. Ritter*,
 911 A.2d 362 (Del. 2006) ...........................................................................11, 24

*Unitrin, Inc. v. American Gen. Corp.*,
 651 A.2d 1361 (Del. 1995) .............................................................................20

*VantagePoint Venture Partners 1996 v. Examen, Inc.*,
 871 A.2d 1108 (Del. 2005) ...............................................................................4

*In re Verisign, Inc. Derivative Litig.*,
 C.A. No. C 06-4165 PJH, 2007 U.S. Dist. LEXIS 72341
 (N.D. Cal. Sept. 14, 2007) .......................................................................3, 9, 15

*In re Walt Disney Co. Derivative Litig.*,
 906 A.2d 27 (Del. 2006) .................................................................................23

*White v. Panic*,
 783 A.2d 543 (Del. 2001) ...............................................................................17

*Wietschner v. Monterey Pasta Co.*,
 294 F. Supp. 2d 1102 (N.D. Cal. 2003) ...........................................................22

## AUTHORITIES

8 *Del. C.* § 102(b)(7) .................................................................................................... 11, 23

8 *Del. C.* § 141(a) ............................................................................................................. 10

8 *Del. C.* § 160 ..........................................................................................................passim

Chancery Court Rule 23.1 ............................................................................................passim

Fed. R. Civ. P. 10(b) ........................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 3, 4

Fed. R. Civ. P. 23.1.................................................................................................3, 4, 9, 11

## NATURE AND STAGE OF THE PROCEEDINGS

On June 12, 2007, International Brotherhood of Electrical Workers Local 98 Pension Fund ("Plaintiff") filed, on behalf of Countrywide Financial Corporation ("Countrywide" or the "Company"), a derivative action against Countrywide's ten-member board of directors ("IBEW Action"). Among other things, Plaintiff alleged that the Countrywide board members violated Section 14(a) of the Securities and Exchange Act by failing to disclose certain information in the Company's 2006 and 2007 proxy statements relating to the compensation paid to Countrywide's Chief Executive Officer, Angelo Mozilo. Plaintiff also alleged that certain stock options paid to Mozilo in 2006 amounted to corporate waste. Plaintiff did not seek money damages in connection with these claims. Rather, Plaintiff sought only an order voiding Countrywide's elections of directors at its annual meetings held in 2006 and 2007, and an equitable accounting against the individual defendants relating to its claims about Mozilo's compensation.

Thereafter, on September 14, 2007, Plaintiff filed an Amended Complaint, which added claims against certain Countrywide board members that sold stock at or around the time Countrywide implemented a stock repurchase program in November 2006 and May 2007 (the "Repurchase"). Again, Plaintiff sought only equitable relief for these claims, including an equitable accounting against the individual defendants related to these claims. Plaintiff expressly stated that it did not seek to recover any damages. (IBEW Compl. ¶ 4).

On November 6, 2007, Plaintiff's counsel filed a virtually identical action seeking the same equitable relief on behalf of another purported shareholder of Countrywide, Adam Blumberg ("Blumberg Action"). On January 14, 2008, Plaintiffs' counsel moved for partial summary judgment in both the IBEW Action and the Blumberg Action on its derivative claims

regarding the Repurchase ("Motion For Partial Summary Judgment"). Thereafter, on January 18,

2008, defendant Countrywide and individual defendants Angelo Mozilo, Henry Cisneros, Robert

Donato, Harley Snyder, Jeffrey Cunningham, Martin Melone, Robert Parry, Oscar Robertson,

Keith Russell and David Sambol filed an Emergency Motion For Stay Of Plaintiffs' Motion For

Partial Summary Judgment ("Motion For Stay"), arguing, among other things, that Plaintiffs'

Motion was inconsistent with the schedule that the parties previously agreed to and this Court

ordered and that it was premature because Plaintiffs failed to meet their difficult burden of

demonstrating that pre-suit demand on the Countrywide board of directors should be excused.

Defendants Michael E. Dougherty and Kathleen Brown -- *former* Countrywide directors who

announced their retirement from the Countrywide board in March of 2007 (collectively, the

"Former Directors") -- joined in the Motion For Stay.

On January 24, 2008, Magistrate Judge Mary Pat Thynge held a teleconference

with the parties regarding the pending motions and denied the Motion For Partial Summary

Judgment as premature, with leave to re-file if and when appropriate. (D.I. 35). The Court noted

that it had not yet determined if subject matter jurisdiction exists over the claims at issue, and

was mindful that Defendants intended to move to dismiss these actions for, among other reasons,

Plaintiffs' failure to make demand on Countrywide's board of directors. *Id.* On February 13,

2008, Plaintiffs filed a consolidated amended complaint, which only alleges claims regarding the

Repurchase (hereinafter referred to as the "Amended Complaint" or "Am. Compl."). On

February 27, 2008, Defendants (other than the Former Directors) moved to transfer this case to

the United States District Court for the Central District of California where the overwhelming

number of substantially similar Countrywide derivative actions are currently pending ("Motion

to Transfer"). The Former Directors joined in the Motion to Transfer.

2

On that same day, the Former Directors moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6), and filed a supporting brief. (The other Defendants have also filed similar motions.) This is the Former Directors' opening brief in support of that motion.

## SUMMARY OF ARGUMENT

The Amended Complaint should be dismissed against the Former Directors for the following reasons:

1. Plaintiffs have failed to meet their burden of demonstrating that they have standing to bring their claims. Plaintiffs have failed to adequately allege with particularity that they were Countrywide stockholders "at the time of the transaction[s]" of which they complain. Fed. R. Civ. P. 23.1; *see also In re Verisign, Inc. Derivative Litig.*, C.A. No. C 06-4165 PJH, 2007 U.S. Dist. LEXIS 72341, at *70-71 (N.D. Cal. Sept. 14, 2007) (dismissing complaint; and finding plaintiffs' allegation that they "'have owned Verisign stock during the Relevant Period . . . and continue to own the Company's common stock'" insufficient for pleading standing under Rule 23.1).

