# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION DERIVATIVE LITIGATION | ) ) ) ) ) ) ) ) | Master Docket No. 1:07-cv-00372(SLR)<br><br>(Consolidated Action)<br>Judge Sue L. Robinson |

## <u>MICHAEL E. DOUGHERTY'S AND KATHLEEN BROWN'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT</u>

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Tel.:  (302) 651-3000
Fax:  (302) 651-3001
*Attorneys for Defendants*
*Michael E. Dougherty and Kathleen Brown*

DATED:  May 12, 2008

**TABLE OF CONTENTS**

Page

TABLE OF CASES AND AUTHORITIES............................................................................i

INTRODUCTION ...........................................................................................................1

ARGUMENT..................................................................................................................4

I.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS
HAVE NOT ALLEGED PARTICULARIZED FACTS ESTABLISHING THAT
THEIR FAILURE TO SERVE DEMAND UPON COUNTRYWIDE'S BOARD
WAS EXCUSED.......................................................................................................4

     A.     Plaintiffs Have Failed To Allege Particularized Facts That Raise A
Reasonable Doubt That A Majority Of The Countrywide Board Was
Disinterested Or Independent. ..............................................................................4

          1.     Defendants are not "interested" simply because they sold their
Countrywide stock....................................................................................6

          2.     Defendants are not "interested" because Countrywide allegedly has
not engaged in a stock repurchase in recent past......................................10

          3.     Defendants are not "interested" because they are fully informed
about Countrywide. ..................................................................................12

     B.     Plaintiffs Have Failed To Allege That The Repurchase Was Not The
Product Of The Board's Business Judgment. ........................................................13

II.     TO THE EXTENT THAT THE COURT REACHES THE MERITS OF THIS
DISPUTE, THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM.................................................................................14

     A.     Plaintiffs Failed To Plead Any Facts Suggesting That The Former
Directors Acted Disloyally When They Approved The Repurchase. ...................14

     B.     Plaintiffs' Claims Are Barred Under Countrywide's Certificate Of
Incorporation. ...................................................................................................19

III.     PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THAT THEY HAVE
STANDING TO BRING THIS ACTION.......................................................................19

CONCLUSION ..............................................................................................................20

## TABLE OF CASES AND AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*In re 3COM Corp. S'holders Litig.,*
    C.A. No. 16721, 1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999) ...................... 16

*Alabama By-Products Corp. v. Cede & Co. ex rel. Shearson Lehman Bros.,* 657 A.2d
    254 (Del. 1995) .................................................................................................. 5

*Allison v. General Motors Corp.,*
    604 F. Supp. 1106 (D. Del.), *aff'd mem.,* 782 F.2d 1026 (3d Cir. 1985) ..................... 5

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984).................................................................................. 11, 14

*Ash v. McCall,*
    C.A. No. 17132, 2000 Del. Ch. LEXIS 144 (Del. Ch. Sept. 15, 2000) ..................... 13

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,*
    833 A.2d 961 (Del. Ch. 2003), *aff'd,* 845 A.2d 1040 (Del. 2004) ........................ 17, 18

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ...................................................................................... 14, 17

*Blackmore Partners, L.P. v. Link Energy LLC,*
    C.A. No. 454-N, 2005 WL 2709639 (Del. Ch. Oct. 14, 2005)................................... 11

*Continuing Creditors' Comm. of Star Telecommc'ns Inc. v. Edgecomb,*
    385 F. Supp. 2d 449 (D. Del. 2004)..........................................................2, 7, 16, 17

*Desimone v. Barrows,*
    924 A.2d 908 (Del. Ch. 2007).................................................................................20

*Fishbaum v. Liz Claiborne, Inc.,*
    No. 98-9396, 1999 U.S. App. LEXIS 18155 (2d Cir. July 27, 1999)........................ 18

*In re Forest Labs., Inc. Derivative Litig.,*
    450 F. Supp. 2d 379 (S.D.N.Y. 2006).......................................................................7

*Gagliardi v. TriFoods Int'l, Inc.,*
    683 A.2d 1049 (Del. Ch. 1996)............................................................................... 11

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003)...........................................................1, 7, 8, 9, 10, 18

i

*Highland Legacy Ltd. v. Singer*,
  C.A. No. 1566-N, 2006 WL 741939 (Del. Ch. Mar. 17, 2006)....................................13

*In re IAC/InterActiveCorp Sec. Litig.*,
  478 F. Supp. 2d 574 (S.D.N.Y. 2007).....................................................................8, 18

*Kahn v. Roberts*,
  679 A.2d 460 (Del. 1996) .........................................................................................14

*Leung v. Schuler*,
  C.A. No. 17089, 2000 Del. Ch. LEXIS 134 (Del. Ch. Sept. 29, 2000), *aff'd,*
  783 A. 2d 124 (Del. 2001) ........................................................................................16

*Lewis v. Anderson*,
  477 A.2d 1040 (Del. 1984) .......................................................................................20

*In re Merck & Co. Sec. Derivative & ERISA Litig.*,
  493 F.3d 393 (3d Cir. 2007)......................................................................................13

*Norte & Co. v. Huffines*,
  304 F. Supp. 1096 (S.D.N.Y. 1968)..........................................................................16

*O'Neill v. Maytag*,
  339 F.2d 764 (2d Cir. 1964).......................................................................................15

*In re Oracle Corp. Derivative Litig.*,
  867 A.2d 904 (Del. Ch. 2004), *aff'd mem.*, 872 A.2d 960 (Del. 2005).........................7

