IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION DERIVATIVE LITIGATION | C.A. No. 1:07-372 SLR (MPT) |
| ———————————————— | (Consolidated Action) |
| THIS RELATES TO ALL ACTIONS | |

**OPENING BRIEF IN SUPPORT OF POST-MERGER MOTION TO DISMISS
OF DEFENDANTS CISNEROS, CUNNINGHAM, DONATO, MELONE, MOZILO,
PARRY, ROBERTSON, RUSSELL, AND SNYDER AND NOMINAL DEFENDANT
<u>COUNTRYWIDE FINANCIAL CORPORATION</u>**

OF COUNSEL:

Brian E. Pastuszenski
Stuart M. Glass
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

Thomas A. Beck (#2086)
beck@rlf.com
Steven Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants Henry G. Cisneros,
Jeffrey M. Cunningham, Robert L. Donato,
Martin R. Melone, Angelo R. Mozilo, Robert T.
Parry, Oscar P. Robertson, Keith P. Russell,
and Harley W. Snyder, and Nominal Defendant
Countrywide Financial Corporation*

Dated: July 10, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

NATURE AND STAGE OF THE PROCEEDING....................................................2

SUMMARY OF ARGUMENT ....................................................................................3

STATEMENT OF FACTS ............................................................................................4

ARGUMENT....................................................................................................................4

I.    DELAWARE LAW GOVERNS POST-MERGER DERIVATIVE STANDING..............4

II.   PLAINTIFFS NO LONGER HAVE STANDING BECAUSE THEY ARE NO
      LONGER CFC SHAREHOLDERS.................................................................................5

III.  THE *BLASBAND* DECISION DOES NOT AFFORD STANDING...................................6

CONCLUSION..................................................................................................................9

i

## TABLE OF AUTHORITIES

CASES

*Alabama By-Products Corp. v. Cede & Co.*,
  657 A.2d 254 (Del. 1995) .................................................................................4, 5

*Blasband v. Rales*,
  971 F.2d 1034 (3d Cir. 1992)...........................................................................3, 5, 7

*Edwards v. Hovensa, LLC*,
  497 F. 3d 355 (3d Cir. 2007).................................................................................8

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938)................................................................................................8

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  652 F.2d 278 (2d Cir. 1981).................................................................................8, 9

*Feldman v. Cutaia*,
  Case No. 466, 2007, 2008 WL 2223084 (Del. May 30, 2008) ...........................8

*Heit v. Tenneco*,
  319 F. Supp. 884 (D. Del. 1970) ..........................................................................5

*In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851 (Del. Ch. 1998),
  *aff'd*, 748 A.2d 913 (Table), 2000 WL 383788 (Del. 2000).................................8

*Lewis v. Anderson*,
  477 A.2d 1040 (Del. 1984) ..........................................................................*passim*

*Lewis v. Ward*,
  852 A.2d 896 (Del. 2004) .............................................................................*passim*

*McKenna v. Pacific Rail Serv.*,
  32 F.3d 820 (3d Cir. 1994)..................................................................................8-9

*Reiser v. Residential Funding Corp.*,
  380 F.3d 1027 (7th Cir. 2004) ...............................................................................9

STATUTES

8 Del. C. § 259 .........................................................................................................5

Individual defendants Henry G. Cisneros, Jeffrey M. Cunningham, Robert L. Donato, Martin R. Melone, Angelo R. Mozilo, Robert T. Parry, Oscar P. Robertson, Keith P. Russell, and Harley W. Snyder and nominal defendant Countrywide Financial Corporation ("CFC" or the "Company") (collectively, "Defendants") respectfully submit this opening brief in support of their Post-Merger Motion to Dismiss the Consolidated, Amended and Supplemental Verified Complaint ("Complaint" or "Compl."). On July 1, 2008, CFC merged with Bank of America Corporation ("BAC"). As a result of this merger, Plaintiffs ceased being shareholders of CFC and no longer have standing to pursue this shareholder derivative action.

