UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE COUNTRYWIDE FINANCIAL          )
CORPORATION DERIVATIVE               )        C.A. No. 07-372-SLR(MPT)
LITIGATION                           )
                                     )        (Consolidated Action)
_____    )
                                     )
THIS RELATES TO ALL ACTIONS          )
                                     )
_____    )

## ANSWERING BRIEF OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' POST-MERGER MOTION TO DISMISS

Robert D. Goldberg (#631)
BIGGS and BATTAGLIA
921 North Orange Street
P.O. Box 1489
Wilmington, DE 19899
Telephone: 302.655.9677
goldberg@batlaw.com

*Of Counsel*:
Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
Two Commerce Square
2001 Market Street B Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600

Dated: August 1, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF THE PROCEEDING ................................................. 1

SUMMARY OF ARGUMENT ............................................................................. 2

STATEMENT OF FACTS .................................................................................. 2

ARGUMENT ..................................................................................................... 3

   I.   A STOCK-FOR-STOCK MERGER DOES NOT ELIMINATE STANDING ................ 3

   II.  UNDER FEDERAL PROCEDURE, THIS ACTION IS NOT ABATED BY THE MERGER .......... 8

   III. ALTHOUGH A MERGER IMPLICATES ISSUES OF DEMAND, THERE IS NO REQUIREMENT OF ANOTHER DEMAND, NOR SHOULD THIS ACTION BE DISMISSED ...................... 10

CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Ash v. McCall*, 2000 WL 1370341 (Del. Ch. Sep. 15, 2000) ........................................................ 6

*Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992) ................................................................. passim

*Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006) ............................................................ 11, 12

*Elca Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186 (8th Cir. 1995) ....... 9

*Feldman v. Cutaia*, ___ A.2d___, 2008 WL 2223084 (Del. May 30, 2008) ................................ 4

*Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990) .................................................................. 11, 12

*Helfand v. Gambee*, 136 A.2d 558 (Del. Ch. 1957) .................................................................. 4, 5

*Hillbrands v. Far East Trading Co., Inc.*, 509 F.2d 1321 (9th Cir. 1975) ....................................... 9

*In re Caremark International, Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ........................... 6

*In re Countrywide Financial Corp. Derivative Litig.*, 542 F. Supp. 2d 1160 (C.D. Cal. 2008) ..... 1

*In re Countrywide Financial Corp. Derivative Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008) ... 13

*Kraebel v. New York City Dept. of H.P. & D.*, 2002 WL 14364 (S.D.N.Y. Jan. 3, 2002) ............. 9

*LeBoyer v. Greenspan*, 2007 WL 4287646 (C.D. Cal. Jun. 12, 2007) ........................................ 13

*Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984) .............................................................. 4, 5, 8, 10

*Lewis v. Ward*, 852 A.2d 896 (Del. 2004) ........................................................................ 7, 8, 10

*Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69 (3d Cir. 1993) .................................... 8

*Mason v. American Emery Wheel Works*, 241 F.2d 906 (1st Cir. 1957) ....................................... 7

*Rosenthal v. Burry Biscuit Corp.*, 60 A.2d 106 (Del. Ch. 1948) ............................................... 4, 5

*Shaev v. Wyly*, 1998 WL 118200 (Del. Ch. Mar. 6, 1998) ....................................................... 5, 6

*Shaev v. Wyly*, 1998 WL 13858 (Del. Ch. Jan. 6, 1998) .......................................................... 5, 6

*Sternberg v. O'Neil*, 550 A.2d 1105 (Del. 1988) ........................................................... 4, 5, 6, 10

*Wyly v. Shaev*, 719 A.2d 490, 1998 WL 764168 (Del. 1998)............................................................. 5

*Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981) ............................................................ 11

**Statutes**

8 Del. C. §259 ............................................................................................................................. 4, 10

8 Del. C. §327 .......................................................................................................................... 3, 4, 5

**Rules**

Fed. R. Civ. P. 17 ............................................................................................................................ 9

Fed. R. Civ. P. 25 ................................................................................................................... 8, 9, 10

## NATURE AND STAGE OF THE PROCEEDING

This is a consolidated stockholders' derivative action on behalf of Countrywide Financial Corporation, a Delaware corporation ("Countrywide" or the "Company"), against its directors. It alleges one cause of action, for breach of the duty of loyalty. Specifically, the board of directors caused Countrywide to repurchase more than 60 million shares of its own stock, or 9.75% of the total outstanding, costing Countrywide $2.37 billion, while at the same time a majority of the board sold $373 million of their own shares of Countrywide stock. At the time of these sales, the board of directors was in possession of facts concerning material adverse changes in Country-wide's business and assets that, when revealed, resulted in a substantial drop in the price of the stock. Plaintiffs claim, on behalf of Countrywide, rescissory damages of $2 billion on the repurchase of this stock.

Pending are defendants' motions to dismiss for failure to make demand and to state a claim for relief and defendants' motions to transfer the action to the Central District of California or to stay. Those motions are fully briefed.

The defendants have now made a motion to dismiss on the grounds that the merger of Countrywide with and into a wholly owned subsidiary of Bank of America Corporation, a Delaware corporation (the "BofA"), has deprived the plaintiffs of standing.[1]

Also, after briefing was completed on the other motions pending at bar, the Central District of California denied motions to dismiss based on demand futility and failure to state a claim (as to all but two defendants). As we submit, *infra*, that case is *res judicata* on the previous motions to dismiss at bar.

---

[1] The defendants have made a substantially identical motion in the Central District of California. *See* Declaration of Alexander Arnold Gershon, dated August 1, 2008 ("Gershon Decl."), Exh. 1. The California plaintiffs have apparently conceded that the merger would eliminate their standing, and the court has apparently agreed. (Gershon Decl. Ex. 1 at 5-6.) *In re Countrywide Financial Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1176-77 (C.D. Cal. 2008) ("Plaintiffs' primary argument ...is that consummation of the merger will extinguish their derivative standing by operation of law."). If the Central District Court dismisses the case, the major premise for transfer or a stay will be lost.

