IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION DERIVATIVE LITIGATION | C.A. No. 1:07-372 SLR (MPT) |
| | (Consolidated Action) |
| THIS RELATES TO ALL ACTIONS | |

**REPLY BRIEF IN SUPPORT OF POST-MERGER MOTION TO DISMISS
OF DEFENDANTS CISNEROS, CUNNINGHAM, DONATO, MELONE, MOZILO,
PARRY, ROBERTSON, RUSSELL, AND SNYDER AND NOMINAL DEFENDANT
<u>COUNTRYWIDE FINANCIAL CORPORATION</u>**

OF COUNSEL:

Brian E. Pastuszenski
Stuart M. Glass
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
(617) 570-1000

Thomas A. Beck (#2086)
beck@rlf.com
Steven Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19801
(302) 651-7700

*Attorneys for Defendants Henry G. Cisneros,
Jeffrey M. Cunningham, Robert L. Donato,
Martin R. Melone, Angelo R. Mozilo, Robert T.
Parry, Oscar P. Robertson, Keith P. Russell,
and Harley W. Snyder, and Nominal Defendant
Countrywide Financial Corporation*

Dated:  August 13, 2008

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................2

I.     Under Governing Delaware Law, A Stock-For-Stock Merger Extinguishes A
Shareholder Plaintiff's Standing To Maintain A Derivative Lawsuit ................................2

II.    Federal Rule 25(c) May Not Be Interpreted To Circumvent Delaware Substantive
Law ........................................................................................................................6

III.   The California Court's Ruling On Demand Is Irrelevant To The Issue Of
Plaintiffs' Loss Of Standing....................................................................................11

CONCLUSION.........................................................................................................12

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ash v. McCall,*
    2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ......................................................6

*Bansbach v. Zinn,*
    801 N.E.2d 395 (N.Y. App. Div. 2003) ..........................................................12

*Blasband v. Rales,*
    971 F.2d 1034 (3d Cir. 1992) ............................................................... *passim*

*Defurio v. Elizabeth Forward Sch. Dist.,*
    2007 WL 2752176 (W.D. Pa. Sept. 19, 2007) ................................................12

*Durant v. Husband,*
    28 F.3d 12 (3d Cir. 1994) .............................................................................7

*ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.,*
    53 F.3d 186 (8th Cir. 1995) ...........................................................................9

*Fagin v. Gilmartin,*
    432 F.3d 276 (3d Cir. 2005) ..........................................................................9

*Feldman v. Cutaia,*
    -- A.2d --, 2008 WL 2223084 (Del. May 30, 2008) ..........................................5

*Gentile v. Rossette,*
    2005 WL 2810683 (Del. Ch. Oct. 25, 2005) ...................................................5

*Grappe v. Kansas City Southern Railway Co.,*
    2003 WL 21697377 (5th Cir. July 21, 2003) ..................................................12

*In re Countrywide Fin. Corp. Deriv. Litig.,*
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) .........................................................12

*In re First Interstate Bancorp Consol. S'holder Litig.,*
    729 A.2d 851 (Del. Ch.), *aff'd,* 748 A.2d 913 (Del. 2000) ................................5

*In re General Instrument Corp. Sec. Litig.,*
    2000 WL 1742120 (N.D. Ill. Nov. 22, 2000) ............................................... 8-9

*In re General Motors Class E Stock Buyout Sec. Litig.,*
    790 F. Supp. 77 (D. Del. 1992) .....................................................................5

ii

*In re Goldbronn,*
   263 B.R. 347 (Bkrtcy. M.D. Fla. 2001) ...................................................................12

*In re Syncor Int'l Corp. S'holders Litig.,*
   857 A.2d 994 (Del. Ch. 2004)..................................................................................5

*Kalmanovitz v. G. Heileman Brewing Co.,*
   595 F. Supp. 1385 (D. Del. 1984), *aff'd,* 769 F.2d 152 (3d Cir. 1985) ..................6

*Kamen v. Kemper Fin. Servs., Inc.,*
   500 U.S. 90 (1991)..................................................................................................9

