IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE COUNTRYWIDE FINANCIAL | ) | |
| CORPORATION DERIVATIVE | ) | Civ. No. 07-372-SLR |
| LITIGATION | ) | (Consolidated Action) |

Robert D. Goldberg, Esquire, Biggs & Battaglia, Wilmington, Delaware. Counsel for Plaintiffs. Of counsel: Alexander Arnold Gershon, Esquire, Regina M. Calcaterra, Esquire, Gloria Kui, Esquire, and Daniel E. Bacine, Esquire, Barrack, Rodos & Bacine, New York, New York, and Philadelphia, Pennsylvania.

Thomas A. Beck, Esquire, and Steven J. Fineman, Esquire, Richards Layton & Finger, P.A., Wilmington, Delaware, and Edward P. Welch, Esquire, and Edward Micheletti, Esquire, Skadden, Arps, Slate, Meagher & Flom, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Brian E. Pastuszenski, Esquire, and Stuart M. Glass, Esquire, Goodwin Proctor LLP, Boston, Massachusetts.

**MEMORANDUM OPINION**

Dated: October 7, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

This case is a result of the consolidation (pursuant to Fed. R. Civ. P. 42) of two suits: *International Brotherhood of Electrical Workers Local 98 Pension Fund v. Angelo R. Mozilo, Henry G. Cisneros, Robert L. Donato, Harley W. Snyder, Jeffrey M. Cunningham, Martin R. Melone, Robert To. Parry, Oscar P. Robertson, Keith P. Russell, Michael E. Dougherty, and, nominally, Countrywide Financial Corporation* ("*IBEW*") (filed on June 12, 2007, amended on September 14, 2007) (Civ. No. 07-00372) and *Adam Blumberg v. Angelo R. Mozilo, et al.* ("*Blumberg*") (filed on November 6, 2007, and naming, in addition to all defendants named in the *IBEW* action, Kathleen Brown and David Sambol) (Civ. No. 07-00717). These suits were filed derivatively on behalf of Countrywide Financial Corporation ("CFC") alleging violations of the disclosure provisions of the federal securities laws, as well as state law violations of breach of contract and breach of fiduciary duties. (D.I. 1) The most serious allegation of the complaints and subsequent focus of the parties was that the CFC Board of Directors ("the Board") caused CFC to repurchase $2.37 billion worth of common shares concomitant to the sale of $373 million worth of shares personally owned by members of the Board who were in possession of non-public, materially adverse company information. (D.I. 37) The motion for consolidation was made on December 20, 2007, (D.I. 10) and granted on January 31, 2008. (D.I. 33)

## II. PROCEDURAL HISTORY

On January 14, 2008, plaintiff IBEW filed a motion for partial summary judgment on the repurchase claim arguing that there were no questions of fact as to CFC's

repurchase of outstanding stock and that this repurchase violated the directors' fiduciary duty to the corporation as a matter of law. (D.I. 18) In response, defendants Mozilo, Cisneros, Donato, Snyder, Cunningham, Melone, Parry, Robertson, Russell, Sambol and nominal defendant CFC ("Mozilo, et al."), moved for an emergency stay in the proceedings pending the court's decision on: 1) the consolidation of the *IBEW* and *Blumberg* cases; 2) the filing of a consolidated amended complaint if such consolidation is granted; and 3) defendants' motion to dismiss such a consolidated case on the grounds that demand had not been made on the Board prior to the suit as required by Delaware state law. (D.I. 22) Defendants Brown and Dougherty filed a motion for joinder. (D.I. 25) Plaintiff's motion for partial summary judgment was denied as premature on January 31, 2008, by Magistrate Judge Mary Pat Thygne, with leave to re-file when and if appropriate, citing that it was unclear whether the court had subject matter jurisdiction over the matter and that discovery would be appropriate. (D.I. 35) On February 4, 2008, the case was reassigned from the vacant Judgeship. On February 13, 2008, a "Consolidated, Amended and Supplemental Verified Complaint" was filed with the court combining the allegations of the *IBEW* and *Blumberg* actions. (D.I. 37)