2. Plaintiffs concede that they have failed to make a pre-suit demand on the Countrywide board of directors. (Am. Compl. ¶ 9). They have also failed to adequately allege with particularity that demand on the board would be futile. Fed. R. Civ. P. 23.1 ("The complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to

obtain the action or for not making the effort.").[1] Plaintiffs' conclusory allegations that a majority of the board approved the Repurchase to engage in insider trading is based on mere speculation and -- based on well-settled Delaware law -- is insufficient to demonstrate demand futility. *See, e.g., Guttman v. Huang,* 823 A.2d 492, 504 (Del. Ch. 2003) (dismissing claims under Rule 23.1 and holding that conclusory allegations challenging directors' stock sales during "contested period" insufficient to satisfy demand excusal requirements). Most significantly, Plaintiffs have not alleged any particularized facts suggesting that any of the Defendants' alleged stock sales were made in connection with the Repurchase. *See, e.g., In re Silicon Graphics Sec. Inc. Litig.,* 183 F.3d 970, 990 (9th Cir. 1999) (dismissing claims; holding that plaintiff failed to plead particularized facts demonstrating that board intended for the stock repurchase plan to artificially inflate the company's stock in order to facilitate insider trading). Accordingly, the Amended Complaint must be dismissed under Rule 23.1 for failure to plead particularized facts demonstrating that demand would be futile.

3.    In addition, the Amended Complaint should be dismissed under Rule 12(b)(6) because it fails to state a breach of fiduciary duty claim under Delaware state corporation law against the Former Directors.

---

[1]    Because Countrywide is incorporated under the laws of Delaware (Am. Compl. ¶ 6), Plaintiffs' substantive claims, including the issue of demand futility, are governed by Delaware law. *See Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982) (explaining that the internal affairs doctrine is a conflict of laws principle which recognizes that only the state of incorporation should have the authority to regulate a corporation's internal affairs); *VantagePoint Venture Partners 1996 v. Examen, Inc.,* 871 A.2d 1108, 1113 (Del. 2005) (holding that only the law of the state of incorporation governs and determines issues relating to a corporation's internal affairs); *McDermott, Inc. v. Lewis,* 531 A.2d 206, 215 (Del. 1987) (holding that internal corporate relationships are governed by the laws of the forum of incorporation). Moreover, Plaintiffs concede in the Amended Complaint that Delaware law applies. (Am. Compl. ¶ 9).

(a)    Plaintiffs have not alleged facts establishing that a majority of Countrywide's board lacked independence or was in any way interested in the Repurchase. Plaintiffs' conclusory claim that certain Defendants acted disloyally by selling stock at or around the time Countrywide's repurchase program was implemented is not supported by the alleged facts and must be dismissed. *See, e.g., Guttman*, 823 A.2d at 504 (holding that "[t]he cursory allegations of the complaint in this action do not come close to meeting the plaintiffs' burden to show that . . . defendants face a substantial threat of liability for insider trading-based fiduciary duty violations"). Moreover, Plaintiffs' "insider trading" theory fails to state a claim against the Former Directors. First, Plaintiffs do not allege that Brown sold any Countrywide stock during that period, and therefore any claim against Brown must be dismissed. Second, Plaintiffs have alleged no specific facts whatsoever that suggests any link between Dougherty's stock sales and the Countrywide board's decision to approve the Repurchase. This is especially true in Dougherty's case, given that his Countrywide shares were sold pursuant to a pre-arranged trading plan pursuant to Section 10b5-1(c) of the Exchange Act. *See, e.g., In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 604 (S.D.N.Y. 2007).

(b)    Furthermore, Plaintiffs' mere second-guessing of the board's decision to approve Countrywide's repurchase program does not state a claim under Delaware law for breach of fiduciary duty. *See, e.g., Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1052 (Del. Ch. 1996) (dismissing fiduciary claims on ground that "to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary acting in a good faith pursuit of corporate purposes, does not state a claim for relief against that fiduciary no matter how foolish the investment may appear in

5

retrospect"); *Kahn v. Roberts*, 679 A.2d 460, 468 (Del. 1996) (holding that directors' decision to approve a stock repurchase is protected by the business judgment rule).

## STATEMENT OF FACTS

When deciding a motion to dismiss, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted). In addition, the Court may rely on judicially noticed facts in ruling on such motion.[2]

### A.    The Parties.

Countrywide, a Delaware corporation with its principal place of business in Calabasas, California, engages in mortgage lending and other finance-related businesses. (Am. Compl. ¶ 6).

At the time Plaintiffs filed the IBEW Complaint, Countrywide's board was comprised of ten directors:  Angelo R. Mozilo (the Company's Chairman and Chief Executive

---

[2]    Pursuant to Federal Rules of Evidence 201(b) and (d), the Court can (and should) take judicial notice of the following: (1) Countrywide's 102(b)(7) provision in its Certificate of Incorporation (Barnett Affidavit Ex. 2); (2) the Forms 4 filed with the SEC; and (3) Dougherty's 10b5-1(c) plan that is referenced in those Forms 4 (Barnett Affidavit Ex. 1).  On a motion to dismiss, these documents can be noticed in order to prevent a plaintiff from surviving such motion by deliberately omitting references to documents upon which their claims are based.  As this Court held in *In re Delmarva Sec. Litig.*, "[t]his Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered.  SEC filings fall within this category of public records that can be judicially noticed." 794 F. Supp. 1293, 1299 (D. Del. 1992). *See also In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1331 (3d Cir. 2002) (finding judicial notice of SEC filings appropriate under Rule 201(b) of the Federal Rules of Evidence)*; In re Astea Int'l Inc. Sec. Litig.*, C.A. No. 06-1467, 2007 WL 2306586, at *14 n.16 (E.D. Pa., Aug. 9, 2007) (taking judicial notice of Forms 4 filed with SEC); *see also In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (taking judicial notice of the company's 102(b)(7) provision in its certificate of incorporation).