*Polk v. Good*,
  507 A.2d 531 (Del. 1986) ....................................................................................2, 14

*In re Primedia Inc. Derivative Litig.*,
  910 A.2d 248 (Del. Ch. 2006)...................................................................................15

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) ............................................................................................5

*Rattner v. Bidzos*,
  C.A. No. 19700, 2003 Del. Ch. LEXIS 103 (Del. Ch. Sept. 30, 2003) ................5, 8, 9

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999)........................................................................................9

*Solomon v. Armstrong*,
  747 A.2d 1098 (Del. Ch. 1999), *aff'd mem.*, 746 A.2d 277 (Del. 2000).......................8

ii

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006) ........................................................................... 16

*In re Verisign, Inc. Derivative Litig.*,
  531 F. Supp. 2d 1202 (N.D. Cal. 2007) .................................................... 19

*In re Walt Disney Co. Derivative Litig.*,
  906 A.2d 27 (Del. 2006) ............................................................................ 16

*Wietschner v. Monterey Pasta Co.*,
  294 F. Supp. 2d 1102 (N.D. Cal. 2003) .................................................... 18

**STATUTES**

Fed. R. . 12(b)(6) ........................................................................................... 1

Fed. R. Civ. P. 23.1 ........................................................................... 1, 4, 14, 19

8 *Del. C.* § 160 ............................................................................................. 14

## INTRODUCTION

Rather than defend the cursory insider trading and disclosure claims asserted in their Consolidated, Amended, and Supplemental Verified Complaint (referred to herein as the "Amended Complaint") (D.I. 37), Plaintiffs have abandoned them in their Opposition Brief in a transparent attempt to evade *Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) – a case squarely on point and which warrants dismissal of this action. By doing so, Plaintiffs are left with absolutely no support for their claim against former outside directors Michael E. Dougherty and Kathleen Brown (the "Former Directors") for breach of the duty of loyalty.[1] As a result, their case against the Former Directors should be dismissed.

As the Former Directors explained in their Opening Brief, Plaintiffs alleged in the Amended Complaint that the Former Directors breached their fiduciary duties by approving a company stock repurchase (the "Repurchase") in order to engage in insider trading. Plaintiffs also alleged that making a demand on the Countrywide Board would have been futile on the theory that the director defendants were purportedly "interested" in the Repurchase because they sold their Countrywide stock "while they were in possession of material adverse inside information concerning the business and assets of Countrywide." (Am. Compl. ¶ 10). Among other things, the Former Directors argued that such conclusory allegations should be dismissed under Rules 23.1 and 12(b)(6) for failing to sufficiently plead demand futility, and for failing to state a claim under Delaware law. In particular, the Former Directors relied on the seminal

---

[1]  The parties agree that Delaware law governs the claims in this action because Countrywide Financial Corporation ("Countrywide" or the "Company") is incorporated in Delaware. Plaintiffs' acknowledge in their Brief In Opposition To Defendants' Motions To Dismiss And To Transfer Venue Or In The Alternative Stay (herein referred to as the "Opposition Brief" and cited as "Opp. Br.") that their "claim is based on Delaware law". (D.I. 52; Opp. Br. at 1).

Delaware Court of Chancery decision in *Guttman*, and argued that Plaintiffs failed to allege the facts needed to support either demand futility or a loyalty claim under Delaware law.

Realizing that their claims – as alleged in the Amended Complaint – would face dismissal under *Guttman*, Plaintiffs shifted gears in their Opposition Brief, and argued that they are ***not*** alleging that Defendants engaged in insider trading or that they violated any fiduciary duty of disclosure under Delaware law. (Opp. Br. at 3, 14, 15). Rather, Plaintiffs concede that they are trying to fit their case into a perceived exception to *Guttman* by contending that Defendants were "interested" for demand purposes and somehow acted "disloyally" simply because they sold their Countrywide stock, approved the Repurchase, and were well-informed about Countrywide's business. (Opp. Br. at 12-13). However, by attempting to avoid *Guttman* in this manner, Plaintiffs have completely undermined their case.

None of these allegations support a finding that the Countrywide board was interested for demand purposes. Indeed, Plaintiffs' own allegations demonstrate that a majority of Countrywide's directors did not even sell shares during the time period that the challenged repurchases purportedly occurred. (Pls. Ex. 7). For this reason alone, this action should be dismissed. Moreover, it is well-settled under Delaware law that "simply selling company stock does not make a director interested." *See, e.g., Continuing Creditors' Comm. of Star Telecommc'ns. Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 461 (D. Del. 2004). Similarly, alleging that a board approved a stock repurchase program, without more, does not state a claim, let alone support an inference of "interestedness." *See, e.g., Polk v. Good*, 507 A.2d 531, 535 (Del. 1986) (holding that a Delaware corporation has the power under Section 160 of the Delaware General Corporation Law to repurchase its own stock and such decisions will be protected by the business judgment rule). And arguing that the Defendant board members were "very well-

2

informed" about Countrywide's business (Op. Br. at 12) supports that the Countrywide board satisfied, not breached, their fiduciary duties. It certainly does not support that they were "interested" for demand futility purposes.