## PRELIMINARY STATEMENT

Plaintiffs bring this shareholder derivative action ostensibly on behalf of and for the benefit of CFC, a Delaware corporation. In other words, Plaintiffs are not suing to recover for harms allegedly caused directly to them, but rather for harms they contend were caused to CFC as result of Defendants' alleged breach of fiduciary duty owed to CFC. In essence, Plaintiffs seek to stand in CFC's shoes and prosecute a fiduciary duty claim that prior to CFC's merger into BAC (the "Merger") belonged to CFC. Under Delaware law, a shareholder has no standing to sue derivatively on behalf of a corporation unless the plaintiff continuously owns shares in that corporation from the moment of the alleged wrongdoing through the completion of the litigation. Upon the consummation of the Merger, however, Plaintiffs ceased to be CFC shareholders. At that time, CFC merged into a wholly-owned BAC subsidiary, CFC shareholders received BAC shares in exchange for their CFC shares, and all of CFC's assets -- including the derivative claim that Plaintiffs seek to assert in this case ostensibly on CFC's behalf -- passed to BAC. No longer CFC shareholders, Plaintiffs now lack standing to maintain this derivative suit on CFC's behalf, and this suit should be dismissed accordingly.

1

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff IBEW filed the initial complaint in this action on June 12, 2007. *IBEW v.*
*Mozilo, et al.*, C.A. No. 07-372, D.I. 1. Plaintiff filed an amended complaint on September 14,
2007. *See* D.I. 8. On November 6, 2007, Plaintiff's counsel filed a copycat action in this Court
on behalf of plaintiff Blumberg. *Blumberg v. Mozilo, et al.*, C.A. No. 07-717, D.I. 1.

On January 15, 2008, after learning that BAC had just a few days before announced a
proposed acquisition of CFC, Plaintiffs filed a motion for partial summary judgment, before the
*IBEW* and *Blumberg* cases had even been consolidated, before the Court had addressed the
threshold question of whether Plaintiffs should have made demand on the Countrywide Board of
Directors before filing their complaints, and before any discovery had occurred in either case.
D.I. 18-20. The Court denied Plaintiffs' motion as premature, noting that "it has not yet
determined if subject matter jurisdiction exists over the claims at issue, mindful of Defendants'
stated intention to move to dismiss … on the grounds that plaintiffs did not make demand on the
Countrywide Board of Directors prior to filing these cases." *See* D.I. 35. It was not a
coincidence that Plaintiffs rushed to file that motion upon learning of the proposed merger. As
Defendants noted in opposing Plaintiffs' efforts to have the Court entertain their premature
motion, Plaintiffs knew that "[u]nder controlling precedent from the Delaware Supreme Court,
upon the consummation of the transaction plaintiffs will lose any right to sue derivatively for
relief on behalf of Countrywide because any such claims will pass to Bank of America." D.I. 22
at 3.

Plaintiffs filed their Consolidated, Amended, and Supplemental Verified Complaint on
February 13, 2008. *See* D.I. 37. It asserts a single state law claim for breach of fiduciary duty
arising out of the CFC Board of Director's decision to repurchase CFC stock in November 2006
and May 2007. On February 27, 2008, Defendants filed motions to dismiss the Complaint in its

2

entirety for failure to make demand on the Board before filing suit, among other grounds. *See* D.I. 39, 42, 45-48. Defendants also filed a motion to transfer venue to the U.S. District Court for the Central District of California or, alternatively, to stay. *See* D.I. 40-41, 43-44. Oral argument on those motions is scheduled for July 17, 2008, but the parties have asked the Court to take them off calendar and reschedule hearing on them and on the present motion for the same day. Defendants submit that the present motion to dismiss for lack of standing should be resolved first because dismissal for lack of standing will render decision on the demand motion unnecessary.

## SUMMARY OF ARGUMENT

Plaintiffs no longer have standing to pursue this derivative action on behalf of CFC because they are no longer CFC shareholders.

1.      Delaware substantive law governs the standing of a shareholder to pursue breach of fiduciary duty claims derivatively on behalf of a Delaware corporation. *See Blasband v. Rales*, 971 F.2d 1034, 1041 n.7 (3d Cir. 1992) (court "bound by Delaware and not federal law").[1]

2.      Under Delaware law, in order to have standing a plaintiff must continuously be a shareholder of his corporation from the time of the alleged wrongdoing through the conclusion of the litigation. *Lewis v. Ward*, 852 A.2d 896, 901 (Del. 2004); *Lewis v. Anderson*, 477 A.2d 1040, 1046, 1049 (Del. 1984). Where, as here, however, "a merger eliminates a plaintiff's shareholder status in a company, it also eliminates her standing to pursue derivative claims on behalf of that company. Those derivative claims pass by operation of law to the surviving corporation, which then has the sole right and standing to prosecute the action." *Ward*, 852 A.2d at 901.