## SUMMARY OF ARGUMENT

1.      The Delaware cases are in accord with Third Circuit authority that a stock-for-stock merger does not eliminate the standing of a stockholder to litigate a derivative action. There is a distinction between a stock-for-stock merger and a cash-out merger because in the former a stockholder retains a financial interest in the cause of action, but a cash-out merger eliminates that financial interest.

2.      Where a stock-for-stock merger occurs after commencement of a stockholder's derivative action, federal procedures provide that the case continues unabated, with or without the substitution or joinder of other parties.

3.      A stock-for-stock merger after commencement of a stockholder's derivative action is the equivalent of a change in board membership. Delaware law requires neither a new demand nor dismissal of the action.

## STATEMENT OF FACTS

The first of these actions was commenced on June 12, 2007. The second was commenced on November 6, 2007.

On July 1, 2008, Countrywide merged with and into a wholly owned subsidiary of the BofA. The subsidiary is the survivor of the merger. As a result of the merger each share of Countrywide stock was converted into 0.1822 of a share of BofA stock.

2

## ARGUMENT

### I.    A STOCK-FOR-STOCK MERGER DOES NOT ELIMINATE STANDING

A stockholder of a Delaware corporation who brings a derivative suit to redress the misconduct of a torpid or unfaithful management must be a stockholder at the time of the misconduct. 8 Del. C. § 327. In *Blasband v. Rales*, 971 F.2d 1034, 1047 n.14 (3d Cir. 1992), the Third Circuit addressed the effect of a merger on the standing of a stockholder-plaintiff to litigate a derivative action. The Third Circuit held:

> Where the corporation merges and the plaintiff receives shares of the successor corporation, section 327 poses no obstacle to a derivative suit on behalf of the successor corporation for pre-merger acts, because the successor corporation succeeds to the cause of action under section 259, as explained in *Lewis v. Anderson* [, 477 A.2d 1040 (Del. 1984)].

In that footnote 14 the Third Circuit further held that where the plaintiff receives shares in the parent of the successor corporation the plaintiff can pursue a double derivative action on the successor's behalf, "since the Delaware courts have recognized a stockholder's right to bring a double derivative suit." The statute, 8 Del. C. § 327, provides:

> In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law.

As the *Blasband* court noted, Delaware courts additionally require that the plaintiff be a stockholder at the time of filing the suit and remain a stockholder throughout the litigation. *Blasband v. Rales*, 971 F.2d at 1040-41. The purpose of these requirements is to ensure that the plaintiff has financial incentive and to prevent abuses associated with derivative actions. *Id.*, at 1041.

The *Blasband* court further held that no concern or policy of Delaware law prevented

3

continuing standing following a stock-for-stock merger. As to the contemporaneous ownership rule of 8 Del. C. § 327, the court cited *Rosenthal v. Burry Biscuit Corp.*, 60 A.2d 106, 111 (Del. Ch. 1948), and *Helfand v. Gambee*, 136 A.2d 558 (Del. Ch. 1957), to hold that the sole purpose of that statute was to prevent "evil, namely the purchasing [or purchase] of shares" in order to bring a derivative action based on a transaction antedating the purchase. *Id.* at 1040, 1041. The Third Circuit noted that after a stock-for-stock merger, "the plaintiff will [continue to] have a financial interest in the derivative action." *Blasband*, 971 F.2d at 1041. The plaintiff maintains this financial interest because, under 8 Del. C. § 259(a), the derivative claim passes to the surviving corporation. *Id.* at 1042 n.8 and accompanying text, 1047 n.14.[2]

The *Blasband* court further observed that the Delaware Supreme Court recognized the right of a stockholder to bring a double derivative action in *Sternberg v. O'Neil*, 550 A.2d 1105 (Del. 1988). In such a case, the plaintiff sues as a stockholder of a parent corporation to obtain relief on behalf of a subsidiary. Although the plaintiff does not hold any stock of the subsidiary, Delaware law recognizes standing based on an indirect financial interest. *Id.*, 1042-43.

The *Blasband* court carefully examined the Delaware Supreme Court's decision in *Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984). *Id.* at 1041-47. In *Lewis v. Anderson*, during the pendency of a stockholder's derivative action, the company on whose behalf the action was brought merged with a wholly-owned subsidiary of the acquiring parent, and the subsidiary survived the merger. The Delaware court held that the plaintiff lost standing.

The *Blasband* court, *id.*, at 1042 n.8, observed that *Lewis v. Anderson* held that the underlying claim had passed to the survivor of the merger. But that is not what the plaintiff there

---

[2] In a footnote, the Countrywide Defendants cite *Feldman v. Cutaia*, ___ A.2d___, 2008 WL 2223084 at *3 (Del. May 30, 2008), referring to *Lewis v. Anderson* as a "seminal case." In *Feldman* the court dismissed a stockholder's derivative action after a merger. But the court specifically emphasized that in the merger the stockholder-plaintiff "was cashed out," *Id.* at *1, and that "the plaintiff lost his stock by operation of an all-cash merger." *Id.* at *6. Because the merger at bar was stock-for-stock, and the stockholders were not cashed out, *Feldman* has no application.

argued. Instead the plaintiff argued that the claim passed to the former stockholders of the acquired corporation. The *Blasband* court also observed that the plaintiff in *Lewis v. Anderson* did not seek to proceed as a stockholder of the acquirer with an indirect financial interest in the underlying claim. *Blasband*, at 1043-44. The Third Circuit held that the court in *Lewis v. Anderson* had not "considered an argument comparable to that now raised by Blasband, *i.e.*, that he has standing as a shareholder of … [the acquiring corporation]." *Id.* at 1043. The Third Circuit further held that "there is simply no principled distinction between" allowing a derivative action to proceed after a merger and allowing a double derivative action. *Id.* at 1044.