*Kraebel v. New York City Dep't of Housing Pres. and Dev.,*
   2002 WL 14364 (S.D.N.Y. Jan. 3, 2002) ...............................................................9

*Levine v. Smith,*
   591 A.2d 194 (Del. 1991) ........................................................................................5

*Lewis v. Anderson,*
   477 A.2d 1040 (Del. 1984) ........................................................................... *passim*

*Lewis v. Ward,*
   852 A.2d 896 (Del. 2004) ............................................................................ *passim*

*Lindley v. General Elec. Co.,*
   780 F.2d 797 (9th Cir. 1986) ...................................................................................7

*Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,*
   13 F.3d 69 (3d Cir. 1993)........................................................................................9

*Oliver v. Boston Univ.,*
   2006 WL 1064169 (Del. Ch. Apr. 14, 2006) ..........................................................5

*Rales v. Blasband,*
   626 A.2d 1364 (Del. 1993) ......................................................................................8

*Rales v. Blasband,*
   634 A.2d 927 (Del. 1993) .....................................................................................5, 8

*Saito v. McCall,*
   2004 WL 3029876 (Del. Ch. Dec. 20, 2004)..........................................................5

*SEC v. First Jersey Sec., Inc.,*
   101 F.3d 1450 (2d Cir. 1996).................................................................................11

*Zapata Corp. v. Maldonado,*
   430 A.2d 779 (Del. 1981) ......................................................................................10

RLF1-3312191-1

**OTHER AUTHORITIES**

28 U.S.C. § 2072(b) ...................................................................................................7

Fed. R. Civ. P. 25(c) ..........................................................................................*passim*

8 *Del. C.* § 259 ................................................................................................5, 10

8 *Del. C.* § 261 ....................................................................................................10

8 *Del. C.* § 327 ....................................................................................................10

Defendants Henry G. Cisneros, Jeffrey M. Cunningham, Robert L. Donato, Martin R. Melone, Angelo R. Mozilo, Robert T. Parry, Oscar P. Robertson, Keith P. Russell, and Harley W. Snyder and nominal defendant Countrywide Financial Corporation ("Countrywide" or the "Company") (collectively, "Defendants") respectfully submit this reply brief in support of their motion to dismiss the Complaint for lack of post-merger standing.

## PRELIMINARY STATEMENT

Plaintiffs' assertion that shareholder plaintiffs do not lose standing to pursue their derivative claims under Delaware law after a stock-for-stock merger is remarkable given that Delaware law clearly provides otherwise:

- The Delaware Supreme Court has held unequivocally that shareholder plaintiffs lose standing to pursue derivative claims after a stock-for-stock merger because they are no longer shareholders in the merged entity. *See Lewis v. Ward*, 852 A.2d 896, 903-04 (Del. 2004) ("*Ward*"); *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984) ("*Anderson*");

- Plaintiffs' citation to the Third Circuit's pre-*Ward* decision in *Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992) ("*Blasband*"), is also surprising. After holding that the issue of post-merger standing is governed by Delaware substantive law, the Third Circuit interpreted Delaware law to permit a shareholder to continue a derivative suit after a stock-for-stock merger, analogizing the action to a "double derivative" suit on behalf of the successor corporation. In *Ward,* however, the Delaware Supreme Court specifically considered and rejected *Blasband* as "inconsistent" with Delaware law. Having represented the plaintiff in *Ward*, Plaintiffs' counsel here should know this better than anyone;

- Although they now lack standing to pursue this derivative case, Plaintiffs could seek to persuade Bank of America Corp. ("BAC") to pursue the derivative claim in this case on behalf of BAC shareholders. Delaware law is clear, however, that to do so Plaintiffs must first make demand on the board of directors of BAC – the entity that now owns the derivative claim following the Countrywide/BAC merger ("Merger"). Only if demand is inappropriately refused may Plaintiffs file a double derivative action. Plaintiffs may not simply continue the current case acting as if it were a "double derivative" action and pretending that it was filed after first making demand on BAC; and

- Federal Rule of Civil Procedure 25(c) may not be interpreted to permit Plaintiffs to continue this case despite their no longer being Countrywide shareholders and no longer having standing to sue. To interpret Rule 25(c) in that way, as Plaintiffs suggest, would nullify state substantive law and would violate the Rules Enabling Act.