Pending before the court are three motions. On February 27, 2008, defendants Mozilo, et al., filed a motion to dismiss based upon rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure, arguing that: 1) plaintiffs failed to make demand upon the Board prior to the filing of the lawsuit as required by Delaware law; 2) plaintiffs failed to state a claim for breach of fiduciary duty, specifically that there was no suggestion in the complaint that the Board had possession of non-public information; and 3) plaintiffs

failed to adequately allege standing by failing to establish that IBEW and Blumberg were shareholders during the time of the transactions, as required by Delaware law. (D.I. 46)  Defendants Brown and Dougherty filed the same motions with the same arguments.  (D.I. 39)  Also on February 27, 2008, defendants Mozilo, et al., filed a motion to transfer venue to the United States District Court for the Central District of California or, in the alternative, to stay.  (D.I. 40)  Defendants Brown and Dougherty filed a motion for joinder on the same date.  (D.I. 38)  Finally, on July 10, 2008, defendants Mozilo, et al., filed a motion to dismiss based upon lack of standing.  (D.I. 63)  Defendants Brown and Dougherty filed a motion for joinder on July 17, 2008.  (D.I. 67)

This court has jurisdiction over these matters pursuant to 28 U.S.C. § 1332.  For the reasons that follow, defendants' motions to dismiss for lack of standing shall be granted.  The remaining motions shall be denied as moot.

## III. ANALYSIS

Plaintiffs were shareholders of CFC when the suit was originally filed on July 10, 2007.  (D.I. 1, at ¶ 5)  On January 11, 2008, CFC announced that Bank of America ("BAC") was acquiring CFC in a stock-for-stock transaction.  (D.I. 64 at 4)  On July 1, 2008, the merger closed and all outstanding shares of CFC, including those of plaintiffs, were exchanged for shares of BAC and CFC became a wholly owned subsidiary of BAC.  (*Id.*)

Defendants filed the present motion to dismiss for lack of standing, arguing that Delaware law governs post-merger standing.  Defendants contend that, because

3

plaintiffs are no longer shareholders of CFC, they have lost said standing. Plaintiffs, relying on the Third Circuit's decision in *Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992) ("*Blasband I*"), contend that they have post-merger equitable standing.

In *Lewis v. Anderson,* 477 A.2d 1040 (Del. 1984), the Delaware Supreme Court reaffirmed prior case law by holding that a shareholder in a derivative lawsuit loses standing post-merger because he can no longer satisfy the continuous ownership rule. *Id.* at 1046. There are two exceptions to the continuous ownership requirement: "(1) where the merger itself is the subject of a claim of fraud; and (2) where the merger is in reality a reorganization which does not affect the plaintiff's ownership of the business enterprise." *Id.* at 1046 n.10. This "bright-line rule" is "settled Delaware law" and has been consistently followed by Delaware courts. *Ash v. McCall*, No. Civ. A. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000), at *11. *See Lewis v. Ward,* 852 A.2d 896, 903-04 (Del. 2004), *Feldman v. Cutaia,* 951 A.2d 727, 731-32 (Del. 2008); *Kramer v. Western Pacific Indus.*, 546 A.2d 348, 354 (Del. 1988); *Penn Mart Realty Co. v. Perelman*, 1987 WL 10018 (Del. Ch. Apr. 15, 1987), at *2; *Bershad v. Hartz*, 1987 WL 6092 (Del. Ch. Jan. 29, 1987), at *2; *In re New Valley Corp. Derivative Litig.*, No. CA 17649-NC, 2004 WL 1700530 (Del. Ch. June 28, 2004), at *3.