Officer), Oscar P. Robertson, Robert J. Donato, Jeffrey M. Cunningham, Harley W. Snyder, Henry G. Cisneros, Martin R. Melone, Keith Russell, Robert T. Parry, and Michael E. Dougherty. (Am. Compl. ¶ 10). In March 2007, both Dougherty and Brown announced that they were retiring from Countrywide's board of directors. (Am. Compl. ¶ 7). Brown resigned from the Board on March 29, 2007, while Dougherty did not stand for re-election at the June 2007 annual shareholder meeting and officially stepped down from the Board on June 13, 2007. *Id.*[3]

Plaintiffs purport to have held shares of Countrywide common stock "at the time of the wrongs alleged herein, and have been such continuously since then" (Am. Compl. ¶ 5); however, Plaintiffs have not alleged any particularized facts in support of this contention.

## B.    Countrywide's Stock Repurchase Program.

On November 9, 2006, Countrywide commenced a program to repurchase approximately 38 million shares of Countrywide common stock. (Am. Compl. ¶¶ 10, 26). In addition, Countrywide purchased approximately 21 million additional shares of its common stock pursuant to the repurchase program in May 2007. (Am. Compl. ¶¶ 10, 27). At that time, Brown was no longer a member of Countrywide's board of directors. (Am. Compl. ¶ 7).

## C.    The Former Directors' Stock Sales

Plaintiffs do not allege that Brown sold any Countrywide stock during the relevant time period. Plaintiffs allege that Dougherty sold Countrywide shares between November 29, 2006 and June 15, 2007. (Am. Compl. ¶ 31). However, Plaintiffs fail to allege any particularized facts regarding Dougherty's stock sales, including, but not limited to: (1) the timing of any of his sales; (2) whether any of his sales were inconsistent with his prior trading

---

[3]    In addition, David Sambol became a Countrywide director on September 26, 2007, and Cisneros resigned from the board on October 18, 2007. (Am. Compl. ¶ 7).

history; (3) whether any of his sales were made pursuant to Company policy; and (4) the percentage that each sale comprised of his total ownership. Moreover, Plaintiffs conveniently omit from the Amended Complaint that all of Dougherty's stock sales were made pursuant to a pre-arranged 10b5-1(c) trading plan. (Barnett Affidavit Ex. 1).

## D.    **Plaintiffs' Deficient Amended Complaint.**

The Amended Complaint can hardly be described as a model of clarity. Notably, it does not contain a single specific count or cause of action against the Former Directors (or any other Defendant for that matter). *See* Fed. R. Civ. P. 10(b). Moreover, Plaintiffs have failed to adequately allege that they have standing to pursue these alleged claims on behalf of Countrywide. Plaintiffs also concede that they failed to make demand on Countrywide's board of directors before bringing this derivative action, and have not shown that demand would have been futile. (Am. Compl. ¶ 9). Plaintiffs' attempt to plead demand futility by alleging that certain Defendants sold Countrywide stock around the time of the Repurchase is insufficient under Federal Rule of Civil Procedure 23.1. (Am. Compl. ¶ 10).

In addition, Plaintiffs fail to sufficiently plead facts establishing that a majority of the Board was uninformed, lacked independence or was interested when it approved the Repurchase. In fact, Plaintiffs' claims challenging the Repurchase are premised entirely, and improperly, on conclusory allegations. As the Third Circuit has repeatedly held, "'unsupported conclusions and unwarranted inferences'" need not be accepted as true on a motion to dismiss, and do not suffice to state a claim. *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998) (citation omitted).

As explained further below, all of Plaintiffs' claims against the Former Directors should be dismissed.

8

### ARGUMENT

**I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD THAT THEY HAVE STANDING TO PURSUE THEIR CLAIMS AGAINST THE FORMER DIRECTORS.**

The Amended Complaint should be dismissed on standing grounds because Plaintiffs have failed to adequately allege with particularity that they were Countrywide stockholders "at the time of the transaction[s]" of which they complain. Fed. R. Civ. P. 23.1; *see also In re Verisign*, 2007 U.S. Dist. LEXIS 72341, at *70-71 (dismissing complaint; finding plaintiffs' allegation that they "have owned VeriSign stock during the Relevant Period . . . and continue to own the Company's common stock" insufficient for pleading standing under Rule 23.1).

In order to have standing to bring a derivative action, a plaintiff must own stock at all times relevant to the transactions of which he complains. *See* Fed. R. Civ. P. 23.1; *Lewis v. Anderson*, 477 A.2d 1040, 1049-50 (Del. 1984); *Kanter v. Barella*, 489 F.3d 170, 176 n.5 (3d Cir. 2007). Here, Plaintiffs have not adequately pled facts establishing their status as Countrywide stockholders at all relevant times. Instead, the Amended Complaint only generally alleges that "Plaintiffs are stockholders of the Company and were stockholders at the time of the wrongs alleged herein, and have been such continuously since then." (Am. Compl. ¶ 5). This general allegation is insufficient to allege contemporaneous ownership during the *more than one-year period* in which the challenged transactions purportedly occurred. *See, e.g., Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) (dismissing claims because plaintiff did not demonstrate that he owned stock at the time of the challenged conduct); *In re Verisign*, 2007 U.S. Dist. LEXIS 72341, at *70-71 (same). Accordingly, the Amended Complaint should be dismissed

because Plaintiffs have failed to plead with particularity that they have the requisite standing to

bring this suit.[4]

## II.    PLAINTIFFS' FAILURE TO MAKE A PRE-SUIT DEMAND ON THE COUNTRYWIDE BOARD WARRANTS DISMISSAL.

In addition, Plaintiffs' conclusory allegations should be dismissed for failure to

plead particularized facts demonstrating that pre-suit demand on Countrywide's board of

directors would have been futile.[5]   It is well-settled under Delaware law that the business and

affairs of a corporation are managed by and under the direction of its board of directors. 8 *Del.*

*C.* § 141(a); *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).  This authority includes the

decision whether or not to initiate litigation on behalf of the corporation.  *See Spiegel v. Buntrock*,

571 A.2d 767, 773 (Del. 1990).  Accordingly, "[i]f a claim belongs to the corporation, it is the

corporation, acting through its board of directors, which must make the decision whether or not

to assert the claim."  *Grimes v. Donald,* 673 A.2d 1207, 1215 (Del. 1996), *overruled on other*

*grounds sub nom. Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Kamen v. Kemper Fin. Servs.*, Inc.,

---

[4]   In addition, on January 11, 2008, Countrywide announced that it had entered into a merger agreement with Bank of America.  (Am. Compl. ¶ 28).  The consummation of the merger could potentially extinguish Plaintiffs' rights (if they even have any rights to begin with) to maintain a derivative lawsuit.  *See Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984) (holding that, once a derivative plaintiff ceases to be a stockholder by reason of a merger, the plaintiff loses standing to continue a derivative suit).