In addition, none of these allegations support Plaintiffs' claim against the defendant directors for breach of the duty of loyalty. Further, as explained in the Former Directors' Opening Brief, Plaintiffs have not pled *any* specific allegations that suggest that the Former Directors acted disloyally. (Op. Br. at 19-23). In fact, Plaintiffs concede that the Amended Complaint is completely "silent" as to Brown (Opp. Br. at 7), and they do not even allege that she sold any Countrywide stock. Moreover, Plaintiffs merely allege that Dougherty sold some of his Countrywide stock over a more than six-month period (Am. Compl. ¶ 31), but offer no specifics as to the timing of his sales, the percentage that each sale comprised of his total ownership, whether any sales were made pursuant to Company policy, and whether any sales were inconsistent with his prior trading history. In addition, Plaintiffs do not even attempt to rebut the argument that all of Dougherty's trades were executed under a non-discretionary, pre-arranged trading plan pursuant to Section 10b5-1(c) of the Securities and Exchange Act. As a result, Plaintiffs have failed to state a claim for relief against either Brown or Dougherty.

For these reasons, the reasons set forth in the Former Directors' Opening Brief, and other reasons discussed below, the Court should grant the Former Directors' motion to dismiss the Amended Complaint in its entirety.[2]

---

[2]    The Former Directors join in the Motion to Transfer filed by the other Countrywide Defendants (D.I. 40), and the arguments raised in support of that motion in their Opening Brief filed on February 27, 2008 (D.I. 41), and their reply brief filed today.

## ARGUMENT

I.    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED PARTICULARIZED FACTS ESTABLISHING THAT THEIR FAILURE TO SERVE DEMAND UPON COUNTRYWIDE'S BOARD WAS EXCUSED.**

The Amended Complaint should be dismissed because Plaintiffs failed to serve demand upon the Countrywide Board and have not demonstrated that such demand was excused.[3]  Plaintiffs acknowledged that they never made demand on Countrywide's board of directors to pursue the derivative claims asserted in this action. (*See, e.g.,* Am. Compl. ¶ 9). Moreover, Plaintiffs concede that demand excusal under Delaware law is "stringent" and requires a "particularized pleading." (Opp. Br. at 11); *see also* Fed. R. Civ. P. 23.1 ("The complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort."). As explained further below, the Amended Complaint does not come close to satisfying this "stringent" requirement. *Id.*

A.    **Plaintiffs Have Failed To Allege Particularized Facts That Raise A Reasonable Doubt That A Majority Of The Countrywide Board Was Disinterested Or Independent.**

As discussed in the Former Directors' Opening Brief, Plaintiffs' conclusory allegations do not raise a reasonable doubt that: (1) a majority of the Countrywide board was

---

[3]    The parties agree that Delaware law governs the Court's demand futility analysis. (Opp. Br. at 10).  However, the parties disagree as to which date the Court should use when analyzing whether Plaintiffs have demonstrated that demand on the Countrywide board would have been futile.  As explained in the Former Directors' Opening Brief (Op. Br. at 10 n.5), the proper time to evaluate demand futility is when Plaintiffs *first* raised their claims challenging the Repurchase in the IBEW amended complaint filed on September 14, 2007, though Plaintiffs have failed to plead with particularity facts establishing that a majority of the Countrywide board, *at any time*, was otherwise independent or disinterested.

4

disinterested or independent; or that (2) the challenged Repurchase was the product of the board's valid exercise of business judgment. (Opening Br. at 10-18); *see also Rattner v. Bidzos*, C.A. No. 19700, 2003 Del. Ch. LEXIS 103, at *22 (Del. Ch. Sept. 30, 2003) (dismissing claims and holding that "'Rule 23.1 is not satisfied by conclusory statements or mere notice pleading . . . What the pleader must set forth are particularized factual statements that are essential to the claim . . . . A prolix complaint larded with conclusory language . . . does not comply with these fundamental pleading mandates'") (citation omitted); *Allison v. General Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del.), *aff'd mem.*, 782 F.2d 1026 (3d Cir. 1985) (holding that "the mere fact that plaintiff . . . makes conclusory allegations of director wrongdoing does not suffice to excuse demand"). Thus, Plaintiffs have not shown that demand on the Countrywide board would have been futile.[4]

Plaintiffs do not argue in their Opposition Brief that any of the director defendants lack independence. Nor do Plaintiffs allege particularized facts in the Amended Complaint showing either that the board was dominated by an officer or director who was the proponent of the challenged transaction, or that the board was so under his influence that its discretion was "sterilize[d]." *See Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). Because Plaintiffs do not challenge the independence of any of the director defendants, they are presumed to be independent under the business judgment rule. *Id.* at 933.

_____

[4]   Plaintiffs seem to quibble about whether demand is an issue of standing. (Opp. Br. at 11-12). Delaware case law suggests that it is. *See, e.g., Alabama By-Products Corp. v. Cede & Co. ex rel. Shearson Lehman Bros.*, 657 A.2d 254, 265 (Del. 1995) (explaining that "the demand requirements of Rule 23.1 represent a procedural restatement of the[] bedrock principles of Delaware corporate governance in the context of *standing* to maintain a derivative shareholder's suit") (citation omitted). Regardless of how the demand obligation is characterized, Plaintiffs have not demonstrated that it was excused.