---

[1] The Delaware Supreme Court has since rejected the Third Circuit's interpretation of Delaware law in *Blasband* as incorrect and "inconsistent" with Delaware Supreme Court precedent. *See* pp. 6-9 infra.

**STATEMENT OF FACTS**

On January 11, 2008, CFC announced that BAC had agreed to acquire CFC in a stock-for-stock transaction valued at approximately $4 billion, or $6.67 per CFC share. Compl. ¶ 28. This merger consideration per share represented a 37.9% premium to CFC's $5.12 stock price on January 9, 2008, the day before the market learned about the potential acquisition. CFC Definitive Proxy Statement dated May 28, 2008 ("Proxy Statement") (Ex. 1) at 37.[2]

On June 25, 2008, at a special meeting called to consider the proposed merger, CFC's shareholders approved the Merger. In fact, *more than 97 percent of the shares voted* (representing nearly 70% of all outstanding shares) were voted to approve the acquisition. Fineman Decl. Exs. 2 (CNBC Article) and 3 (CFC SEC Form 8-K filing). On July 1, 2008, the transaction closed, and all outstanding CFC shares were exchanged for BAC shares at the Merger Agreement's specified exchange ratio. At that time, CFC became a wholly-owned subsidiary of BAC. Fineman Decl. Ex. 4 (Certificate of Merger). Likewise, all of CFC's assets -- including the derivative claim that Plaintiffs assert in this case ostensibly on CFC's behalf -- passed to BAC by operation of law.

**ARGUMENT**

**I.    DELAWARE LAW GOVERNS POST-MERGER DERIVATIVE STANDING.**

A derivative claim is brought on behalf of and for the benefit of a corporation to recover damages for alleged harm to the corporation. *Alabama By-Products Corp v Cede & Co*, 657 A.2d 254, 264-65 (Del. 1995). Where, as here, a shareholder sues derivatively on behalf of a Delaware corporation for breach of fiduciary duty owed by the corporation's directors and officers under state law, Delaware substantive law governs whether the shareholder has legal

---

[2]  All exhibits ("Ex.") cited in this brief are appended to the Declaration of Steven J. Fineman ("Fineman Decl.") filed together with this motion.

standing to pursue those derivative claims. In *Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992), a case involving a shareholder derivative suit brought for violation of Delaware fiduciary duty, the Third Circuit held that a federal court is "bound by Delaware and not federal law" in regard to the standing issue. *Id.* at 1041 n.7. *Accord Heit v. Tenneco*, 319 F. Supp. 884, 886 (D. Del. 1970) (Delaware law governs post-merger standing).

## II.  PLAINTIFFS NO LONGER HAVE STANDING BECAUSE THEY ARE NO LONGER CFC SHAREHOLDERS.

Under Delaware law, a derivative plaintiff must continuously own shares in the corporation on whose behalf the suit is brought from the time of the alleged wrongdoing through the conclusion of the litigation. *Ward*, 852 A.2d at 901; *Anderson*, 477 A.2d at 1049.[3] Because of this continuity of ownership requirement, "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit." *Anderson*, 477 A.2d at 1049. This is because a derivative suit "is regarded as a property right belonging to the corporation instead of the shareholder." *Alabama By-Products Corp.*, 657 A.2d at 265. Upon consummation of the Merger, Plaintiffs ceased being CFC shareholders and CFC became a wholly-owned subsidiary of BAC. At that time, the right to maintain derivative claims on behalf of CFC passed "by operation of law to the surviving corporation," here, BAC, which now has "the sole right and standing to prosecute the action." *Ward*, 852 A.2d at 901; *Anderson*, 477 A.2d at 1044, 1049-50. *See also* 8 Del. C. § 259(a) (providing that all rights, privileges and powers, which would include derivative claims of the merged corporation, pass to the surviving corporation upon the merger).