Following *Sternberg v. O'Neil*, the Delaware Supreme Court reaffirmed the vitality of the stockholder's double derivative action. In *Wyly v. Shaev*, 719 A.2d 490, 1998 WL 764168 (Del. 1998), *affirming Shaev v. Wyly*, 1998 WL 13858 (Del. Ch. Jan. 6, 1998) ("*Shaev I*"), and *Shaev v. Wyly*, 1998 WL 118200 (Del. Ch. Mar. 6, 1998) ("*Shaev II*"), the court held that a stockholder who received stock in a subsidiary, by way of a spin-off, had standing to litigate a derivative action for wrongs done to the subsidiary before the spin-off. Prior to the spin-off the stockholder could have brought a double derivative action. *Id.*

In *Wyly*, the Delaware Supreme court "affirmed on the basis of and for the reasons assigned by the Court of Chancery." 1998 WL 764168 at *1. In *Shaev I*, 1998 WL 13858 at *1, the Chancery Court held that the stockholder had "equitable standing to bring a derivative action on behalf of the former subsidiary. . . even though the challenged actions occurred before plaintiff could have owned shares in the subsidiary." The court, relying on *Helfand v. Gambee*, noted that 8 Del. C. § 327 "was not enacted 'to prevent the correction of corporate wrongdoing.'" *Shaev I*, 1998 WL 13858 at *4. The court also cited *Rosenthal v. Burry Biscuit Corp.*, to say that the sole purpose of § 327 was to prevent the evil of suing on a purchased

grievance. *Shaev I*, 1998 WL 13858 at *4 n.19. The court concluded that "to deny standing on these facts would insulate defendants from potential liability for their alleged misdeeds." *Id.* at *4.

Upon denial of reargument in *Shaev II*, the Chancery Court held that it should not "adhere blindly to a technical legal rule and to allow thereby an alleged corporate wrongdoer to thumb his nose at the possibility of redress." *Shaev II*, 1998 WL 11820 at *2. In *Blasband*, at 1044, the Third Circuit observed that "the Delaware courts have consistently refused to apply its law rigidly where to do so would be inequitable. . . . Further, the Delaware courts have observed in shareholder actions that 'equity will not suffer a wrong without a remedy.'"

On the standing issue, *Sternberg* and *Wyly* do not stand alone. In a different context with identical corporate events, *In re Caremark International, Inc. Deriv. Litig.*, 698 A.2d 959, 972 n.30 (Del. Ch. 1996), the court held that during settlement proceedings of a stockholder's derivative action, a stock-for-stock merger had no effect on those proceedings. The court observed that "plaintiffs continue to have an equity interest in the entity that owns the claims...."

Addressing the equitable and economic facts in *Caremark*, the court in *Ash v. McCall*, 2000 WL 1370341, at *13 n.47 (Del. Ch. Sep. 15, 2000), which also involved standing after a stock-for-stock merger, stated:

> I do not think that a principled economic argument exists for denying standing to a former HBOC shareholder who continues to hold an equity interest, albeit diluted, in the HBOC subsidiary through the controlling interest of the combined entity, McKesson HBOC.

The court added that the denial of standing was inconsistent with basic economic principles and fundamental principles of equity and fairness, and it called upon the Delaware Supreme Court to correct that injustice. *Id.*

6

In *Lewis v. Ward*, 852 A.2d 896, 903-04 (Del. 2004), the Delaware Supreme Court did just that. It did indeed say that "[w]hen a merger eliminates a plaintiff stockholder's status in a corporation, it also generally eliminates her standing to pursue derivative claims on behalf of that corporation." But the court also said that after the merger the plaintiff might have brought a double derivative action:

> **Double Derivative Remedy**
> In this case, the plaintiff did not lack any remedy to pursue her derivative claims. Rather, as the Court of Chancery correctly recognized, the plaintiff might have been able to bring a post-merger double derivative suit but made no attempt to file such an action. In *Rales v. Blasband* [634 A.2d 927 (Del. 1993),] this Court set forth the procedures and standards for bringing a post-merger double derivative action.

852 A.2d at 906. This is precisely what the Third Circuit held in *Blasband*.

Read together, the Delaware Supreme Court cases, *Anderson, Sternberg, Wyly, Ward,* and *Feldman,* and the Delaware Chancery Court cases, *Caremark* and *Ash,* demonstrate that standing to litigate a derivative action survives a stock-for-stock merger of the beneficiary corporation with, and into, an acquiring corporation.

Even though the *Ward* court, 852 A.2d at 904, expressly stated that it was ratifying and reaffirming *Anderson,* it also expressly accepted *Blasband, Ash,* and *Caremark* by stating that the plaintiff, post-merger, could bring a double derivative action, 852 A.2d at 906. The *Ward* court thereby answered the Chancellor's plea in *Ash* to make Delaware law "consistent with basic economic principles, as well as fundamental principles of equity and fairness." *Id.* at *13 n.47. *Anderson* was thus limited to cash-out mergers. *Mason v. American Emery Wheel Works,* 241 F.2d 906, 909 (1st Cir. 1957). (case need not be explicitly overruled in order to lose its force as precedent, particularly where later decisions become "overloaded with illogical exceptions."). As the Third Circuit held, in Blasband, 971 F.2d at 1042-44, a stockholder that brings a double

derivative action necessarily and logically has standing to sue on behalf of the subsidiary. The *Ward* court, by reaffirming *Anderson* but permitting a post-merger double derivative suit, necessarily limited *Anderson's* application to cash-out mergers. In *Feldman,* at *3, the court called *Anderson* a "seminal case," but it emphasized that the merger "cashed out" the stockholders. The *Blasband* court also called *Anderson* "the seminal Delaware Supreme Court case concerning the contemporaneous ownership requirement in the merger context." *Id.* at 1042. Yet, *Blasband* limited *Anderson* to cash-out mergers:

> Where there has been a cash-out merger, it is clear that a former shareholder may not maintain a derivative action, for he or she would no longer have an interest in a subsequent corporate recovery.

971 F.2 at 1044. The Delaware rule now is that a stock-for-stock merger does not eliminate a stockholder's standing to sue derivatively.