For all these reasons, this case must be dismissed.

## ARGUMENT

### I.   Under Governing Delaware Law, A Stock-For-Stock Merger Extinguishes A Shareholder Plaintiff's Standing To Maintain A Derivative Lawsuit.

Plaintiffs' assertion that "[t]he Delaware rule now is that a stock-for-stock merger does not eliminate a stockholder's standing to sue derivatively" (D.I. 69, Opp. at 8) misstates crystal-clear Delaware law. In 1984, the Delaware Supreme Court explicitly held in *Lewis v. Anderson* that "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit." 477 A.2d at 1049.[1] *Anderson* involved a two-stage merger – a cash tender offer for a portion of the merged entity's stock, and a "back-end" stock-for-stock exchange for the remainder of the shares. *Id.* at 1042-43. The plaintiff in *Anderson* became a shareholder in the successor corporation in the back-end, stock-for-stock transaction, and stood on precisely the same footing after the merger in that case as Plaintiffs do here after the Countrywide/BAC merger. *Id.* at 1042.

In 2004, in *Lewis v. Ward*, the Delaware Supreme Court unambiguously reaffirmed its prior holding in *Anderson.* 852 A.2d at 903-04. *Ward* also involved a stock-for-stock merger, and the Delaware Supreme Court could not have been clearer that a shareholder loses standing to pursue a stockholder derivative action after such a merger:

> The plaintiff has raised two issues on appeal. First, she argues that this Court should reconsider and overrule *Lewis v. Anderson* so that ***stock-for-stock mergers*** between unaffiliated corporations will not preclude continuing stockholders of the parent corporation from pursuing derivative litigation on behalf of a subsidiary

---

[1]   In a prior brief in this case, Plaintiffs themselves acknowledged that "*Lewis* [*v. Anderson*] stands for the proposition that 'a plaintiff who ceases to be a shareholder . . . loses standing to continue a derivative suit.'" D.I. 52 at 9.

2

corporation. . . . We have concluded that both of the plaintiff's
arguments are without merit.

852 A.2d at 898 (emphasis added and footnote omitted). In the wake of *Anderson* and *Ward*,

Delaware substantive law is unequivocal – a derivative plaintiff loses standing after a merger,

whether the merger is a stock-for-stock transaction or a cash-out merger.

Plaintiffs contend that the Third Circuit's pre-*Ward* decision in *Blasband v. Rales*, 971

F.2d 1034 (3d Cir. 1992), permits them to continue this action as if they had brought a "double

derivative" action on behalf of BAC, which acquired ownership of any potential derivative

claims in the merger with Countrywide.[2] *See* Opp. at 3-5, 7. The Third Circuit in *Blasband* first

held that the issue of whether a shareholder plaintiff has legal standing to continue a derivative

lawsuit after a merger is a matter solely of state substantive law. 971 F.2d at 1041 n.7. Plaintiffs

here do not dispute that. In *Blasband*, the Third Circuit then attempted to discern whether

Delaware substantive law would permit a shareholder to bring a derivative suit for damage to his

corporation following a stock-for-stock merger in which the corporation becomes a wholly-

owned subsidiary of another corporation. *Id.* at 1043-44. The Third Circuit concluded that

Delaware law would permit standing in that situation, despite recognizing that this conclusion

was seemingly at odds with *Anderson*. *Id.* at 1043. The Third Circuit reached this result by

analogizing the plaintiff's suit to a double derivative action, in which a shareholder in a parent

corporation sues for harm allegedly caused to a subsidiary corporation. The Court held that

Delaware's continuous stock ownership requirement was met because the plaintiff had owned

stock continuously in the subsidiary pre-merger and then in the successor, surviving entity post-

merger. *Id.* at 1046.