In seemingly direct contradiction of this "well-established precept[] of Delaware corporate law," *Ward*, 852 A.2d at 901, the Third Circuit found in *Blasband I* that a plaintiff in a derivative lawsuit had equitable standing post-merger. *Blasband*, 971 F.2d at 1044, 1046. The Third Circuit found the holding in *Anderson* to be consistent with its opinion that the Delaware Supreme Court **did not intend** "to reject the plaintiff's

standing as a shareholder in [the parent corporation]." *Id.* at 1044. The Third Circuit recognized the contradiction between its decision and Delaware corporation law by noting that its decision "may not fit neatly into existing Delaware corporation law," *id.*; nevertheless, "*despite* the rather broad language in *Lewis v. Anderson*," *id.* at 1046 (emphasis added), the Third Circuit granted plaintiff equitable standing.

While the Delaware Supreme Court has not explicitly rejected *Blasband I*, *Rales v. Blasband*, 634 A.2d 927, 931 n.5 (Del. 1993), Delaware courts have not followed it and have labeled the decision as "inconsistent with the clear holding of *Lewis v. Anderson.*" *In re: First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 868 n.18 (Del. Ch. 1998), *aff'd sub nom., Bradley v. First Interstate Bancorp*, 748 A.2d 913 (Table) (Del. 2000). Furthermore, in *Ward,* the Delaware Supreme Court "ratif[ied] and reaffirm[ed] the general rule and two exceptions of *Lewis v. Anderson,*" 852 A.2d at 904, unanimously refusing to overturn *Anderson*. *Id.* at 897 n.2. The Court further noted that "[u]nder Delaware law, it is well established that a merger which eliminates a derivative plaintiff's ownership of shares of the corporation for whose benefit she has sued terminates her standing to pursue derivative claims." *Id.* at 900-01.

Delaware courts appear to accommodate the disparate holding in *Blasband* as "at most" finding standing to pursue a double derivative lawsuit. *First Interstate,* 729 A.2d at 868 n.18. However, standing in the context of a double derivative suit does not appear to be synonymous with standing in a standard derivative suit and requires the filing of a separate cause of action. *See Ward*, 852 A.2d at 906. *See also*, *In re: General Instrument Corp. Sec. Litig.*, No. 96 C 1129, WL 2000 1742120 (N.D. Ill, Nov.

5

22, 2000), at *4 ("[A] double derivative claim . . . is a very different creature from the standard derivative claim . . . . requir[ing] allegations and, ultimately, proof of very different facts."); *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) (setting forth the standards and procedures in a double derivative action).

Under the *Erie* Doctrine, federal courts are required to apply the law of the state, whether enacted through its legislature or as decided by its highest courts. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). *See also*, *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). Furthermore, federal courts are "not free to impose [their] own view of what state law should be; [they] are to apply state law as interpreted by the state's highest court." *McKenna v. Pacific Rail*, 32 F.3d 820, 825 (3d Cir. 1994). The Delaware Supreme Court has unequivocally declared that plaintiffs in derivative suits lose standing post-merger as noted above in *Ward*, *Feldman*, *Kramer*, *Penn Mart*, *Bershad*, and *New Valley Corp*. The court declines plaintiffs' invitation to overturn Delaware state law precedent.[1] Therefore, defendants' motion to dismiss for lack of standing shall be granted.

## IV. CONCLUSION

---

[1] Plaintiffs also briefly argue that the present suit should not be dismissed since a merger is only a "transfer of interest" per the Federal Rules of Civil Procedure. (D.I. 69 at 8) More specifically, rule 25(c) allows for the substitution of parties in actions where there is a transfer of interest. *Fed. R. Civ. P. 25(c)*. However, rule 25(c) is designed as a procedural rule only and should not be applied where it would substantively affect the underlying lawsuit. *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71-72 (D.N.J. 1993) (citing, *Fontana v. United Bonding Ins. Co.*, 468 F.2d 168, 169 (3d Cir. 1972)).

6

For the reasons stated above, defendants' motions to dismiss (D.I. 63) is granted.  An appropriate order shall issue.