[5]   Under Delaware law, the proper time to evaluate demand futility is at the filing of the original complaint, unless a plaintiff amends the complaint to add new corporate claims that were not already "validly in litigation."  *See Harris v. Carter*, 582 A.2d 222, 230 (Del. Ch. 1990).  Here, Plaintiffs first raised their claims regarding the Repurchase in the IBEW Amended Complaint filed on September 14, 2007.  Accordingly, the Court should consider whether the board in existence at the time of filing of the IBEW Amended Complaint could have impartially considered demand. At such time, the Countrywide board consisted of nine members: Mozilo, Robertson, Donato, Cunningham, Snyder, Cisneros, Melone, Russell, and Parry.  In any event, regardless of which board composition the Court considers for the demand analysis, Plaintiffs have failed to plead with particularity facts demonstrating that a majority of the board, *at any time*, was otherwise independent or disinterested.

500 U.S. 90, 101 (1991) (holding that it is a "'basic principle of corporate governance that the decision . . . to initiate litigation should be made by the board . . . .'") (citation omitted). Therefore, where a stockholder seeks to bring a suit on behalf of the corporation, Delaware law requires that the stockholder first make a demand on the board, giving the directors the opportunity to examine the alleged grievance and related facts and determine whether pursuing the action is in the corporation's best interest. *See* Del. Ch. Ct. Rule 23.1; *Aronson*, 473 A.2d at 812; *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000). If a stockholder does not make a pre-suit demand on the board, he must plead with "particularity" facts demonstrating that demand is excused because it would be futile. *See Aronson*, 473 A.2d at 812; Fed. R. Civ. P. 23.1 (requiring plaintiff to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action [the plaintiff] desires from the directors . . . and the reasons for [the plaintiff's] failure to obtain the action or for not making the effort").

        Under the two-prong Aronson demand futility test, demand may be excused only if Plaintiffs allege particularized facts that raise a reasonable doubt that: (1) a majority of the board is disinterested or independent; or (2) the challenged acts were the product of the board's valid exercise of business judgment. *Id.* Moreover, this standard is even more exacting where, as here, Countrywide's certificate of incorporation contains an exculpatory provision pursuant to 8 *Del. C.* § 102(b)(7) that expressly exempts directors from liability for breaches of fiduciary duty based on either negligence or lack of due care. (Barnett Affidavit Ex. 2 (Countrywide Charter, ¶ 7th)). See *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 403 n.5 (3d Cir. 2007) (noting that courts routinely examine exculpatory agreements in demand futility motions to dismiss); *see also In re Baxter Int'l S'holders Litig.*, 654 A.2d at 1270; *Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006); *Guttman*, 823 A.2d at 501.

11

To demonstrate a lack of independence, a plaintiff must plead specific facts showing that the director is so "under [the] influence" of or "beholden to" an interested party that his discretion is "sterilized" and he is, therefore, incapable of acting independently from that party. *See Beam v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004); *Aronson*, 473 A.2d at 815; *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). A director is deemed "interested" only "if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (citing *Rales*, 634 A.2d at 936). Further, "it is well established that when a party challenges a director's action based on a claim of the director's debilitating pecuniary self-interest, that party must allege that the director's interest is material to that director." *Solomon v. Armstrong*, 747 A.2d 1098, 1118 (Del. Ch. 1999), *aff'd mem.*, 746 A.2d 277 (Del. 2000).

Here, Plaintiffs never made demand on Countrywide's board of directors to pursue the derivative claims asserted in their Amended Complaint (Am. Compl. ¶ 9), and have not adequately alleged demand futility. Accordingly, their claims must be dismissed.

## A. Plaintiffs Have Failed To Allege Particularize Facts That Raise A Reasonable Doubt That A Majority Of The Countrywide Board Was Disinterested Or Independent.

Plaintiffs have not alleged particularized facts demonstrating that any of the Countrywide directors – much less a majority – were interested or lacked independence with respect to the claims challenging the Repurchase. Rather, Plaintiffs merely speculate that certain board members were interested because they approved the Repurchase in order to engage in insider trading. (Am. Compl. ¶ 10). Such speculation, unsupported by any specific factual allegations, does not come close to stating an insider trading claim. As a result, Plaintiffs have no excuse for failing to make demand on Countrywide's board of directors. *See In re Oracle*

12

*Corp. Derivative Litig.*, 867 A.2d 904, 954 (Del. Ch. 2004) (dismissing insider trading claims after finding that plaintiff's "argument comes across as the ravings of conspiracy theorists, who weave tales out of nothing"), *aff'd mem.*, 872 A.2d 960 (Del. 2005); *see also Rattner v. Bidzos*, C.A. No. 19700, 2003 Del. Ch. LEXIS 103, at *22 (Del. Ch. Sept. 30, 2003) (dismissing claims and holding that "'Rule 23.1 is not satisfied by conclusory statements or mere notice pleading . . . . What the pleader must set forth are particularized factual statements that are essential to the claim . . . . A prolix complaint larded with conclusory language . . . does not comply with these fundamental pleading mandates.'") (citation omitted); *see also Allison v. General Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del.), *aff'd*, 782 F.2d 1026 (3d Cir. 1985) (holding that "the mere fact that plaintiff. . . makes conclusory allegations of director wrongdoing does not suffice to excuse demand").