In their Opening Brief, the Former Directors, relying on *Guttman*, explained that Plaintiffs' cursory allegations of insider trading did not support their argument that demand was excused. (Op. Br. at 13-15). In response, Plaintiffs' abandoned their insider trading claims, and – in a misguided attempt to distinguish this case from *Guttman* – offered three new meritless reasons why a majority of the Countrywide directors were allegedly "interested" in the Repurchase. Plaintiffs concede that "[b]y itself, each one of these [alleged] facts might not excuse demand." (Opp. Br. at 15). Thus, the Court could end its analysis here, and dismiss the action pursuant to Rule 23.1. In any event, regardless of whether Plaintiffs' conclusory allegations of interestedness are viewed individually or "as a whole," they do not establish that any of the Countrywide directors were interested in the Repurchase and therefore unable to objectively consider demand. *Id.*

### 1.   Defendants are not "interested" simply because they sold their Countrywide stock.

*First*, Plaintiffs contend that a majority of the directors, including Dougherty, was "interested" in the Repurchase because they sold their Countrywide stock at various dates over a two-year period "since before November 2005 . . . and from November 2006 through and after May 2007." (Opp. Br. at 12). However, at the same time, in a conceded attempt to distinguish their case from *Guttman*, Plaintiffs suggest in their Opposition Brief that "the Complaint does not allege . . . a claim that directors sold their Countrywide stock on the basis of material, inside, adverse information." (Opp. Br. at 3; *see also* Opp. Br. at 15 "this is not a case alleging that the defendants traded on inside information"). Plaintiffs also contend that they do not allege that any of the directors breached their fiduciary duty of disclosure under Delaware law. (Opp. Br. at 14).

Therefore, Plaintiffs' argument effectively boils down to nothing more than a claim that the Countrywide directors are "interested" because they sold their Countrywide stock.

6

(Opp. Br. at 12). It is well-settled that "simply selling company stock does not make a director interested" under Delaware law. *See, e.g., Continuing Creditors' Comm. of Star Telecommc'ns. Inc.*, 385 F. Supp. 2d at 461; *see also In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 930 (Del. Ch. 2004) (dismissal claims and observing that "[f]or legitimate reasons, directors and officers who own options and stock will at times have to, or find it useful to, sell or buy shares"); *aff'd mem.*, 872 A.2d 960 (Del. 2005); *Guttman*, 823 A.2d at 502 (dismissing claims for failing to plead demand futility and noting that corporate insiders sell company stock as a matter of course and are not considered "interested" because they sold their company stock); *Rattner*, 2003 Del. Ch. LEXIS 103, at *38-39 (accord).

Moreover, even before Plaintiffs purportedly abandoned their conclusory insider trading and disclosure allegations, Plaintiffs failed to plead that demand would be futile. *See Guttman,* 823 A.2d at 502; *Rattner*, 2003 Del. Ch. LEXIS 103, at *39. As explained in the Former Directors' Opening Brief, *Guttman*, and the cases that have followed *Guttman*, held that finding a director "interested" based solely on the fact that he sold company stock during a contested period "would create the same hair-trigger demand excusal that *Aronson* and *Rales* eschewed." *Guttman*, 823 A.2d at 502; *Rattner*, 2003 Del. Ch. LEXIS 103, at *38-39; *In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 389 (S.D.N.Y. 2006) (applying Delaware law; holding that "[c]ursory allegations that a director made sales of company stock in the market at a time when he possessed material, nonpublic information are not sufficient to find a director interested for demand-futility purposes").

Here, just like in *Guttman*, Plaintiffs cursorily allege in the Amended Complaint that Defendants purportedly acted to artificially inflate the Company's stock to engage in insider trading. (*See. e.g.,* Am. Compl. ¶ 10, stating that a majority of the board "sold their own shares

7

of Countrywide stock while in possession of materially adverse inside information"; ¶ 36

"directors of Countrywide breached their fiduciary duties to it by . . . causing Countrywide to

buy its stock at an inflated price and selling their own Countrywide stock"); cf., Guttman, 823

A.2d at 494 (alleging that directors breached their fiduciary duties by misstating the financial

results of the company in order to sell substantial amounts of their company stock at artificially

inflated market price). Moreover, as in Guttman, apart from merely listing the directors' stock

sales that were publicly reported on SEC Forms 4, Plaintiffs fail to allege any information

surrounding such sales, including, but not limited to: (1) the timing of any sales; (2) whether any

sales were made pursuant to Company policy; (3) whether any sales were inconsistent with

Defendants' prior trading history; or (4) the percentage that each sale comprised of each

Defendant's total ownership. 823 A.2d at 504; see also Rattner, 2003 Del. Ch. LEXIS 103, at

*40.[5] Plaintiffs also do not dispute that several of the directors' stock sales were made pursuant

to prearranged stock trading plans under Rule 10b5-1(c) of the Exchange Act. (Opp. Br. at 3).

See In re IAC/InterActiveCorp Sec. Litig., 478 F. Supp. 2d 574, 604 (S.D.N.Y. 2007) (finding

director not interested for purposes of demand futility where director sold his company stock

pursuant to a 10b5-1(c) trading plan).

Moreover, and most importantly, Plaintiffs have not alleged any facts – much less

particularized facts – establishing any connection between the directors' stock sales and the

Repurchase. *Indeed, Exhibit 7 to the Amended Complaint reveals that a majority of*

---

[5]    Additionally, Plaintiffs do not allege that any of the purported sales were material to any of
these Defendants. *See Solomon v. Armstrong*, 747 A.2d 1098, 1118 (Del. Ch. 1999), *aff'd
mem.*, 746 A.2d 277 (Del. 2000) ("[I]t is well established that when a party challenges a
director's action based on a claim of the director's debilitating pecuniary self-interest, that
party must allege that the director's interest is material to that director.").