---

[3]  Plaintiff IBEW also has not shown it had standing even prior to the Merger, as Defendants noted in their motion to dismiss for failure to make demand on the CFC Board of Directors. *See* D.I. 47 at 31-32 (opening brief) and D.I. 57 at 19-20 (reply brief). The Court no longer need resolve this pre-suit standing issue due to the loss of standing in any event post-merger.

As a result, Plaintiffs now lack standing to pursue this derivative action on behalf of

CFC.[4]

### III.    THE *BLASBAND* DECISION DOES NOT AFFORD STANDING.

Plaintiffs have argued that the Third Circuit's decision in *Blasband* somehow would

afford them standing to pursue their derivative claim after they ceased to be CFC shareholders

upon consummation of the Merger. *See* D.I. 52 at 22-23 (opposition to Defendants' motions to

dismiss and to transfer or in the alternative stay). This argument, however, is utterly meritless

because *Blasband* was an attempt by the Third Circuit to interpret Delaware law, and the

Delaware Supreme Court has since said that *Blasband* was dead wrong.

In *Blasband*, a Delaware corporation was merged into another company in a stock-for-

stock deal, and the shareholders of the merged entity became shareholders in the surviving entity.

After the merger, one of those shareholders filed a shareholder derivative suit for harm allegedly

caused to the merged entity prior to the merger by two of its former directors, suing ostensibly on

behalf of the surviving entity. The Third Circuit attempted to discern whether Delaware law

would afford standing in such a situation even though the plaintiff was no longer a shareholder of

---

[4] Delaware law recognizes only two limited exceptions to the loss of derivative standing after a merger -- where "the merger is in reality a reorganization" of the same company or the merger was "fraudulent and done *merely* to eliminate derivative claims." *Ward*, 852 A.2d at 904-05 (emphasis added). *Accord Anderson*, 477 A.2d at 1046 n.10. Neither exception applies here. Plaintiffs do not allege, nor could they, that the merger with BAC was a mere reorganization. Plaintiffs likewise do not allege -- nor could they -- that the Merger was effected merely to eliminate derivative claims. *Id.* Indeed, the Complaint barely mentions the proposed merger at all. *See* Compl. ¶ 28. Moreover, Plaintiffs acknowledge that the dramatic decline in real estate prices, and the shutting of the credit and capital markets and the collapse of the entire mortgage industry in late 2007, provided CFC with compelling reasons to merge with a much larger, better capitalized institution. *See, e.g.*, Compl. ¶ 22 ("these conditions had put pressure, in the form of rising delinquencies in mortgage payments, on the value of Countrywide's assets and business"); *id.* ¶ 23 (CFC's "assets and business had suffered material declines in value" due to "dire" housing market). There thus could be no reasonable allegation that the Merger was done "simply to avoid defending the derivative suit rather than for other valid business reasons." *Ward*, 852 A.2d at 906.

the merged entity. *Blasband*, 971 F.2d at 1038-39, 1046. Analogizing the shareholder's suit to a "double derivative" action brought by a shareholder of a parent corporation on behalf of a wholly-owned subsidiary, the Third Circuit interpreted Delaware law to permit standing despite the merger. The Third Circuit, however, recognized that its interpretation of Delaware law was seemingly at odds with Delaware's continuity of ownership requirement as well as the holding of the Delaware Supreme Court -- on identical facts -- in *Anderson,* 477 A.2d 1040 (Del. 1984). *Blasband,* 971 F.2d at 1043. In *Anderson*, the Delaware Supreme Court had held that a shareholder of a merged corporation who became a shareholder of the surviving entity did not have standing to maintain a derivative suit post-merger for wrongs done to the merged corporation prior to the merger. The Supreme Court explained that a derivative plaintiff must continuously own shares in the corporation on whose behalf the derivative suit is brought and that, after ceasing to own shares in the merged corporation upon consummation of the merger, the shareholder no longer satisfied Delaware's continuity of ownership requirement. *Anderson,* 477 A.2d at 1046, 1049.