## II.    UNDER FEDERAL PROCEDURE, THIS ACTION IS NOT ABATED BY THE MERGER

In *Lewis v. Ward*, 852 A.2d at 906, the Delaware Supreme Court affirmed the dismissal of the action, following a stock-for-stock merger, but held that the stockholder might commence a new "post-merger double derivative action." Dismiss one action, and start another; endure the delay; litigate new issues; pay the additional costs. Such protracted procedures are the opposite of the rule in the federal courts, where FED. R. CIV. P. 25(c) provides:

> **Transfer of Interest.** If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

As the Third Circuit held in *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993), a transfer of interest under Rule 25(c) "occurs when one corporation becomes the successor to another by merger." The rule allows the action to continue unabated upon a transfer

of interest rather than requiring the initiation of an entirely new lawsuit. *Elca Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995). The rule does not require that anything be done, such as substitution or joinder of parties; after a merger the case can simply continue against the original corporation. *Luxliner*, 13 F.3d at 71; *Kraebel v. New York City Dept. of H.P. & D.*, 2002 WL 14364 at *4 (S.D.N.Y. Jan. 3, 2002) ("[a]lthough, inexplicably, neither party refers to it, Rule 25(c) is clearly the relevant provision" where interest is transferred during litigation). The judgment will be binding upon the successor even if it is not formally made a party. *Id.* As long as the cause of action survives – as it does at bar – the action continues, *Hillbrands v. Far East Trading Co., Inc.*, 509 F.2d 1321, 1323 (9th Cir. 1975), even if the parties do not remain the real parties in interest. *Elca Enterprises*, 53 F.3d at 191.

In *Blasband*, the Third Circuit did not address FED. R. CIV. P. 25(c) because there the transfer of interest pre-dated the commencement of the action. In that event it is FED. R. CIV. P. 17 that applies. It is only if the transfer is made during the action, as at bar, that FED. R. CIV. P. 25(c) applies. *Elca Enterprises*, 53 F.3d at 190 n.4.

Thus, this court should not dismiss this case because the Federal Rules of Civil Procedure provide that the case should continue, with parties joined or substituted that this court might order upon a motion properly made. Since no such motion has been made, this case continues "seamlessly making substitution unnecessary." *Kraebel*, at *4.

**III.   ALTHOUGH A MERGER IMPLICATES ISSUES OF DEMAND, THERE IS NO REQUIREMENT OF ANOTHER DEMAND, NOR SHOULD THIS ACTION BE DISMISSED**

The Third Circuit further held in *Blasband* that a stock-for-stock merger really implicates the issue of demand, not standing. *Id.* at 1043-44. The Third Circuit, at 1044, cited footnote 19 of *Lewis v. Anderson,* 477 A.2d at 1050, where the Delaware court iterated that, by reason of 8 Del. C. § 259(a), the underlying claim vested in the survivor of the merger and that the survivor's board of directors has control over that claim.  In *Lewis v. Ward*, 852 A.2d at 903-04, the Delaware court reiterated that point about the survivor's board of directors.

The plaintiff in *Blasband* filed a post-merger derivative action on behalf of the acquiring corporation that was the parent of the survivor of the merger. The original complaint had not named the subsidiary as a defendant. The Third Circuit held that the case was "similar to a double derivative action" and that, according to *Sternberg v. O'Neil*, 550 A.2d at 1124, the parent and the subsidiary were both indispensable parties. Because both the parent and the subsidiary were indispensable, *Blasband* said "it follows that demand must be made upon both." *Blasband*, 971 F.2d at 1050. The Third Circuit, at 1055, directed the plaintiff to file an amended complaint adding the subsidiary as a party and alleging that demand was excused.[3]

At bar, in contrast to *Blasband*, the plaintiffs filed their actions *before* Countrywide merged with and into a wholly owned subsidiary of the BofA. Naturally, the complaints at bar did not name as defendants the BofA or its merger subsidiary.  The Third Circuit in *Blasband* held that demand was required on the parent because the parent in a post-merger lawsuit was an indispensable party.  But that is not the case at bar.  By application of FED. R. CIV. P. 25(c), neither the BofA nor its merger subsidiary is either a necessary or an indispensable party.

---

[3] The question of demand was certified to the Delaware Supreme Court, which decided that demand was excused. *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).

Accordingly, demand on the BofA's board is not required. For the same reason, demand is not required on the board of the BofA's merger subsidiary.

The Third Circuit observed that, under Delaware law, a merger that occurs during the pendency of a stockholder's derivative action is substantially identical to the case where, during the pendency of a properly initiated stockholder's derivative action, an independent board replaces a conflicted board. *Blasband*, 971 F.2d at 1053. In such a case the new board has three choices. It can (1) move to realign the corporation as a plaintiff; (2) allow the stockholder plaintiff to litigate, either by formal understanding or inaction; or (3) move to dismiss the case as not in the corporation's best interest. But if it moves to dismiss in a case where, as at bar, demand is excused, defendants bear the burden of proof that the case is actually not in the corporation's best interest. *Blasband*, 971 F.2d at 1054 n.23 (*quoting Zapata Corp. v. Maldonado*, 430 A.2d 779, 787 (Del. 1981)); *Braddock v. Zimmerman*, 906 A.2d 776, 785-86 (Del. 2006) (*quoting Zapata*); *Harris v. Carter*, 582, A.2d 222, 230-31 (Del. Ch. 1990) (*quoting Zapata*).

The reference in *Blasband*, *Braddock*, and *Harris* to *Zapata* is important. In *Zapata*, the Delaware Supreme Court addressed a stockholder's derivative action where a conflicted board appointed a purportedly disinterested committee, which then moved to dismiss the case. The committee argued that it had evaluated the case and decided that it was in the corporation's interest to dismiss the case. The *Zapata* court held that, while a court might grant such a motion, a court should proceed with great care, and, in a case where demand on the board was excused, "some tribute must be paid to the fact that the law suit was properly initiated." *Id.*, 430 A.2d at 787.

The Zapata court further held that it was required:

> ...to find a balancing point where bona fide stockholder power to bring corporate causes of action cannot be unfairly trampled on by the board of directors, but the corporation can rid itself of detrimental litigation.

430 A.2d at 787. The court further said of the committee's motion:

> It is perhaps best considered as a hybrid summary judgment motion for dismissal because the stockholder plaintiff's standing to maintain the suit has been lost.

430 A.2d at 787. The court likened the motion to a proposal to settle a stockholder's derivative action "in that there is a request to terminate litigation without a judicial determination of the merits." *Id.* at 787.