---

[2]    Countrywide was merged into a wholly-owned subsidiary of BAC.

3

Citing *Blasband*, Plaintiffs now argue for the first time that "a stockholder that brings a double derivative action necessarily and logically has standing to sue *on behalf of the subsidiary*." Opp. at 7-8 (emphasis added). In *Ward*, Plaintiffs' counsel here made this very same argument to the Delaware Supreme Court, contending that the Supreme Court should adopt *Blasband* and overrule its prior holding in *Anderson* that a derivative plaintiff loses standing to pursue derivative claims after a stock-for-stock merger. 852 A.2d at 903. The Delaware Supreme Court, however, unequivocally rejected this argument as "inconsistent with the clear holding of *Lewis v. Anderson*" and with Delaware's continuity of ownership requirement. *Id.*

Plaintiffs do not mention *Ward*'s explicit rejection of *Blasband*. Instead, Plaintiffs inexplicably argue that *Ward* "expressly *accepted Blasband* . . . by stating that the plaintiff, post-merger, could bring a double derivative action." Opp. at 7 (emphasis added). To the contrary, the Delaware Supreme Court ***expressly rejected*** the reasoning and result in *Blasband*, affirming dismissal of the case. 852 A.2d at 903-04, 906. In that regard, the Delaware Supreme Court in *Ward* noted that if a shareholder after a stock-for-stock merger wishes to bring a double derivative action on behalf of the successor entity, the shareholder must file a *new lawsuit after first complying with Delaware's pre-suit demand procedures. See id.* at 906. The Delaware cases make clear that demand must be made on the board of directors of the *successor entity* in addition to the board of the merged entity. This is because the board of the successor corporation must decide whether any claims should be pursued in the best interests of the shareholders of that successor entity, and its decision whether to pursue the relief demanded is entitled to a presumption of reasonableness.[3] Here, Plaintiffs have made no demand on the BAC board of

---

[3]     *See, e.g.,* 8 *Del. C.* § 259; *Anderson,* 477 A.2d at 1050 n.19 ("Clearly, New Conoco, as the acquiring corporation, through its Board of Directors, has exclusive control over

4

directors, and have not filed a new double derivative suit. Instead, they seek to do precisely what the Delaware Supreme Court has already held substantive Delaware law prohibits – continuing a derivative suit filed pre-merger on behalf of the merged entity. *See* Opp. at 7-8.[4]

Plaintiffs have not cited, nor could they, a single post-*Ward* case holding that "[t]he Delaware rule now is that a stock-for-stock merger does not eliminate a stockholder's standing to sue derivatively." Opp. at 8. To the contrary, all the post-*Ward* cases confirm that a plaintiff loses standing to pursue derivative claims after a stock-for-stock merger.[5] Plaintiffs' citation to *Ash v. McCall*, 2000 WL 1370341, at *13 n.47 (Del. Ch. Sept. 15, 2000), is very misleading. *See* Opp. at 6. Although the Vice Chancellor in *Ash* noted that he saw no "principled economic

---

its own affairs, including the disposition of all choses in action and pending claims passing by reason of the merger."); *In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 868 (Del. Ch. 1998), *aff'd*, 748 A.2d 913 (Del. 2000) (dismissing derivative action filed before merger because, among other reasons, plaintiff failed to make demand or sufficiently plead that demand would have been futile as to both parent and subsidiary); *Rales v. Blasband*, 634 A.2d 927, 937 (Del. 1993) (demand required absent particularized facts indicating reasonable doubt as to ability of majority of parent's board to properly exercise business judgment concerning demand); *In re General Motors Class E Stock Buyout Sec. Litig.*, 790 F. Supp. 77, 79-80 (D. Del. 1992) (citing *Levine v. Smith*, 591 A.2d 194, 211 (Del. 1991) (reasonableness of parent board's refusal of demand presumed)).