       In both *Guttman v. Huang* and *Rattner v. Bidzos*, the Court of Chancery dismissed claims under Rule 23.1 on the ground that it is insufficient to cursorily allege that defendants sold shares of stock at a time when they possessed material, non-public information. *Guttman*, 823 A.2d at 502; *Rattner*, 2003 Del. Ch. LEXIS 103, at *38-39. For example, in *Guttman*, the plaintiff claimed, similar to Plaintiffs here, that the directors breached their fiduciary duties by misstating the financial results of the company in order to sell substantial amounts of their company stock at an artificially inflated market price. 823 A.2d at 494. The Court rejected the claim that all of the company's directors were "interested" or "face[d] a real threat of liability" just because they allegedly sold their stock during the "contested period" when the company purportedly had misstated its financial results. *Id.* The Court explained that finding a director "interested" whenever a derivative plaintiff makes only cursory insider trading allegations "would create the same hair-trigger demand excusal that *Aronson* and *Rales* eschewed." 823

A.2d at 502. The Court held that, as a matter of course, corporate insiders sell company stock and it would be "unwise to formulate a common law rule that makes a director 'interested' whenever [it is] allege[d] that he made sales of company stock in the market at a time when he possessed material, non-public information." *Id.*; *see also In re Oracle Corp. Derivative Litig.*, 867 A.2d at 930 (observing that "[f]or legitimate reasons, directors and officers who own options and stock will at times have to, or find it useful to, sell or buy shares"); *Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 461 (D. Del. 2004) (holding that "simply selling company stock does not make a director interested" under Delaware law).

According to the Court in *Guttman*, "'it must be shown that *each sale by each individual defendant* was entered into and completed on the basis of, and because of, adverse material non-public information.'" *Guttman*, 823 A.2d at 505 (emphasis added) (citation omitted); *see also Rattner*, 2003 Del. Ch. LEXIS 103, at *37 (same). A plaintiff must allege with particularity "the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the . . . irregularities." *Guttman*, 823 A.2d at 503. Further, a plaintiff must provide details as to, *inter alia*, the timing of the defendants' trades, what trades, if any, the directors made in previous years, and what portion of their overall holdings the defendants sold. *Id.* at 504. Plaintiffs have not satisfied this exacting test.

Just like in *Guttman*, Plaintiffs have failed to allege any particularized facts showing (1) any particular sales by any particular Defendant; (2) the timing of any sales; (3) whether any sales were made pursuant to pre-arranged stock trading plans or Company policy; (4) whether the sales were inconsistent with Defendants' prior trading history; or (5) the percentage that each sale comprised of each Defendant's total ownership. 823 A.2d at 504; *see also Rattner*,

14

2003 Del. Ch. LEXIS 103, at *40.[6]  Plaintiffs have not alleged any particularized facts

demonstrating that any of the Defendants' alleged stock sales were made in connection with the

Repurchase.  For example, Plaintiffs allege that: "Russell sold 10,000 Countrywide shares on

December 12, 2005" -- *nearly a year prior to the November Repurchase*; "Donato sold 54,142

Countrywide shares…on October 27 and December 15, 2006" -- *nearly two weeks before and

more than a month after the November Repurchase*; and that "Dougherty sold 170,929

Countrywide shares…between November 29, 2006 and June 15, 2007 " -- *twenty days after the

November Repurchase*.  (Am. Compl. ¶ 31).  In the absence of any fact pleading that supports a

rational inference of insider trading by a majority of the directors, Plaintiffs' claims must be

dismissed for failure to plead demand futility.  *See, e.g., In re Silicon Graphics Sec. Litig.*, 183

F.3d at 990 (demand not excused where plaintiff "has not stated facts that demonstrate that the

Board intended for the stock repurchase plan to inflate artificially the value of [the Company's]

stock in order to facilitate insider trading.  In the absence of such facts, we must presume that the

Board had a legitimate business purpose when it repurchased [the Company's] stock."); *Guttman*,

823 A.2d at 504; *Rattner*, 2003 Del. Ch. LEXIS 103, at *39-40.[7]

---

[6]  Plaintiffs do not even allege that any of the purported sales were material to any of these Defendants.
    *See Solomon*, 747 A.2d at 1118 ("[I]t is well established that when a party challenges a director's
    action based on a claim of the director's debilitating pecuniary self-interest, that party must allege that
    the director's interest is material to that director.").

[7]  *See also, e.g., Amalgamated Bank v. Yost*, No. 04-0972, 2005 WL 226117, at *13 (E.D. Pa. Jan. 31,
    2005) (rejecting insider trading claims that included similar conclusory allegations); *In re Verisign
    Derivative Litig.*, 2007 U.S. Dist. LEXIS 72341, at *38 (finding similar generalized allegations of
    insider trading insufficient to establish that directors were incapable of considering a demand); *In re
    IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d at 605 (holding demand not excused on ground that
    plaintiffs' allegations of insider trading were not sufficiently particularized to satisfy Rule 23.1's
    particularity requirement).

Additionally, Plaintiffs fail to plead particularized facts establishing that any of the Individual Defendants actually possessed non-public, material information at the time they sold their Countrywide stock. *See, e.g., Guttman*, 823 A.2d at 499 (demand not excused where plaintiff failed to plead "particularized facts that support an inference that the directors 'did possess knowledge of facts suggesting potential . . . improprieties . . . and took no action to respond to them'") (citation omitted); *In re Citigroup, Inc. S'holders Litig.*, C.A. No. 19827, 2003 Del. Ch. LEXIS 61, at *6-7 (Del. Ch. June 5, 2003) (dismissing claims for failure to plead that the directors either knew or should have known that there were material inadequacies in the corporation's internal controls). In fact, Plaintiffs do not allege any particularized facts demonstrating the Board's *actual knowledge* that the credit and housing markets would collapse. Instead, Plaintiffs point to market information allegedly posted on the Internet by Countrywide for its analysts' conference call held on ***July 24, 2007*** (Am. Compl. ¶¶ 16, 18) --*more than eight months **after** the November Repurchase and *more than 2 months **after** the May Repurchase. This type of cursory pleading has been unequivocally rejected by the Delaware courts. *See, e.g., Guttman,* 823 A.2d at 493-94. (dismissing claims under Rule 23.1 and holding that "[w]hen the case most cries out for the pleading of real facts -- *e.g.*, about the board's knowledge of the . . . problems at the company . . . [it] is at its most cursory, substituting conclusory allegations for concrete assertions of fact"); *see also In re Oracle Corp. Derivative Litig.*, 867 A.2d at 930 (rejecting notion that corporate insiders can be liable under Delaware law for selling their company stock "whenever a court, *in hindsight*, concludes that the insiders should, under some type of due care standard, have suspected that their company would later miss the mark") (emphasis added); *Lewis v. Daum*, C.A. No. 6733, 1984 Del. Ch. LEXIS 602, at *8 (Del. Ch. May 24, 1984) (dismissing claims challenging a stock repurchase under Rule 23.1 on ground that

conclusory allegations failed to create a reasonable doubt that a majority of directors was disinterested or independent).[8]