*Countrywide's directors did not sell shares during the time period that the challenged repurchases allegedly occurred.*[6] Accordingly, in the absence of particularized facts establishing that a majority of Countrywide's directors sold shares at the time of the challenged repurchases, Plaintiffs' claims, whether styled as insider trading claims or otherwise, must be dismissed for failure to plead demand futility. *See, e.g., Guttman*, 823 A.2d at 504 (dismissing claims under Rule 23.1 on ground that conclusory allegations challenging directors' stock sales are insufficient to satisfy demand excusal requirements); *Rattner*, 2003 Del. Ch. LEXIS 103, at *38-39 (accord); *see also In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) (demand not excused where plaintiff "has not stated facts that demonstrate that the Board intended for the stock repurchase plan to inflate artificially the value of [the Company's] stock in order to facilitate insider trading. In the absence of such facts, we must presume that the Board had a legitimate business purpose when it repurchased [the Company's] stock").

Beyond disavowing their insider trading allegations, Plaintiffs also attempt to distinguish *Guttman* by contending that the Court in that case "placed decisive importance on the absence of a corporate repurchase" when analyzing whether certain director stock sales were improper. (Opp. Br. at 13). In fact, nowhere in *Guttman* is the word "repurchase" even mentioned. To the contrary, the Court in *Guttman* merely observed that its analysis would be "quite different" if plaintiffs alleged that the directors engaged in "classic self-dealing" by appearing on *both sides of the challenged transaction.* 823 A.2d at 502. Here, it cannot

---

[6]    Plaintiffs did not provide Defendants with Exhibit 7 until May 1, 2008 – well after Opening Motions to Dismiss were filed. (D.I. 55). This purported list of Defendants' publicly announced stock sales as reported on their SEC Forms 4 provides further support that such sales, made at various times throughout a *more than two-year period* – including many of which *pre-date* the Repurchase – had no connection whatsoever with the Repurchase.

9

reasonably be argued that Defendants were on both sides of the Repurchase because Defendants did not sell their shares directly to Countrywide. Rather, just like in *Guttman,* Defendants here sold their shares in the market. 823 A.2d at 502 (observing that this is not a case where directors are on both sides of the transaction because "plaintiffs attack a myriad of stock sales, not between the defendant-directors and [the Company], but between the defendant-directors and marketplace buyers"). Indeed, Plaintiffs themselves concede that "these were not face-to-face transactions" between the company and the Defendant directors. (Opp. Br. at 13-14). For these reasons, the Court should apply the teachings of *Guttman* and its progeny and dismiss the Amended Complaint for failing to plead demand futility.[7]

### 2.    Defendants are not "interested" because Countrywide allegedly has not engaged in a stock repurchase in recent past.

*Second,* Plaintiffs contend that the Countrywide board was "interested" because, "having reported no repurchase for more than 15 years," it should not have approved the Repurchase when house prices were purportedly declining. (Opp. Br. at 13). However, as Plaintiffs acknowledge, this allegation does not as a matter of law make any of the directors *personally interested* in the Repurchase or render any of the directors incapable of fairly entertaining a demand. (Opp. Br. at 10, explaining that directors are interested for purposes of

---

[7]    Even if the Court were to equate a company repurchase and a director's sale of stock in the market with a director appearing on both sides of a business transaction, despite the teachings of *Guttman,* Plaintiffs' argument still falls short. This is because Plaintiffs fail to allege particularized facts to establish that a majority of the directors sold their shares in the market *at the same time* that Countrywide repurchased its shares. Rather, Plaintiffs' allegations themselves prove the contrary. For example, Plaintiffs allege that: "Russell sold 10,000 Countrywide shares on December 12, 2005" – *nearly a year prior to the November Repurchase;* "Donato sold 54,142 Countrywide shares ... on October 27 and December 15, 2006" – *nearly two weeks before and more than a month after the November Repurchase;* and that "Dougherty sold 170,929 Countrywide shares ... between November 29, 2006 and June 15, 2007" – *twenty days after the November Repurchase.* (Am. Compl. ¶ 31; Ex. 7).

demand futility "if they derive a *personal financial benefit* from the transaction") (emphasis added); *see also Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (holding that a director is considered "interested" when he appears on both sides of a transaction or expects to derive "a personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally"). "[M]ere directorial approval of a transaction, absent particularized facts . . . establishing the lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand." *Id.* at 817.

Moreover, the fact that Countrywide allegedly did not engage in a Repurchase in the recent past does not in any way rebut the business judgment rule presumption that the directors acted in good faith and in the honest belief that the Repurchase was in the best interests of the Company and its shareholders. As explained in the Former Directors' Opening Brief, Plaintiffs' mere second-guessing *in hindsight* of the Board's decision to engage in a Repurchase does not state a duty of loyalty claim, or any breach of fiduciary duty for that matter, under Delaware law. (Op. Br. at 24). *See also Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1052 (Del. Ch. 1996) (holding that "to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary *acting in a good faith pursuit of corporate purposes*, does not state a claim for relief against that fiduciary no matter how foolish the investment may appear in retrospect") (emphasis in original); *Blackmore Partners, L.P. v. Link Energy LLC*, C.A. No. 454-N, 2005 WL 2709639, at *7 (Del. Ch. Oct. 14, 2005) (noting that the protection of the business judgment rule insulates a board's decision from challenge where a majority of directors approving the transaction were disinterested). Accordingly, the decision to approve the Repurchase cannot form the basis for concluding that the Countrywide board is interested for demand futility purposes.