As Plaintiffs know, the Delaware Supreme Court has since held that the Third Circuit plainly misinterpreted Delaware law in *Blasband*. In fact, in *Ward*, decided 12 years after *Blasband*, the Delaware Supreme Court explicitly rejected the Third Circuit's interpretation as "inconsistent with the clear holding of *Lewis v. Anderson*" and with Delaware's continuity of ownership requirement. *See Ward*, 852 A.2d at 903. In *Ward*, the Delaware Supreme Court thus made clear, once and for all, that the Third Circuit's interpretation of Delaware law in *Blasband* was erroneous. To the contrary, the Delaware Supreme Court unequivocally held in *Ward* that Delaware law provides that:

> [w]hen a merger eliminates a plaintiff's shareholder status in a corporation, it also generally eliminates her standing to pursue

7

> derivative claims on behalf of that corporation. Those derivative
> claims pass by operation of law to the surviving corporation,
> whose board of directors then has the sole right and standing to
> prosecute the action. Accordingly, in this case, we ratify and
> reaffirm the general rule and two exceptions of *Lewis v. Anderson*.

*Ward*, 852 A.2d at 903-04. *Accord In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 868 n.18 (Del. Ch. 1998) (declining to follow *Blasband* because "[t]he Third Circuit's decision in *Blasband* is both inconsistent with the clear holding of *Lewis v. Anderson* and immaterial to the decision in this case"), *aff'd*, 748 A.2d 913 (Table), 2000 WL 383788 (Del. 2000).[5]

Because the standing issue is governed by Delaware law, and because the Delaware Supreme Court in *Ward* rejected *Blasband* as inconsistent with Delaware law, this district court is bound to follow *Ward*, and not the Third Circuit's earlier, erroneous interpretation of Delaware law. As the U.S. Supreme Court said in *Erie R.R. Co. v. Tompkins*, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state ... whether the law of the state shall be declared by its Legislature in a statute *or by its highest court*." 304 U.S. 64, 78 (1938) (emphasis added). *Accord Edwards v. Hovensa, LLC*, 497 F.3d 355, 361 (3d Cir. 2007) ("[a] federal court under *Erie* is bound to follow state law as announced by the highest state court"). The Third Circuit itself said in *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994), that federal courts "are not free to impose [their] own view of what state law should be; [they] are to apply state law as interpreted by the state's highest court."

Where, as here, a federal court's interpretation of controlling state law is later rejected by the state's highest court, the state supreme court's interpretation governs. *Factors Etc., Inc. v.*

---

[5] *See Feldman v. Cutaia*, -- A.2d --, Case No. 466, 2007, 2008 WL 2223084, at *3 (Del. May 30, 2008) (reaffirming *Lewis v. Anderson* as a "seminal case").

8

*Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981) (federal courts are "obliged to disregard a state law holding by the pertinent court of appeals if persuaded that the holding had been superseded by a later pronouncement from state legislative or judicial sources"). As the Seventh Circuit correctly explained in *Reiser v. Residential Funding Corp.*, 380 F.3d 1027 (7th Cir. 2004):

> A decision by a state's supreme court *terminates* the authoritative force of our decisions interpreting state law, for under *Erie* our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past.

*Id* at 1029 (emphasis added). Here, because the Delaware Supreme Court has acted and has explicitly rejected *Blasband* as "inconsistent" with Delaware law, the Delaware Supreme Court's definitive interpretation of Delaware law is controlling and requires dismissal.

## CONCLUSION

Plaintiffs lost standing to pursue this derivative litigation on behalf of CFC when they ceased being CFC shareholders upon consummation of the Merger. This lawsuit accordingly must be dismissed.

OF COUNSEL:

Brian E. Pastuszenski
Stuart M. Glass
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

Dated: July 10, 2008

Thomas A. Beck (#2086)
beck@rlf.com
Steven Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants Cisneros, Cunningham, Donato, Melone, Mozilo, Parry, Robertson, Russell, and Snyder and Nominal Defendant Countrywide Financial Corporation*

9

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Robert D. Goldberg, Esquire
Biggs & Battaglia
921 North Orange Street
P.O. Box 1489
Wilmington, DE 19899

Edward P. Welch, Esquire
Edward B. Micheletti, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square, P.O. Box 636
Wilmington, DE 19899-0636

Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger
One Rodney Square
PO Box 551
Wilmington, DE 19899