The *Zapata* court held that such a proceeding "should include a thorough written record of the [committee's] investigation .... [and that] each side should have an opportunity to make a record." *Id.* at 788. The court should first determine the committee's independence and good faith and the basis for its conclusion. Limited discovery may be required. The corporation has the burden of proof. *Id.* at 788. Even if the court finds that the committee is independent, it may then proceed to decide whether dismissal satisfies the spirit of an evaluation by an independent committee. The question is "how compelling the corporate interest in dismissal is when faced with a non-frivolous lawsuit." *Id.* at 789.

Based upon the *Zapata* case and the jurisprudence of the demand requirement and its exceptions, no policy of Delaware law requires "that a court decline to permit further litigation of [properly initiated] claims upon the replacement of the interested board with a disinterested one." *Blasband*, 971 F.2d at 1054 n. 23; *Braddock*, 906 A.2d at 785; *Harris v. Carter*, 582 A.2d at 231. Nor does it "require that a derivative plaintiff interrupt litigation. . . to make a demand upon such a newly constituted board." *Braddock*, 906 A.2d at 786; *Harris*, at 582 A.2d at 231.

The case at bar was properly initiated. Plaintiffs did not make a demand in this case,

because as the complaint alleges, demand was excused as futile.  All the defendants have made motions to dismiss on the grounds that the complaint does not adequately allege demand futility. But that issue has already been decided.  In the federal cases in California, which the defendants say are substantially similar to the case at bar, the court denied the defendants' motion to dismiss that was based on lack of demand.  *In re Countrywide Financial Corp. Derivative Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008).  That decision is *res judicata* upon that issue at bar, and the defendants are precluded from re-litigating it.  *LeBoyer v. Greenspan*, 2007 WL 4287646 (C.D. Cal. Jun. 12, 2007).

This merger, occurring after commencement of this stockholders' derivative action, is the equivalent of the replacement of a conflicted board with an independent board.[4]  Because demand is excused, there is no requirement now of either a new demand or an amended complaint alleging that demand is excused.  There is no showing that the action is not in the Company's best interest, and there is no showing that the action should be dismissed under the principles of *Blasband*, *Braddock*, and *Zapata*.

---

[4]  Plaintiffs do not conceded that there is now in fact an independent board of directors, for there is nothing in the record that identifies the current board members.

## CONCLUSION

Delaware law provides that a stock-for-stock merger does not eliminate the standing of a stockholder to litigate derivatively on behalf of the merged corporation. Federal procedure provides that the derivative action continue unabated, but the court can, on motion, order substitution or joinder of parties. To the extent that the merger implicates the demand requirement, if the merger occurs after commencement of the derivative action, the plaintiff need not interrupt the case to make demand. Nor does Delaware law require dismissal of the action. Accordingly, the court should deny the post-merger motion to dismiss.

BIGGS and BATTAGLIA


By:  /s/Robert D. Goldberg
Robert D. Goldberg (ID # 631)
Biggs and Battaglia
921 North Orange Street
P.O. Box 1489
Wilmington, DE  19899
(302) 655-9677
Attorneys for Plaintiffs

*Of Counsel:*

Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
Two Commerce Square
2001 Market Street B Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600

14

# EXHIBIT 1

1   Lloyd Winawer (S.B. #157823)
    lwinawer@goodwinprocter.com
2   GOODWIN PROCTER LLP
    10250 Constellation Boulevard, 21st Floor
3   Los Angeles, CA  90067
    Telephone:  (310) 788-5177
4   Facsimile:   (310) 286-0992

5   Brian E. Pastuszenski (Pro Hac Vice)
    bpastuszenski@goodwinprocter.com
6   Stuart M. Glass (Pro Hac Vice)
    sglass@goodwinprocter.com
7   GOODWIN PROCTER LLP
    53 State Street
8   Exchange Place
    Boston, MA  02109
9   Telephone:  (617) 570-1000
    Facsimile:   (617) 523-1231
10
    Attorneys for Defendants Jeffrey M.
11  Cunningham, Robert J. Donato, Martin R.
    Melone, Robert T. Parry, Oscar P.
12  Robertson, Keith P. Russell, Henry G.
    Cisneros, Stanford L. Kurland, Angelo R.
13  Mozilo, Carlos M. Garcia, David J. Sambol,
    and Eric P. Sieracki
14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17  In re COUNTRYWIDE          Lead Case No. 07-CV-06923-MRP (MANx)
    FINANCIAL CORP.
18  DERIVATIVE LITIGATION      **INDIVIDUAL DEFENDANTS' NOTICE**
                               **OF MOTION AND MOTION FOR**
19                             **JUDGMENT ON THE PLEADINGS**
                               **CONCERNING PLAINTIFFS'**
20                             **DERIVATIVE CLAIMS;**
                               **MEMORANDUM OF POINTS AND**
21                             **AUTHORITIES IN SUPPORT THEREOF**
22
23                             Hearing Date:    August 4, 2008
24                             Hearing Time:    10:00 a.m.
                               Judge:           Hon. Mariana R. Pfaelzer
25                             Courtroom:       12
26
27
28

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that, on August 4, 2008, at 10:00 a.m. or as soon

3    thereafter as the matter may be heard, before the Honorable Mariana R. Pfaelzer,

4    United States District Judge, located at 312 N. Spring Street, Courtroom 12, Los

5    Angeles, California, 90012, the Individual Defendants will and hereby do move for

6    an order for judgment on the pleadings concerning Plaintiffs' derivative claims.

7    With the merger of Countrywide Financial Corporation ("CFC") and Bank of

8    America Corporation ("BAC") having closed on July 1, 2008, Plaintiffs now lack

9    standing to pursue those derivative claims.  This motion is made based on this

10   Notice of Motion, the Memorandum of Points and Authorities in support thereof,

11   Individual Defendants' Request for Judicial Notice and exhibits filed herewith, and

12   all papers, pleadings, documents, arguments of counsel, and other materials

13   presented before or during the hearing on this motion, and any other evidence and

14   argument the Court may consider.

15   Pursuant to Local Rule 7-3, counsel for the Individual Defendants conferred

16   telephonically with counsel for the Plaintiffs regarding this motion on May 29,

17   2008.  The parties were unable to reach agreement.