[4]     Of course, Defendants are not conceding that Plaintiffs would be able to satisfy the procedures for bringing a double derivative action under Delaware substantive law, and reserve all rights in that respect. For example, to maintain such an action, a shareholder in a merged corporation must have owned shares continuously from the time of the transactions involving the merged corporation of which he or she complains through the conclusion of any litigation. Here, as Defendants noted in prior briefs filed with this Court [D.I. 47 at 31-32; D.I. at 57 at 19-20; D.I. 64 at 5 n.3], there are serious questions regarding whether Plaintiffs can meet this continuity of ownership requirement. *See, e.g., Saito v. McCall*, 2004 WL 3029876, at *8-9 (Del. Ch. Dec. 20, 2004).

[5]     *See, e.g., Oliver v. Boston Univ.*, 2006 WL 1064169, at *14, 16 (Del. Ch. Apr. 14, 2006); *Gentile v. Rossette*, 2005 WL 2810683, at *5 (Del. Ch. Oct. 20, 2005), *rev'd on other grounds*, 906 A.2d 91 (Del. 2006); *In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 995, 998 (Del. Ch. 2004). In *Feldman v. Cutaia*, -- A.2d --, 2008 WL 2223084 (Del. May 30, 2008), the Delaware Supreme Court recently reaffirmed what it described as the "seminal" *Anderson* case, noting that *Anderson* involved a stock-for-stock merger and explaining that *Anderson* requires a derivative plaintiff to "maintain stockholder status in the corporate defendant throughout the litigation." *Id.* at *5.

5

argument" for rejecting the Third Circuit's approach in *Blasband* (2000 WL 1370341, at *13 n.48), the Chancery Court also explicitly stated that *Blasband* was "*not the law in Delaware*" and was "*not consistent with the Delaware Supreme Court's holding in Lewis v. Anderson and, for that reason, [the court was] not free to follow it.*" *Id.* (emphasis added).[6]  Because *Blasband* is "not the law in Delaware," the Vice Chancellor granted defendants' motion to dismiss in *Ash* for lack of standing after a stock-for-stock merger.  *Id.*  Delaware substantive law compels this Court to do the same here.

## II.    Federal Rule 25(c) May Not Be Interpreted To Circumvent Delaware Substantive Law.

Whether a shareholder has standing after a merger to maintain a derivative suit is a matter of substantive state law.  *E.g.*, *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1399 (D. Del. 1984) (standing post-merger to pursue derivative claims is "a question of substantive Delaware law"), *aff'd*, 769 F.2d 152 (3d Cir. 1985).  Here, Plaintiffs are trying to interpret Federal Rule of Civil Procedure 25(c) in a way that would alter the result required by Delaware substantive law – namely dismissal for lack of post-merger standing.  Rule 25(c) provides that upon transfer of an interest to another party, "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  According to Plaintiffs, Rule 25(c) should be interpreted to permit them to continue this case ostensibly on behalf of BAC as, in effect, a

---

[6]    The remaining cases Plaintiffs cite (Opp. at 4-6) all pre-date *Ward,* and none holds that a plaintiff may continue a derivative case following a stock-for-stock merger absent applicability of one of the two exceptions to loss of standing that the Delaware Supreme Court has recognized (i.e., the merger was done solely for the purpose of extinguishing the derivative claims or was a mere reorganization of the same corporate entity).  Plaintiffs do not allege that either of those exceptions applies here.

double derivative action despite their loss of standing and despite their not having made demand

on the BAC board as required by Delaware substantive law.[7]  The Rules Enabling Act, 28 U.S.C.

§ 2072(b), however, prohibits any interpretation of Rule 25(c) that would result in circumvention

of state substantive law in this manner.

   The Rules Enabling Act states that the Federal Rules of Civil Procedure "shall not

abridge, enlarge or modify any substantive rights."  28 U.S.C. § 2072(b).  Thus, in *Durant v.*

*Husband*, 28 F.3d 12, 15 (3d Cir. 1994), the Third Circuit held that where a conflict between a

Federal Rule of Civil Procedure and a substantive statute exists, "the Rule must give way."