Accordingly, because the Amended Complaint fails to allege particularized facts raising a reasonable doubt that a majority of Countrywide's board was disinterested or independent, Plaintiffs failed to establish that demand would be futile.[9] As a result, the Amended Complaint must be dismissed.

### B. Plaintiffs Have Failed To Allege That The Repurchase Was Not The Product Of The Board's Business Judgment.

To the extent the Court even reaches the second prong of *Aronson* in addressing Plaintiffs' challenge to the Board's decision to approve the Repurchase, the Amended Complaint still fails to plead particularized facts sufficient to excuse demand. To establish demand futility under the second prong of *Aronson*, a plaintiff "'faces a substantial burden'" in attempting to meet this prong, which is "'directed to the extreme cases'" in which a "'decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review.'" *Highland Legacy Ltd. v. Singer*, C.A. No. 1566-N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) (citation omitted); *In re Merck & Co. Sec.,* 493 F.3d at 403 (holding that, in light of the business judgment presumption, the particularized facts must establish that the board acted

---

[8]   In addition, "the complaint . . . fails to allege particularized facts that support a rational inference that . . . [the] directors possessed information about [the Company's] actual performance that was materially different than existed in the marketplace at the time they traded, much less that they consciously acted to exploit such superior knowledge." *Guttman*, 823 A.2d at 505.

[9]   Moreover, Plaintiffs' frivolous insinuation that demand is futile because Countrywide has a staggered board is without merit. (Am. Compl. ¶ 11). A staggered board is explicitly permitted under Delaware General Corporation Law Section 141(d). 8 *Del. C.* § 141(d) ("The directors of any corporation organized under this chapter may, by the certificate of incorporation or by an initial bylaw, or by a bylaw adopted by a vote of the stockholders, be divided into 1, 2 or 3 classes. . . .").

"egregiously" or in "bad faith"). As explained in Part III, *infra*, Plaintiffs' conclusory allegations do not rebut the "powerful" business judgment presumption or come close to satisfying this "substantial burden" directed at "extreme" cases. *See, e.g., Ash v. McCall*, C.A. No. 17132, 2000 Del. Ch. LEXIS 144, at *33 (Del. Ch. Sept. 15, 2000) (dismissing claims and holding that "this Court has stated on several occasions that mere allegations that directors made a poor decision -- absent some showing of self-dealing or suspect motivation -- does not state a cause of action, much less meet the standard for excusing demand under the second prong of *Aronson*").

III.  **TO THE EXTENT THAT THE COURT REACHES THE MERITS OF THIS DISPUTE, THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

As explained in Parts I and II above, there are powerful reasons why the Court should dismiss the claims against the Former Directors without reaching the merits of these claims. However, to the extent that the Court does consider the merits of the Amended Complaint, it should be dismissed as against the Former Directors for failure to state a claim.

A motion to dismiss pursuant to Rule 12(b)(6) should be granted if plaintiff fails to state a claim which would entitle him to relief. *See Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003). As the Supreme Court held last year in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007), a "formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Rather, to satisfy the standard for notice pleading, Plaintiff must plead "allegations plausibly suggesting (not merely consistent with)" his conclusions. *Id.* at 1966. Thus, while blanket assertions "may provide a defendant with the requisite 'fair notice' of the nature of a plaintiff's claim, only *factual* allegations can clarify the 'grounds' on which that claim rests." *Steelman v. Prudential Ins. Co.*, No. CIV. S-06-2746 LKK/GGH, 2007 WL 2009805, at *4 (E.D. Cal. July 6, 2007) (emphasis added and citation omitted). Accordingly, to

survive a motion to dismiss, "the line between the conclusory and the factual . . . must be crossed to enter the realm of plausible liability." *Twombly*, 127 S. Ct. at 1966 n.5.

As explained below, the Amended Complaint offers only conclusory allegations that fail to state a claim for relief under applicable law.

### A.   Plaintiffs Fail To State A Duty of Loyalty Claim.

A cardinal precept of Delaware law is that directors are entitled to a presumption that in making a business decision they have acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. *See Aronson*, 473 A.2d at 812. Under this so-called business judgment rule, the business decisions of independent and disinterested directors will not be disturbed if they can be attributed to any rational business purpose. *Id.*; *In re CompuCom Sys. Stockholders Litig.*, C.A. No. 499-N, 2005 Del. Ch. LEXIS 145, at *19 (Del. Ch. Sept. 29, 2005) (explaining that "the business judgment rule serves to promote the role of the board, and not the court, as the ultimate manager of the business and affairs of the corporation"). The burden is on the party challenging the decision to establish facts rebutting this presumption. *See Aronson*, 473 A.2d at 812. As explained below, Plaintiffs have not done so here.