11

### 3.    Defendants are not "interested" because they are fully informed about Countrywide.

*Third,* Plaintiffs offer the odd argument that a majority of the Countrywide board was "interested" because it was "very well informed about all the parts of Countrywide's business." (Opp. Br. at 12). Normally, stockholder Plaintiffs will argue that a board was *uninformed* in an attempt to state a claim for breach of the duty of care. Instead, Plaintiffs here direct the Court to two articles from *The Wall Street Journal* and *The New York Times* that they claim highlight the "directors' attentiveness to Countrywide's business." (Compl. ¶¶ 24-25).

Specifically, Plaintiffs allege that these articles explain, among other things, that the Countrywide board (1) "has been actively engaged in every significant issue facing the company"; (2) "has held 31 meetings this year, not including committee sessions"; and (3) "has always been actively engaged in overseeing the company's senior management and business strategy." *Id.* It is also alleged that these articles explain that "Countrywide has a long history of success" and "has an outstanding track record for its financial performance and creation of shareholder value, and the board deserves credit for the important role it has played in these accomplishments." *Id.* Such allegations cut against Plaintiffs' claim that the Countrywide board breached its fiduciary duties when it authorized the Repurchase. To the contrary, these articles, which are directly referenced in the Amended Complaint by Plaintiffs, demonstrate that the Countrywide board exercised well-informed business judgment when making decisions, including the decision to implement the Repurchase program, on behalf of the Company and its shareholders. *Id.* Not surprisingly, Plaintiffs offer *no* support for the proposition that being well-informed is tantamount to interestedness.

*        *        *

12

For these reasons, Plaintiffs have not alleged particularized facts raising a reasonable doubt that a majority of Countrywide's board was disinterested or independent. Thus, Plaintiffs have failed to establish that demand would be futile. As a result, the Amended Complaint should be dismissed under Rule 23.1.

**B.    Plaintiffs Have Failed To Allege That The Repurchase Was Not The Product Of The Board's Business Judgment.**

Plaintiffs have also failed to plead particularized facts sufficient to satisfy the second prong of *Aronson*. To establish demand futility under the second prong of *Aronson*, a plaintiff "'faces a substantial burden'" in attempting to meet this prong, which is "'directed to the extreme cases'" in which a "'decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review.'" *Highland Legacy Ltd. v. Singer*, C.A. No. 1566-N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) (citation omitted); *In re Merck & Co. Sec. Derivative & ERISA Litig.*, 493 F.3d 393, 403 (3d Cir. 2007) (holding that, in light of the business judgment presumption, the particularized facts must establish that the board acted "egregiously" or in "bad faith"). Here, Plaintiffs do not even attempt to address the second prong of *Aronson* in their Opposition Brief. This is most likely because Plaintiffs' conclusory allegations regarding the Repurchase do not rebut the "powerful" business judgment presumption or come close to satisfying this "substantial burden" directed at "extreme" cases. *Highland Legacy Ltd.*, 2006 WL 741939, at *7. As the Delaware Court of Chancery stated in *Ash v. McCall*, "mere allegations that directors made a poor decision – absent some showing of self-dealing or suspect motivation – does not state a cause of action, much less meet the standard for excusing demand under the second prong of *Aronson*." C.A. No. 17132, 2000 Del. Ch. LEXIS 144, at *33 (Del. Ch. Sept. 15, 2000).

13

II.    **TO THE EXTENT THAT THE COURT REACHES THE MERITS OF THIS DISPUTE, THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

As explained above, there are significant reasons why the Court should dismiss the claims against the Former Directors under Rule 23.1 without reaching the merits of these claims. However, to the extent that the Court does consider the merits of the Amended Complaint, it should be dismissed for failing to plead facts demonstrating that the Former Directors have committed any breach of fiduciary duty under Delaware law. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 n.5 (2007) (holding that in order to survive a motion to dismiss, "the line between the conclusory and the factual . . . must be crossed to enter the realm of plausible liability").

A.    **Plaintiffs Failed To Plead Any Facts Suggesting That The Former Directors Acted Disloyally When They Approved The Repurchase.**

Under Delaware law, a corporation has a statutory right to freely purchase its own stock pursuant to 8 *Del. C.* § 160, and the business judgment rule protects directors from any challenge to such business decision. *See Aronson*, 473 A.2d at 812 (holding that the business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company"); *see, e.g.*, *Polk*, 507 A.2d at 535 (holding that a Delaware corporation has the power under Section 160 to acquire its own stock and such decisions will be protected by the business judgment rule); *Kahn v. Roberts*, 679 A.2d 460, 468 (Del. 1996) (dismissing claims on ground that directors' decision to approve a stock repurchase was protected by the business judgment rule). The burden is on the plaintiff to plead facts rebutting this presumption. *See Aronson*, 473 A.2d at 812. Here, as discussed in the Former Directors' Opening Brief, the Amended Complaint, *as alleged*, does not establish that a majority of the

14

Countrywide board acted disloyally (*i.e.*, by having a material self-interest in the Repurchase) or failed to act independently or in good faith when it approved the Repurchase. (Op. Br. at 19-23). Therefore, the Amended Complaint must be dismissed.

Plaintiffs' challenge to the Repurchase appears to be premised entirely on the conclusory allegation that a majority of the directors was somehow "interested" when they approved the Repurchase. (Opp. Br. at 1, stating that this action "alleges one cause of action, for breach of the duty of loyalty"). As discussed in Part II, *supra*, it is unclear what the basis for this allegation is because Plaintiffs have effectively abandoned the claim that Defendants acted disloyally by engaging in insider trading in an attempt to evade *Guttman*. (Opp. Br. at 3; *see also* Opp. Br. at 15 "this is not a case alleging that the defendants traded on inside information"). The problem with Plaintiffs' newly adopted characterization of their action is that the insider trading allegations are intricately tied to Plaintiffs' overall duty of loyalty claim, and without them, Plaintiffs' duty of loyalty claim fails and the case should be dismissed.