18

19   Dated:  July 2, 2008                          GOODWIN PROCTER LLP

20                                                 By: /s/ Brian E. Pastuszenski

21                                                     Brian E. Pastuszenski (Pro Hac Vice)
                                                       Lloyd Winawer
22                                                     Stuart M. Glass (Pro Hac Vice)

23                                                 *Attorneys for Defendants Cunningham,
                                                   Donato, Melone, Parry, Robertson,*
24                                                 *Russell, Cisneros, Garcia, Kurland,*
                                                   *Mozilo, Sambol, and Sieracki*

25

26

27

28

---

IND. DEFS.' MEMORANDUM IN SUPPORT OF        LEAD CASE NO. 07-CV-06923-MRP (MANx)
MOTION FOR JUDGMENT ON THE PLEADINGS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRELIMINARY STATEMENT**

On March 28, 2008, this Court observed that derivative claims—which belong to a corporation, not to its shareholders—pass to the acquiring company in an acquisition, just like any other asset:

> It is fundamental that a plaintiffs' derivative suit 'is regarded as a property right belonging to the corporation instead of the shareholder.' *Alabama By-Products Corp. v. Cede & Co.*, 657 A.2d 254, 265 (Del. 1995).  If the law extinguishes derivative standing for a corporation no longer in existence and 'the derivative claim vests in the . . . surviving corporation . . . upon the transfer of stock through the merger,' *Id.* at 264, then the derivative suit is properly viewed as a part of the bargain, or an 'asset' that the acquiring company obtains in exchange for consideration.  Thus, along with any other assets contemplated by the acquisition, Bank of America will effectively acquire the derivative suits from Countrywide.[1]

That acquisition has occurred.  On June 25, 2008, CFC's shareholders voted to approve CFC's proposed merger with BAC.  In fact, *more than 97 percent of the shares voting*—representing nearly 70 percent of CFC's outstanding shares entitled to vote—approved the transaction (the "Merger"), which closed on July 1, 2008.  At that time, CFC merged into a wholly-owned BAC subsidiary, CFC shareholders received BAC shares in exchange for their CFC shares, and all of CFC's assets— including the derivative claims that Plaintiffs assert ostensibly on CFC's behalf— passed to BAC.  Plaintiffs, no longer CFC shareholders, therefore lack standing to maintain this derivative suit on CFC's behalf, and it should be dismissed accordingly.

---

[1] March 28 Order at 18.

1

1

2                        **BACKGROUND**

3    **BAC Agrees to Acquire CFC**

4         On January 11, 2008, CFC announced that BAC had agreed to acquire it in a

5    stock-for-stock transaction valued at approximately $4 billion, or $7.16 per CFC

6    share.  Compl. ¶ 343.  The merger consideration per share represented a 37.9%

7    premium to CFC's $5.12 stock price on January 9, 2008, the day before the market

8    learned about the potential acquisition.  CFC Definitive Proxy Statement dated May

9    28, 2008 ("Proxy Statement") (Ex. 1) at 37. [2]

10        On February 15, 2008, Plaintiffs filed a consolidated, amended complaint

11   that, like their original complaint, asserted derivative claims on CFC's behalf

12   against certain current and former CFC officers and directors for alleged breaches

13   of their fiduciary duties and federal securities law violations.  The amended

14   complaint also contained class-action claims brought on behalf of all CFC

15   shareholders directly which challenged the proposed merger consideration.  Those

16   claims paralleled nearly identical claims that other CFC shareholders had

17   previously filed in the Delaware Chancery Court on behalf of the same CFC

18   shareholder class.  On March 28, 2008, this Court (i) stayed Plaintiffs' class action

19   claims in favor of the parallel proceedings in Delaware, (ii) denied Plaintiffs'

20   motion for a constructive trust and preliminary injunction, and (iii) denied

21   expedited discovery.  *See* Dkt No. 111.

22        In its March 28 Order, the Court rejected Plaintiffs' argument that CFC's

23   shareholders would suffer irreparable harm if the Merger closed before the

24   derivative claims were resolved because Plaintiffs would lose standing to prosecute

25   those claims.  The Court held:

26   •   "Plaintiffs' primary argument for irreparable harm is that consummation of

27   ---
     [2] All exhibits ("Ex.") cited herein are appended to Individual Defendants' Request
28   for Judicial Notice filed together with this motion.

                                            2

1    the merger will extinguish their derivative standing by operation of law.

2    However, the impending Bank of America merger does not create a

3    significant risk of 'irreparable' harm.  First, the terms will be subject to

4    shareholder vote; thus, should the terms inadequately account for the value of

5    the derivative suits, shareholders have the ability to vote against the

6    transaction."  March 28 Order at 20-21.

7    • "It is fundamental that a plaintiffs' derivative suit 'is regarded as a property

8      right belonging to the corporation instead of the shareholder.'  *Alabama By-*

9      *Products Corp. v. Cede & Co.*, 657 A.2d 254, 265 (Del. 1995).  If the law

10     extinguishes derivative standing for a corporation no longer in existence and

11     'the derivative claim vests in the  . . . surviving corporation . . . upon the

12     transfer of stock through the merger,' *Id.* at 264, then the derivative suit is

13     properly viewed as a part of the bargain, or an 'asset' that the acquiring

14     company obtains in exchange for consideration.  Thus, along with any other

15     assets contemplated by the acquisition, Bank of America will effectively

16     acquire the derivative suits from Countrywide."  March 28 Order at 18.

17   • "[C]onsummation of the transaction, if and when it occurs, will properly

18     transfer the 'asset' of the derivative suits to Bank of America."  March 28

19     Order at 22.[3]

20   **CFC Shareholders Approve the BAC Acquisition**

21         On June 25, 2008, at the shareholder meeting to consider the proposed

22   merger, more than 97 percent of the voting shares (and nearly 70 percent of all

23   outstanding shares) voted to approve the acquisition.  *See* Ex. 2 (CNBC Article).

24   On July 1, 2008, the transaction closed, and all outstanding CFC shares were

25   exchanged for BAC shares at the Merger Agreement's specified exchange ratio.  At

26   that time, CFC became a wholly-owned subsidiary of BAC.  *See* Ex. 3 (Certificate

---

27   [3] Defendants moved to dismiss the derivative claims, which motions were granted

28   in part and denied in part on May 14, 2008.