*Accord Lindley v. General Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986) (holding that

California state law trumps Fed. R. Civ. P. 15(c) because "[a] contrary rule . . . would result in

the abridgment of substantive rights under state statutes of limitations").  Consistent with this

proscription in the Rules Enabling Act, the Federal Rules Advisory Committee has explained

that Rule 25(c) "does not affect any substantive issues which may be involved in the action."

Fed. R. Civ. P. 25(c), Advisory Committee Notes (1961).  As a result, the Rules Enabling Act

prohibits interpreting Rule 25(c) to permit the continuation of a shareholder derivative suit

despite the loss of post-merger standing in contravention of clear Delaware substantive law to the

contrary.

   In *In re General Instrument Corp. Sec. Litig.*, 2000 WL 1742120 (N.D. Ill. Nov. 22,

2000), the district court correctly interpreted Rule 25(c) consistently with the Rules Enabling

---

[7]    Plaintiffs' assertion (Opp. at 10) that neither Countrywide nor BAC is an indispensable party to this case is remarkable.  Plaintiffs not only want this Court to ignore substantive Delaware law (under which they no longer have standing to sue on Countrywide's behalf because they no longer own any Countrywide shares), but they also want this Court to allow them to prosecute a derivative lawsuit without even having to involve the corporation on whose behalf they claim they should be allowed to sue.

Act, thus not interfering with the loss of post-merger standing under Delaware law.  In that case, the plaintiff brought a derivative action on behalf of a Delaware corporation (General Instrument).  While the case was pending, General Instrument was merged into another company (Motorola) in a stock-for-stock merger.  The plaintiff sought to continue the lawsuit under Rule 25(c), arguing that the suit should be regarded as a double derivative action ostensibly on behalf of the acquiring company (Motorola) for harm caused to General Instrument.  This is the same argument Plaintiffs make here.  The district court, however, dismissed the case for lack of post-merger standing in accordance with Delaware law, denying the plaintiff's motion to substitute Motorola for General Instrument as the nominal defendant under Rule 25(c).

The district court in *General Instrument Corp.* explained that "a double derivative claim, like the one [plaintiff] Lazar seeks to pursue here, is a very different creature from the standard derivative claim that Lazar began with.  A double derivative claim requires allegations and, ultimately, proof of very different facts."  2000 WL 1742120, at *4.  The court noted that "a double derivative suit requires the plaintiff to meet or be excused from the demand requirement as to both the subsidiary and the parent corporation; whereas, in a standard derivative case, the plaintiff is required to meet the demand requirement only once.  *See Rales*, 634 A.2d at 934." *Id.*[8]  Because the plaintiff had not made demand on Motorola and the complaint contained no allegations relating to Motorola, the district court held as follows:

---

[8]     *Accord Fagin v. Gilmartin*, 432 F.3d 276, 283 (3d Cir. 2005) (interpreting Delaware law to require demand on boards of both parent entity and subsidiary in a "double derivative suit"); *Ash*, 2000 WL 1370341, at *13 (rejecting plaintiffs' attempt to recast pre-merger derivative lawsuit as a double derivative action post-merger where demand had not been made on both the parent and subsidiary).  The requirement of making demand on a board of directors is a "matter of substantive Delaware corporation law." *Rales*, 626 A.2d at 1366. *Accord Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991).  Any interpretation of Rule 25(c) that would allow Plaintiffs here not to make demand on BAC before bringing a double derivative action would alter Delaware law and violate the Rules Enabling Act.

8

> In sum, from the perspective of the operative complaint, Lazar's case is indistinguishable from that of *Lewis* [*v. Anderson*] and, therefore, *Lewis* controls. Lazar, no longer being a shareholder of GI, lacks standing to bring a derivative action on its behalf. It follows, then, that Lazar's Rule 25(c) motion to substitute Motorola as a nominal defendant must be also be denied, in the absence of any controversy involving Motorola.

*Id.* Plaintiffs here do not cite a single case interpreting Rule 25(c) in a contrary manner to enable a derivative plaintiff to continue a suit post-merger despite the loss of standing under Delaware substantive law.