First, as discussed in Part II, *supra*, Plaintiffs have failed to sufficiently allege facts supporting that a majority of the Board engaged in insider trading, or otherwise lacked independence or was interested when it approved the Repurchase. Accordingly, for this reason alone, the Board is protected by the business judgment rule and the case should be dismissed. *See, e.g, Globis Partners, L.P. v. Plumtree Software, Inc.*, C.A. No. 1577-VCP, 2007 Del. Ch. LEXIS 169, at *32-33 (Del. Ch. Nov. 30, 2007) (dismissing claims; holding that, because plaintiff failed to plead sufficient facts to support its conclusory  allegation that the individual

19

defendants acted out of self-interest in the approval of the transaction, their decision was protected by the business judgment rule); *In re GM Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999) (dismissing claims on ground that plaintiff failed to rebut the business judgment rule by demonstrating that a majority of the board had a material self-interest in the transaction); *Blackmore Partners, L.P. v. Link Energy LLC*, C.A. No. 454-N, 2005 WL 2709639, at *7 (Del. Ch. Oct. 14, 2005) (noting that protections of business judgment rule insulate board decision from challenge so long as majority of directors approving transaction remain unconflicted).

       Moreover, it is well-settled under Delaware law that a corporation may freely purchase its own stock pursuant to 8 *Del. C.* § 160,[10] and that the business judgment rule protects directors from any challenge to such business decision. *See, e.g., Polk v. Good,* 507 A.2d 531, 535 (Del. 1986) (holding that a Delaware corporation has the power under Section 160(a) to acquire its own stock and such decisions will be protected by the business judgment rule); *Unitrin, Inc. v. American Gen. Corp.,* 651 A.2d 1361, 1389 (Del. 1995) (observing that a stock repurchase is a statutorily authorized form of business decision which a board of directors may routinely make). Delaware courts have repeatedly upheld a board's decision to engage in a stock repurchase under the business judgment rule. *See, e.g., Kahn,* 679 A.2d at 468 (dismissing claims on ground that directors' decision to approve a stock repurchase was protected by the business judgment rule); *Lewis,* 1984 Del. Ch. LEXIS 549, at *8 (dismissing claims; holding that it may be that the directors, in their honest business judgment, approved the repurchase at a price

---

[10]  Section 160 of Delaware General Corporation Law states, in pertinent part, that, "[e]very corporation may purchase, redeem, receive, take or otherwise acquire, own and hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares ... ." 8 *Del. C.* § 160(a).

that they thought reasonable); *Grobow v. Perot*, 539 A.2d 180, 184 (Del. 1988), *overruled on*

*other grounds sub nom. Brehm v. Eisner,* 746 A.2d 244, 253 (Del. 2000), (holding that, "the

repurchase . . . can only be viewed legally as representing an exercise of business judgment by

the . . . board with which a court may not interfere").

        In addition, Plaintiffs have failed to allege any facts demonstrating that the

Former Directors breached their fiduciary duties when they approved the Repurchase, and

therefore the claims asserted against them must be dismissed. Critically, Plaintiffs do not allege

that Brown sold any Countrywide stock during the relevant period, or acted in any way in bad

faith, when she approved the Repurchase. Moreover, the fact that Plaintiffs do not plead any link

between Dougherty's alleged stock sales and his approval of the Repurchase is fatal to Plaintiffs'

"insider trading" theory. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,*

833 A.2d 961, 974-75 (Del. Ch. 2003) (holding that "[i]n the absence of allegations based on

well-pled facts that call into question the propriety of [directors'] sales at the time they made

them, it is impossible to infer that they acted in bad faith in selling their shares or placed

themselves in a position inimical to their duties to [the Company]"), *aff'd,* 845 A.2d 1040 (Del.

2004); *see also, e.g., In re Silicon Graphics Sec. Litig.,* 183 F.3d at 990. Indeed, the mere

allegation that Dougherty sold some of his Countrywide stock on November 29, 2006 (Am.

Compl. ¶ 31) -- *twenty days after the Repurchase* -- does not (and cannot), in of itself, state a

loyalty claim under Delaware law. *See Guttman,* 823 A.2d at 504 (dismissing claims and

holding that such cursory allegations "do not come close" to meeting plaintiff's burden of

showing that the directors faced a substantial threat of liability for insider trading-based fiduciary

duty violations); *see also Rattner,* 2003 Del. Ch. LEXIS 103, at *42 (dismissing conclusory

claims that directors were misstating the company's financials to trade their company stock at an artificially inflated market price).

Furthermore, the dismissal of such claims against Dougherty is also warranted because all of Dougherty's trades were executed under a non-discretionary, pre-arranged trading plan pursuant to Section 10b5-1(c) of the Exchange Act. (Barnett Affidavit Ex. 1). A Rule 10b5-1(c) trading plan allows corporate insiders to set a schedule by which to sell their shares over a period of time and serves as an affirmative defense to allegations of insider trading. *See In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d at 604 (dismissing claims; holding that, because defendant's sales were part of a 10b5-1(c) trading plan, the timing and amount of the sales do not raise an inference of scienter). The fact that Dougherty sold his shares pursuant to such a trading plan was conveniently omitted from the Amended Complaint, despite the fact that it was publicly available and conspicuously disclosed at the bottom of Dougherty's Forms 4 filed with the SEC. (Barnett Affidavit Ex. 1). Critically, the Forms 4 reveal that Dougherty entered into his trading plan *before he sold a single share of his Countrywide stock*. *Id.* As a result, Plaintiffs' claims against Dougherty must be dismissed. *See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1116 (N.D. Cal. 2003) (dismissing insider trading claims against defendants who sold stock pursuant to 10b5-1(c) trading plans); *Fishbaum v. Liz Claiborne, Inc.*, No. 98-9396, 1999 U.S. App. LEXIS 18155 (2d Cir. July 27, 1999) (dismissing insider trading claims and observing that the amounts of the trades were not suspicious because the sales appeared to be part of a periodic divestment plan); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d at 604 (accord). Moreover, it is not surprising that Dougherty sold some of his Countrywide stock given his pending retirement from the Company. *See Wietschner*, 294 F. Supp. 2d 1102 at 1116 (holding that "[director] sold more shares, but given his pending

retirement and the fact that he also sold a roughly proportional number of shares in the months leading up to the class period, such sales are not sufficiently suspicious").