Either way, Plaintiffs have put forth no authority that supports any conceivable theory of liability under Delaware law. All of the cases cited in Plaintiffs' Opposition Brief are inapposite, and do not even involve a company purchasing its stock from the market. For example, Plaintiffs' reliance on *In re Primedia* is displaced. 910 A.2d 248 (Del. Ch. 2006). *Primedia* dealt with a controlling stockholder exerting its influence and dominion over the corporation's board of directors to cause the corporation to call its preferred stock at its full redemption price years before the corporation was contractually obligated to redeem the stock. *Id.* at 256. To the contrary, this action has nothing to do with the fiduciary duty owed by a controlling stockholder and the forced redemption of its preferred stock. Moreover, Plaintiffs improperly rely on *O'Neill v. Maytag*, 339 F.2d 764 (2d Cir. 1964). In that case, the plaintiffs

15

alleged that the defendants entered into a stock exchange at an allegedly unfair ratio to purchase a more favorable control position for themselves. *Id.* at 767. The Court affirmed the dismissal of the action without leave to amend on the grounds that the complaint failed to state a cause of action under federal law and that there was no subject matter jurisdiction over the state fiduciary claim. *Id.* Similarly, Plaintiffs' reliance on *Norte & Co. v. Huffines* is misplaced because, among other reasons, the case involved an allegedly grossly unfair self-dealing stock exchange where the Court applied Ohio law. 304 F. Supp. 1096, 1111 (S.D.N.Y. 1968).

   Finally, the other cases that the Plaintiffs rely on – *In re Walt Disney Co. Derivative Litigation* and *Stone v. Ritter* – involve the court affirming the dismissal of breach of fiduciary duty claims against directors. *See, e.g., In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27 (Del. 2006) (holding that the board's approval of an executive compensation package was protected by the business judgment rule); *Stone v. Ritter*, 911 A.2d 362 (Del. 2006) (holding that there was no basis for an oversight claim seeking to hold the directors personally liable for misconduct by company employees). Accordingly, Plaintiffs' claims should be dismissed under Delaware law.[8]

---

[8] Moreover, to the extent that Plaintiffs contend that they are asserting a claim for waste, such claim fails under Delaware law. Directors are liable for waste under Delaware law only in the "rare, 'unconscionable case where [they] irrationally squander or give away corporate assets.'" *In re Walt Disney Co. Derivative Litig.*, 906 A.2d at 74 (citation omitted). Here, Plaintiffs have not met their burden of pleading particularized facts demonstrating that "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration" for the Repurchase. *Id.*; *see also Leung v. Schuler*, C.A. No. 17089, 2000 Del. Ch. LEXIS 134, at \*11 (Del. Ch. Sept. 29, 2000), *aff'd,* 783 A.2d 124 (Del. 2001) (dismissing waste claims and observing that the "Delaware law standard for pleading waste is stringent"); *In re 3COM Corp. S'holders Litig.*, C.A. No. 16721, 1999 Del. Ch. LEXIS 215 (Del. Ch. Oct. 25, 1999) (dismissing waste claims and explaining waste standard as "[t]he company would literally have to get nothing whatsoever for what it gave"); *see also, e.g., Continuing Creditors' Comm. of Star Telecommc'ns. Inc.*, 385 F. Supp. 2d at
                     *(cont'd)*

Additionally, Plaintiffs do not sufficiently allege facts that establish that the defendant directors breached *any* fiduciary duties when approving the Repurchase. Indeed, Plaintiffs' own allegations demonstrate that a majority of Countrywide's directors did not even sell shares during the time period that the challenged repurchases purportedly occurred. (Pls. Ex. 7). Moreover, Plaintiffs concede that they have not alleged that Brown sold any Countrywide stock. (Opp. Br. at 7 stating that "[t]he Complaint is silent as to sales by . . . Brown"). In fact, the only argument that Plaintiffs could come up with against Brown was that she has "not denied that [she] or [her] family members made sales." *Id.* Plaintiffs know full well that they have the burden to allege facts that support a cause of action, and it is certainly not Brown's obligation to deny facts that were not even asserted in the Amended Complaint. *See Twombly*, 127 S. Ct. at 1965 (holding that it is a plaintiff's obligation to provide the grounds of his entitlement to relief in order to survive a motion to dismiss).[9]

Furthermore, Plaintiffs have alleged no specific facts whatsoever that suggest any link between Dougherty's stock sales and the Countrywide board's decision to approve the Repurchase. In fact, the only allegation asserted against Dougherty is that he sold some of his Countrywide stock over *a more than six-month period* beginning at November 29, 2006 (Am. Compl. ¶ 31) – *twenty days after the Repurchase.* Such allegation standing alone does not state a breach of the duty of loyalty under Delaware law. *See Beam ex rel. Martha Stewart Living*

———————————————

*(cont'd from previous page)*

465 (dismissing corporate waste claim as conclusory and insufficient to overcome the protections of the business judgment rule).

[9] This argument evidences that Plaintiffs are scrambling to concoct any explanation to justify having Brown as a Defendant, and makes one wonder what their good faith basis is for keeping Brown in this case.

*Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 974-75 (Del. Ch. 2003) (holding that "[i]n the absence of allegations based on well-pled facts that call into question the propriety of [directors'] sales at the time they made them, it is impossible to infer that they acted in bad faith in selling their shares or placed themselves in a position inimical to their duties to [the Company]"), *aff'd*, 845 A.2d 1040 (Del. 2004); *Guttman*, 823 A.2d at 504 (dismissing similar claims and holding that cursory allegations of director stock sales "do not come close" to meeting plaintiff's burden of showing that the directors faced a substantial threat of liability for insider trading-based fiduciary duty violations).

Alternatively, any claims against Dougherty should be dismissed because Plaintiffs concede in their Opposition Brief that they are not contending that Dougherty sold any of his Countrywide stock "on the basis of material, inside, adverse information." (Opp. Br. at 3; *see also* Opp. Br. at 15, stating that "this is not a case alleging that [Dougherty] traded on inside information"). Further, Plaintiffs do not dispute that all of Dougherty's sales were properly made pursuant to a pre-arranged trading plan permitted under Section 10b5-1(c) of the Exchange Act. *Id. See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1116 (N.D. Cal. 2003) (dismissing insider trading claims against defendants who sold stock pursuant to 10b5-1(c) trading plans); *Fishbaum v. Liz Claiborne, Inc.*, No. 98-9396, 1999 U.S. App. LEXIS 18155 (2d Cir. July 27, 1999) (accord) *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d at 604 (accord). Therefore, Plaintiffs' claims against Dougherty should be dismissed.

For all of these reasons, Plaintiffs failed to sufficiently plead facts demonstrating that a majority of the directors, including the Former Directors, acted disloyally or breached any of their fiduciary duties by approving the Repurchase. Accordingly, Plaintiffs' claims must be dismissed as to the Former Directors in their entirety.

**B.    Plaintiffs' Claims Are Barred Under Countrywide's Certificate Of Incorporation.**

Moreover, as explained in the Former Directors' Opening Brief, at most, Plaintiffs' claims are premised on unsupported accusations of duty of care violations. (Op. Br. at 23-24). And in light of Plaintiffs' concession that the Countrywide board was well-informed, it appears that any claim for the breach of the duty of care has been abandoned. In any event, Countrywide's certificate of incorporation expressly prohibits Plaintiffs from seeking monetary damages for such claims. *Id.* Accordingly, the claims asserted against the Former Directors may also be dismissed on this basis.[10]

**III.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THAT THEY HAVE STANDING TO BRING THIS ACTION.**

As the Former Directors explained in their Opening Brief (Op. Br. at 9-10), Plaintiffs' boilerplate allegation in paragraph 5 of the Amended Complaint that they were Countrywide stockholders "at the time of the wrongs alleged herein" is insufficient to demonstrate that they have standing to bring this suit. Fed. R. Civ. P. 23.1; *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1202 (N.D. Cal. 2007).

Moreover, the fact that Plaintiffs had to submit a declaration from Blumberg with their Opposition Brief is in itself an implicit admission that their pleading was inadequate. Critically, Plaintiffs' reliance on a declaration from Blumberg does not cure their deficient

---

[10]    Plaintiffs seem to have abandoned their request for an equitable accounting against the Former Directors. Their Opposition Brief focuses solely on monetary damages and is entirely silent as to any request for an equitable accounting. (Opp. Br. at 18-19). Moreover, the fact that Plaintiffs are calculating their alleged monetary recovery *before* they have established that they have any claims to bring on behalf of Countrywide is entirely premature and inappropriate.

pleading as to IBEW. Notably absent from Blumberg's declaration, or Plaintiffs' Opposition Brief, for that matter, is any mention as to whether IBEW was a Countrywide stockholder for the *more than one-year period* in which the challenged transactions purportedly occurred. *See, e.g., Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) (dismissing claims because plaintiff did not have standing to challenge earlier wrongs that pre-dated his stock ownership). Accordingly, the Amended Complaint should be dismissed because Plaintiffs have failed to properly allege or demonstrate that they have standing to bring this derivative action on behalf of Countrywide.[11]

## CONCLUSION

For the foregoing reasons, and the reasons expressed in their Opening Brief, the Former Directors respectfully request that all claims against them be dismissed.

> /s/ Edward P. Welch
> Edward P. Welch (I.D. No. 671)
> Edward B. Micheletti (I.D. No. 3794)
> Rachel J. Barnett (I.D. No. 4876)
> SKADDEN, ARPS, SLATE,
>   MEAGHER & FLOM LLP
> One Rodney Square
> Wilmington, Delaware 19899-0636
> (302) 651-3000
> ewelch@skadden.com
> *Attorneys for Defendants*
> *Michael E. Dougherty and Kathleen Brown*

DATED: May 12, 2008

---

[11] In addition, on January 11, 2008, Countrywide announced that it had entered into a merger agreement with Bank of America. (Am. Compl. ¶ 28). Once the merger is consummated, Plaintiffs' rights (if they even have any rights to begin with) to maintain a derivative lawsuit on behalf of Countrywide will be extinguished. *See Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984) (holding that, once a derivative plaintiff ceases to be a stockholder by reason of a merger, the plaintiff loses standing to continue a derivative suit). Plaintiffs acknowledge as such in their Opposition Brief. (Opp. Br. at 9, stating that "*Lewis* stands for the position that 'a plaintiff who ceases to be a shareholder. . . loses standing to continue a derivative suit'").