3

1    of Merger).  Likewise, all of CFC's assets—including the derivative claims that

2    Plaintiffs assert for its benefit—passed to BAC.

3                                        **ARGUMENT**

4    **I.    PLAINTIFFS NO LONGER HAVE STANDING BECAUSE THEY**

5    **ARE NO LONGER CFC SHAREHOLDERS.**

6            A derivative suit belongs to a corporation, not to its former shareholders.  *See*

7    March 18 Order at 18 ("It is fundamental that a plaintiff's derivative suit 'is

8    regarded as a property right belonging to the corporation instead of the

9    shareholder.' ") (quoting *Alabama By-Products Corp. v. Cede & Co.*, 657 A.2d

10   254, 265 (Del. 1995)); *accord Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S.

11   518, 522 (1947) ("The cause of action [derivative claim] which such plaintiff brings

12   before the court is not his own but the corporation's.").  As such, the shareholder

13   derivative claims asserted in this action do not belong to Plaintiffs or any other

14   former CFC shareholders.  *See* March 28 Order at 22 ("consummation of the

15   transaction . . . will properly transfer the 'asset' of the derivative suits to Bank of

16   America"); *accord* 8 DEL. C. § 259(a) (all rights, privileges and powers belonging

17   to a Delaware corporation pass at time of merger to surviving corporation).  Rather,

18   the Merger's consummation means that the derivative claims have been transferred

19   to BAC.  *Lewis v. Ward*, 852 A.2d 896, 901 (Del. 2004) (upon merger "derivative

20   claims pass by operation of law to the surviving corporation, which then has the

21   sole right and standing to prosecute the action").

22           As a result, Plaintiffs no longer have standing to sue on CFC's behalf.  To

23   have standing to maintain a shareholder derivative suit on a corporation's behalf, a

24   plaintiff must own shares in that corporation " 'at the time of the alleged wrongful

25   acts and . . . retain ownership of the stock for the duration of the lawsuit.' "  *In re*

26   *Mercury Interactive Corp. Deriv. Litig.*, 487 F. Supp. 2d 1132, 1135 (N.D. Cal.

27   2007) (quoting *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983)); *see* Fed. R.

28   Civ. P. 23.1; *accord Ward*, 852 A.2d at 901 ("When a merger eliminates a

                                              4

1  plaintiff's shareholder status in a company, it also eliminates her standing to pursue

2  derivative claims on behalf of that company."); *Grosset v. Wenaas*, 72 Cal. Rptr. 3d

3  129, 145, 175 P.3d 1184, 1186 (Cal. 2008) ("California law, like Delaware law,

4  generally requires a plaintiff in a shareholder's derivative suit to maintain

5  continuous stock ownership throughout the pendency of the litigation. . . . [A]

6  derivative plaintiff who ceases to be a stockholder by reason of a merger ordinarily

7  loses standing to continue the litigation."). Under this "continuous ownership"

8  requirement, Plaintiffs were required to remain CFC shareholders for the duration

9  of the litigation. *Mercury*, 487 F. Supp. 2d at 1135; *accord Lewis v. Anderson*, 477

10  A.2d 1040, 1049 (Del. 1984) ("A plaintiff who ceases to be a shareholder, whether

11  by reason of a merger or for any other reason, loses standing to continue a

12  derivative suit"). Here, when BAC acquired CFC and all of its shares and assets,

13  Plaintiffs ceased being CFC shareholders, and thereafter no longer satisfied the

14  continuity of ownership requirement.

15      Plaintiffs have essentially admitted their loss of standing in this matter. The

16  entire premise of their unsuccessful motion for a constructive trust was that they

17  would lose standing if and when the Merger closed. And in their Reply in Support

18  of Plaintiffs' Motion For Leave to File Amended Complaint, dated June 23, 2008

19  (Dkt. No. 188) at 3-4, Plaintiffs implicitly acknowledged that they would cease to

20  have standing were the Merger approved by CFC's shareholders. In arguing that

21  they should be allowed to pursue direct class action claims relating to the Merger in

22  this Court even though those claims already have been litigated in Delaware,

23  Plaintiffs said: "If the BofA Transaction does not close, Plaintiffs will continue to

24  prosecute this case derivatively on behalf of Countrywide. But, if the BofA

25  Transaction is completed, Plaintiffs will simply pursue the claims directly, on

26  behalf of all Countrywide shareholders."

27

28

1    In sum, the CFC shareholders voted overwhelmingly for the Merger, the

2    Merger has now closed, and Plaintiffs are no longer CFC shareholders.  Plaintiffs

3    thus now lack standing to proceed, and their derivative claims should be dismissed.

4

5    **II.    NO EXCEPTIONS APPLY.**

6    In its March 28 Order, this Court noted that "there are limited exceptions to

7    the general rule that this type of merger eliminates standing to pursue derivative

8    claims."  March 28 Order at 19 n.21 (*citing Ward*, 852 A.2d at 899).  None of those

9    exceptions, however, applies here.

10    Plaintiffs have not alleged—nor could they—that "the merger is in reality a

11    reorganization" of the same entity.  *See Ward*, 852 A.2d at 904-05.  As a result of

12    the Merger, the CFC shareholders now own shares of BAC, a much larger, more

13    diversified, financial institution.

14    Likewise, Plaintiffs cannot allege that the Merger was "fraudulent and done

15    *merely* to eliminate derivative claims."  *Ward,* 852 A.2d at 905 (emphasis added).

16    To invoke the fraud exception, Plaintiffs must plead fraud with particularity under

17    Rule 9(b).  *See Ward,* 852 A.2d at 905; *Kolancian v. Snowden*, 532 F. Supp. 2d

18    260, 263-64 (D. Mass. 2008).  Plaintiffs, however, have not alleged—much less

19    with particularity—that the Merger was fraudulent and done merely to eliminate

20    derivative claims.  *See Ward*, 852 A.2d at 905 (any allegation that merger effected

21    "merely" to eliminate derivative claims must be pleaded with particularity).