The cases Plaintiffs do cite (Opp. at 8-9) are entirely inapposite. None of them is a shareholder derivative action, and none involves the loss of post-merger standing under Delaware substantive law. In short, none of these cases interprets Rule 25(c) to abrogate Delaware substantive law on post-merger standing. *See, e.g.*, *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69 (3d Cir. 1993) (where defendant transferred away all of its assets before making a settlement payment, plaintiff sought to re-open case and substitute purchaser of assets as defendant); *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186 (8th Cir. 1995) (plaintiff-landlord transferred interest in disputed real estate to new owner); *Kraebel v. New York City Dep't of Housing Pres. and Dev.*, 2002 WL 14364 (S.D.N.Y. Jan. 3, 2002) (unopposed motion by plaintiff-landowner to substitute new landowner as plaintiff).

In short, Rule 25(c) should be interpreted so that it does not conflict with substantive Delaware post-merger standing law. Indeed, Rule 25(c) should be interpreted in the same manner that the Delaware Supreme Court has interpreted 8 *Del. C.* § 261, which is essentially identical to Federal Rule 25(c). Section 261 provides that an action pending by or against any corporation which is a party to a merger shall be prosecuted as if such merger did not occur or the surviving corporation may be substituted in such action upon the merger of the other

9

corporation. In *Anderson*, the shareholder plaintiff argued that § 261 should be interpreted to provide for continuation of standing after a merger despite the fact that the shareholder no longer owned shares in the merged corporation. 477 A.2d at 1044. The Delaware Supreme Court, however, interpreted §§ 261, 259 (upon a merger all rights, including claims, pass to the surviving corporation), and 327 (a derivative plaintiff must be a shareholder continuously from the time of the transaction complained of through the conclusion of the lawsuit) harmoniously: "8 *Del. C.* §§ 259, 261 and 327, read individually and collectively, permit one result which is not only consistent but sound: A plaintiff who ceases to be a shareholder, whether by reason of merger or for any other reason, loses standing to continue a derivative suit." *Anderson,* 477 A.2d at 1049. The Delaware Supreme Court thus concluded that it would be contrary to Delaware substantive law to permit a former shareholder of a merged entity simply to step into the shoes of the successor entity. Rule 25(c) may not be interpreted to permit a different result.

Plaintiffs also cite *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981), and other cases (Opp. at 11-12) for the proposition that for demand purposes the court must look to the composition of the board as it existed when the case was filed, even if it changes later. Not one of those cases, however, involves a merger and the loss of standing that occurs after a merger. Rather, each of these cases naturally assumes that the derivative plaintiff will continue to have standing, and that ownership of the derivative claims will remain in the same corporation, not pass to a successor corporation. In other words, each of these cases involves a change in the composition of the *same company's* board of directors during the pendency of a lawsuit, not the transfer of ownership of derivative claims to a *new corporation* that is governed by a *different board of directors. See* note 8 *supra* (demand must be made on board of successor corporation

10

as precondition to filing "double derivative" case). As such, the cases Plaintiffs cite outside of the merger context are inapposite and legally irrelevant. Indeed, if Plaintiffs' misreading of *Zapata* and the other cases they cite were correct, the Delaware Supreme Court would never have held in *Lewis v. Ward* and *Lewis v. Anderson* that a derivative plaintiff loses standing after a merger.

### III.    The California Court's Ruling On Demand Is Irrelevant To The Issue Of Plaintiffs' Loss Of Standing.

Plaintiffs' so-called "res judicata" argument (Opp. at 13) reflects a misunderstanding of the principles of res judicata and collateral estoppel, as well as a misunderstanding of what the court in California actually ruled.[9] First, the California court has *not* ruled on the issue of post-merger standing. Second, now that Plaintiffs have lost standing to pursue this derivative suit, this case must be dismissed, and Plaintiffs must first make demand on the BAC board if they wish to persuade BAC to pursue claims on behalf of BAC shareholders. The ruling of the federal court in California excusing demand on the *Countrywide* board of directors did not address demand on the *BAC* board. As such, that court's ruling is obviously not dispositive of whether demand on the BAC board of directors must be made to pursue a "double derivative" claim.