For all of these reasons, Plaintiffs failed to sufficiently plead facts demonstrating that a majority of the directors, including the Former Directors, acted disloyally or was not protected by the business judgment rule when it approved the Repurchase. Accordingly, Plaintiffs' claims must be dismissed.[11]

**B.    Plaintiffs' Duty Of Care Claims Are Barred Under Countrywide's Certificate Of Incorporation And Lack Merit Under Delaware Law.**

At most, Plaintiffs' claims are premised on unsupported accusations of duty of care violations. However, Countrywide's certificate of incorporation contains an exculpatory provision pursuant to 8 *Del. C.* § 102(b)(7) that expressly exempts directors from personal liability for breaches of fiduciary duty based on either negligence or lack of due care. (Barnett Affidavit Ex. 2 (Countrywide Charter, ¶ 7th)); 8 *Del. C.* § 102(b)(7) (permitting a corporation, by so providing in its certificate of incorporation, to protect its directors from monetary liability for

---

[11]    In addition, to the extent that Plaintiffs are asserting a waste claim, such claim fails as a matter of law. Directors are liable for waste under Delaware law only in the "rare, 'unconscionable case where [they] irrationally squander or give away corporate assets.'" *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (citation omitted). Here, Plaintiffs have not met their burden of pleading particularized facts demonstrating that "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration" for the Repurchase or the alleged issuance of preferred stock in exchange for $2 billion in cash. (Am. Compl. ¶ 28); *id.*; *see also Leung v. Schuler*, C.A. No. 17089, 2000 Del. Ch. LEXIS 134, at *11 (Del. Ch. Sept. 29, 2000), *aff'd*, 783 A.2d 124 (Del. 2001) (dismissing waste claims and observing that the "Delaware law standard for pleading waste is stringent"); *In re 3COM Corp. S'holders Litig.*, C.A. No. 16721, 1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999) (dismissing waste claims and explaining waste standard as "[t]he company would literally have to get nothing whatsoever for what it gave"); *see also, e.g., Continuing Creditors' Comm. Of Star Telecomms. Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 465 (D. Del. 2004) (dismissing corporate waste claim as conclusory and insufficient to overcome the protections of the business judgment rule).

duty of care violations, *i.e.*, liability for gross negligence).[12] Accordingly, to the extent that Plaintiffs state a claim for breach of the duty of care, Article Seventh of Countrywide's certificate of incorporation bars Plaintiffs from seeking any money damages against the Former Directors. Because Plaintiffs have failed to plead that the Former Directors engaged in intentional misconduct, acted in bad faith, or breached their fiduciary duty of loyalty when they approved the Repurchase, they are not entitled to any money damages as a matter of law. *See In re Baxter*, 654 A.2d at 1270; *Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006).[13]

    In any event, Plaintiffs fail to state a due care claim. Plaintiffs do not allege any facts challenging the process by which the Repurchase was evaluated and approved by the Board. In fact, Plaintiffs have alleged no facts suggesting that the Board, including the Former Directors, was uninformed about the terms of the Repurchase, did not fully evaluate such terms, or failed to rely in good faith on the recommendation of its advisors. Moreover, Plaintiffs have failed to sufficiently plead facts suggesting that the Board did not act in the best interest of Countrywide and its shareholders when it implemented the Repurchase pursuant to its statutory authority. 8 *Del. C.* § 160. In effect, other than to second-guess *in hindsight* the Board's decision to implement the Repurchase as not the "correct course of action" for the Company (Am. Compl. ¶ 26), Plaintiffs have not alleged anything that casts doubt on the business judgment of the Board's decision to approve the Repurchase. *See, e.g., Gagliardi*, 683 A.2d at 1052 (stating that

---

[12]  "The court may take judicial notice of the certificate in deciding a motion to dismiss." *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (taking judicial notice of the company's Section 102(b)(7) provision in its certificate of incorporation).

[13]  In fact, Plaintiffs' fiduciary claims against Brown -- all of which are, at most, premised on Brown's alleged breach of the fiduciary duty of care -- are barred as a matter of law by Countrywide's exculpatory charter provision.

to "allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary *acting in a good faith pursuit of corporate purposes*, does not state a claim for relief against that fiduciary no matter how foolish the investment may appear in retrospect") (emphasis in original).[14] Accordingly, Plaintiffs' claims must be dismissed.

### C.    Plaintiffs Are Not Entitled To Their Requested Relief.

To the extent Plaintiffs still seek an equitable accounting against the Former Directors, they are not entitled to such relief as a matter of law. "An accounting for profits is a means of measuring the benefits bestowed on an unjustly enriched defendant." *Fleer Corp. v. Topps Chewing Gum,* 539 A.2d 1060, 1063 (Del. 1988). Here, Plaintiffs do not allege that the Former Directors were unjustly enriched with respect to their Repurchase allegations. Moreover, as discussed above, Plaintiffs have not pled facts demonstrating that Dougherty was unjustly enriched when he sold Countrywide stock. As a result, Plaintiffs have failed to allege facts suggesting that they are entitled to an equitable accounting against the Former Directors. Furthermore, Plaintiffs have not alleged facts demonstrating that Countrywide was actually damaged by the Repurchase. Accordingly, Plaintiffs' claims must be dismissed.

---

[14]   In addition, it is important to point out that Brown was no longer a member of the Countrywide board when the board approved the May 2007 Repurchase (Am. Compl. ¶ 7), and therefore any claims in connection with that stock repurchase must be dismissed as to Brown. *See Official Comm. Of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins,* C.A. No. 20228, 2004 WL 1949290, at *8-9 (Del. Ch. Aug. 24, 2004) (holding that "once a director has resigned, that director may no longer be held liable for the subsequent actions of the Board.").

## CONCLUSION

For all of the foregoing reasons, the Former Directors respectfully submit that the Court should grant their Motion to Dismiss and dismiss Plaintiffs' Amended Complaint in its entirety.

/s/ Edward P. Welch
Edward P. Welch (I.D. No. 671)
Edward B. Micheletti (I.D. No. 3794)
Rachel J. Barnett (I.D. No. 4876)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000
ewelch@skadden.com

Attorneys for Defendants
Michael E. Dougherty and Kathleen Brown

DATED:  February 27, 2008