22    Indeed, the Complaint itself acknowledges the economic and market forces that

23    made it difficult for the Company to operate normally and that provided compelling

24    reasons for a merger with BAC, noting: (i) the "widely-publicized 'meltdown' that

25    has roiled public markets, eroded confidence in the United States economy, and

26    accelerated residential foreclosures across the country" (¶ 258); (ii) that the credit

27    markets were "turning against Countrywide" and the rating agencies were "forced

28

6

1    to follow" (¶ 252); and (iii) that on January 8, 2008, just a few days before the

2    proposed merger with BAC was announced, "[t]he credit concerns came to a head .

3    . . when the Company's stock price collapsed on widespread reports that it would

4    soon have to file for bankruptcy protection," which led to a temporary trading halt

5    in CFC shares  (¶ 271).[4]  Thus, there could be no reasonable allegation that the

6    Merger was done "simply to avoid defending the derivative suit rather than for

7    other valid business reasons." *Ward*, 852 A.2d at 906.

8         More fundamentally, as this Court already has explained, the Merger *does*

9    *not eliminate* any of the derivative claims Plaintiffs have filed in the action—only

10   these Plaintiffs' standing to pursue those claims on CFC's behalf.  The Merger

11   Agreement contains no release of such claims, which have now passed by operation

12   of law to BAC.  *See* March 28 Order at 22 n.25.  Nor could it reasonably be argued

13   that the Merger was in any way "fraudulent" given that the shareholders have now

14   resoundingly approved the Merger after receiving extensive disclosures about

15   Plaintiffs' allegations in this action.[5]

16        The cases in this Circuit that have addressed whether derivative standing

17   survives a merger likewise compel dismissal.  As Judge King observed in a recent

18   case involving derivative claims sought to be asserted after a merger, "our research

19   has not uncovered any Ninth Circuit decision that actually awarded a plaintiff

20

21   _____

22   [4] *See also* Proxy Statement at 28 (describing how days before executing the Merger
     Agreement the Company realized it would experience a loss for the fourth quarter

23   of 2007 and that this loss likely would lead to a credit rating downgrade and
     additional adverse business consequences).

24

25   [5] *See* Proxy Statement at 46-50 (disclosing among other things the nature of the
     allegations in this case, including the allegation that the Merger consideration was

26   artificially low because the claims in this case supposedly would be extinguished in
     the deal, the alleged $2 billion value attributed to the derivative claims by the

27   plaintiffs in the Delaware deal litigation, and the disclosure that Plaintiffs here may

28   lose standing to pursue those claims upon closing of the Merger).

                                    7

1  standing on equitable grounds." *LeBoyer v. Greenspan*, Case No. CV 03-5603-

2  GHK (JTLx), 2007 U.S. Dist. LEXIS 96231, at *14 (C.D. Cal. June 12, 2007).

3                              **CONCLUSION**

4        On July 1, 2008, CFC merged into BAC after CFC's shareholders

5  overwhelmingly approved the proposed merger.  At that time, CFC's assets—

6  including the claims that Plaintiffs assert here—transferred from CFC to BAC, and

7  CFC's shareholders exchanged their CFC stock for BAC stock.  Plaintiffs, no

8  longer CFC shareholders, therefore lack standing to assert claims on CFC's behalf.

9  The Court thus should enter judgment in favor of the Individual Defendants on all

10  derivative claims in the Complaint (Counts I-IX).

11

12  Dated:  July 2, 2008              GOODWIN PROCTER LLP

13                                   By: /s/ Brian E. Pastuszenski
14                                   Brian E. Pastuszenski (Pro Hac Vice)
                                     Lloyd Winawer
15                                   Stuart M. Glass (Pro Hac Vice)

16                                   *Attorneys for Defendants Cunningham, Donato,*
                                     *Melone, Parry, Robertson, Russell, Cisneros,*
17                                   *Kurland, Garcia, Mozilo, Sambol, and Sieracki*

18

19

20

21

22

23

24

25

26

27

28

                                     8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE COUNTRYWIDE FINANCIAL    )
CORPORATION DERIVATIVE         )    C.A. No. 07-372-SLR(MPT)
LITIGATION                     )
_____)    (Consolidated Action)
                               )
THIS RELATES TO ALL ACTIONS    )
_____)

## DECLARATION OF ALEXANDER ARNOLD GERSHON
## IN OPPOSITION TO POST-MERGER MOTION TO DISMISS

I, ALEXANDER ARNOLD GERSHON, hereby declare under penalty of perjury under the laws

of the United States of America, that the following is true and correct.

1.    I am a member of the bar of the State of New York and an inactive member

of the bar of the State of Georgia. I am a partner in the firm of Barrack, Rodos & Bacine,

and we are of counsel to the plaintiffs in this action.

2.    I make this declaration in opposition to defendants' post-merger motion to

dismiss this action.

3.    Attached hereto as Exhibit 1 is a true copy of the Individual Defendants'

Notice of Motion and Motion For Judgment On the Pleadings Concerning Plaintiffs'

Derivative Claims; Memorandum of Points and Authorities in Support Thereof. This

motion was made in *In re Countrywide Financial Corp. Derivative Litigation*, 07-cv-

06923-MRP (MANx) in the United States District Court for the Central District of

California. I obtained it online from the Central District of California PACER website.

Dated: New York, New York
     August 1, 2008              /s Alexander Arnold Gershon_____
                                     Alexander Arnold Gershon

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| JAMES E. SPELLMAN, JR., M.D. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1838-VCN |
| | ) | |
| MAYER M. KATZ, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| In Re: | ) | |
| KSA, L.L.C., a Delaware | ) | |
| limited liability company | ) | |

## CERTIFICATE OF SERVICE

I, Robert D. Goldberg under hereby certify that on August 1, 2008, I electronically filed the foregoing **ANSWERING BRIEF OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS' POST-MERGER MOTION TO DISMISS** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

THOMAS A. BECK, ESQUIRE
STEVEN J. FINEMAN, ESQUIRE
RICHARD, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19801

EDWARD P. WELCH, ESQUIRE
EDWARD B. MICHELETTI, ESQUIRE
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, DE 19899-0636

**BIGGS & BATTAGLIA**

/s/ Robert D. Goldberg
ROBERT D. GOLDBERG (#631)
921 North Orange Street
Wilmington, DE 19899
Tel: (302) 655-9677
Fax: (302) 655-7924
goldberg@batlaw.com
*Attorneys for plaintiffs*

Dated:  *August 1, 2008*