Third, the California court rejected the very argument for excusing demand that Plaintiffs press here – namely, that the directors were "on both sides" of the stock repurchase transaction because they allegedly were selling stock at the time the Company was repurchasing stock on the

---

[9]    The doctrine of *res judicata* is inapplicable here because it only applies upon final disposition of a claim and does not concern discrete legal issues. *See, e.g., SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) ("[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, [i]t is a finality as to the claim or demand in controversy").

open market. *See* D.I. 37 at ¶ 10; D.I. 52 at 1, 4, 12-14, 16-17. In the California case, Judge

Pfaelzer stated that "Plaintiffs repeatedly *mischaracterize* the stock repurchase plan and insider

selling as creating a scenario contemplated by *Aronson* (in the demand context) where

Defendants 'appear on both sides of a transaction' or 'derive . . . personal financial benefit from

it in the sense of self-dealing.'" *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d

1044, 1078 (C.D. Cal. 2008) (emphasis added). This is precisely what Plaintiffs argue here. To

the extent Judge Pfaelzer's ruling has any relevance in this case at all, it undercuts Plaintiffs'

argument for excusing demand.[10]

## CONCLUSION

Under unequivocal Delaware substantive law, Plaintiffs lost standing to pursue this

derivative litigation when they ceased being Countrywide shareholders upon consummation of

the Merger. This lawsuit accordingly must be dismissed.

---

[10]    Although the California court found demand excused, the allegations that led the
California court to excuse demand are not present here – indeed, the Plaintiffs here expressly
have disavowed such grounds. The California court held that the directors could not be
considered disinterested because they faced potential liability with respect to plaintiffs' scienter-
based allegations. *See Countrywide*, 554 F. Supp. 2d at 1081-82. Here, however, Plaintiffs
themselves say that they are *not* asserting any scienter-based allegations. Pls.' Opposition to
Defendants' Motion to Dismiss and Transfer or Stay [D.I. 52 at 16, 24]. Where the legal issues
in two cases are not the same, issue preclusion does not apply. *E.g.*, *Bansbach v. Zinn*, 801
N.E.2d 395, 402 (N.Y. App. Div. 2003) (collateral estoppel did not bar litigating demand futility
issue where the futility analyses at issue in the two actions were different); *Grappe v. Kansas
City Southern Railway Co.*, 2003 WL 21697377, at *1 (5th Cir. July 21, 2003) (affirming refusal
to apply collateral estoppel where issues not identical); *Defurio v. Elizabeth Forward Sch. Dist.*,
2007 WL 2752176, at *9 (W.D. Pa. Sept. 19, 2007) (same); *In re Goldbronn*, 263 B.R. 347, 362
(Bankr. M.D. Fla. 2001) (no collateral estoppel where issue of intent in one case was a
"substantially lesser kind of intent than the intent required to be proved" in the other case).

OF COUNSEL:

Brian E. Pastuszenski
Stuart M. Glass
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
(617) 570-1000


Dated:  August 13, 2008

/s/ Steven J. Fineman (#4025)
Thomas A. Beck (#2086)
beck@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19801
(302) 651-7700

*Attorneys for Defendants Cisneros,
Cunningham, Donato, Melone, Mozilo, Parry,
Robertson, Russell, and Snyder and Nominal
Defendant Countrywide Financial Corporation*

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2008, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

Robert D. Goldberg, Esquire
Biggs & Battaglia
921 North Orange Street
P.O. Box 1489
Wilmington, DE 19899

Edward P. Welch, Esquire
Edward B. Micheletti, Esquire
Skadden, Arps, Slate, Meagher & Flom
LLP
One Rodney Square, P.O. Box 636
Wilmington, DE 19899-0636


          /s/ Steven J. Fineman (#4025)
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19801